ORAL ARGUMENT NOT SCHEDULED

## Case No. 23-5122

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**Iowaska Church of Healing**,

*Plaintiff-Appellant,*

v.

**Daniel I. Werfel, Commissioner, Internal Revenue Service, and United States of America**,

*Defendant-Appellees.*

---

# BRIEF FOR PLAINTIFF-APPELLANT
# IOWASKA CHURCH OF HEALING

---

On Appeal from the U.S. District Court for the District of Columbia,
No. 1:21-cv-02475-BAH (Beryl A. Howell, District Judge)

---

William A. Boatwright
Dentons Davis Brown PC
215 10th Street, Ste. 1300
Des Moines, IA 50309
(515) 288-2500
bill.boatwright@dentons.com

Simon A. Steel*
Katie Daw
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com

---

* Member of DC Circuit and NY Bars; not admitted in DC.

Joanne Caceres
Dentons US LLP
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606-6361
(312) 876-2862

*Counsel for Plaintiff-Appellant Iowaska Church of Healing*

## CERTIFICATE OF PARTIES, RULINGS,
## AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1)

**A.     Parties and Amici**

The sole appellant is Iowaska Church of Healing, an Iowa non-profit corporation organized as a religious corporation under Iowa Code § 504.141(38). Iowaska Church of Healing has no parent company and no publicly-held company has a 10% or greater ownership interest in Iowaska Church of Healing.

The sole appellees are Daniel I. Werfel, Commissioner, Internal Revenue Service (in his official capacity), and the United States of America.

As of today's date there are no intervenors and no amici curiae.

**B.     Rulings Under Review**

The sole ruling under review is *Iowaska Church of Healing v. Charles P. Rettig, Commissioner, Internal Revenue Service, and United States of America*, Case No. 21-cv-02475-BAH, Opinion and Order dated March 31, 2023, D.E. 31, D.E. 32 (D.D.C., Judge Beryl A. Howell).

**C.     Related Cases**

Appellant and its counsel are not aware of any related cases.

# TABLE OF CONTENTS

**Page**

GLOSSARY ...............................................................................................x

INTRODUCTION ......................................................................................1

JURISDICTIONAL STATEMENT ..........................................................3

STATEMENT OF ISSUES .......................................................................4

STATUTES AND REGULATIONS ..........................................................5

STATEMENT OF THE CASE ...................................................................6

    A.    Relevant Facts .............................................................................6

    B.    Procedural History......................................................................9

SUMMARY OF ARGUMENT .................................................................12

    A.    Tax Code Claim.........................................................................13

    B.    RFRA Claim..............................................................................15

STANDING ..............................................................................................16

ARGUMENT ............................................................................................17

I.    THE STANDARD OF REVIEW APPLICABLE TO ALL ISSUES
    ON APPEAL IS *DE NOVO*.............................................................17

    **A.**    **Appellate Review** ...................................................................17

    **B.**    **Review of IRS Action** ...........................................................18

II.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
    JUDGMENT TO THE IRS ON ICH'S TAX CODE CLAIM. .....................18

    **A.**    **ICH's Ayahuasca Sacrament Is Presumptively Legal Or, At
    Worst, Of Unresolved Legality; It Is Not Clearly Illegal, As
    Would Be Required To Potentially Disqualify ICH From
    501(c)(3) Status.** ......................................................................20

1.      The District Court's Decision Rests On A Non-Existent
        Exhaustion Of Administrative Remedies Requirement............20

2.      Under RFRA And O Centro, ICH's Ayahuasca
        Sacrament Is Presumptively And Almost Certainly Legal.......28

3.      At Worst, The Legality Of ICH's Ayahuasca Sacrament
        Is Uncertain, Which Does Not Disqualify ICH From
        501(c)(3) Status. ......................................................................31

**B.      ICH Meets The Organizational And Operational Tests
        Regardless Of How The Legality Of Its Ayahuasca
        Sacrament Might Ultimately Be Resolved, Because It Is
        Committed To Operate Within The Law And Does Not And
        Will Not Conduct Any Activities That May Be Illegal.** ................35

III.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
        JUDGMENT TO THE IRS, BASED ON ARTICLE III STANDING,
        ON ICH'S RFRA CLAIM...........................................................41

**A.      ICH Has Article III Standing.**..........................................42

**B.      ICH's RFRA Claim Is Compelling And Unrebutted On The
        Merits.**..................................................................................50

CONCLUSION ..................................................................................52

ADDENDUM: PERTINENT STATUTES AND REGULATIONS ....................55

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Excursions LLC v. Yellen*,
   66 F.4th 272 (D.C. Cir. 2023)..............................................................18

*Alta Vista Properties, LLC v. Mauer Vision Center, PC*,
   855 N.W.2d 722 (Iowa 2014) ..............................................................40

*Arizona Yage Assembly v. Garland*,
   2023 WL 3246927595 (D. Ariz. May 4, 2023) ....................................25

*Arizona Yage Assembly v. Garland*,
   595 F. Supp. 3d 869 (D. Ariz. 2022) ...................................................25

*\* Baptist Hospitals, Inc. v. United States*,
   851 F.2d 1397 (Fed. Cir. 1988) ....................................................5, 46

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
   140 U.S. 2335 (2020)............................................................................30

*Better Bus. Bureau v. United States*,
   326 U.S. 279 (1945)..............................................................................19

*\* Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983)........................................................14, 19, 34, 35, 51

*Branch Ministries v. Rossotti*,
   211 F.3d 137 (D.C. Cir. 2000) ............................................................37

*\* Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014)........................................................16, 29, 31, 50, 51

*CEI Wash. Bureau, Inc. v. DOJ*,
   469 F.3d 126 (D.C. Cir. 2006)..............................................................17

*Church of the Eagle and the Condor v. Garland*,
   No. 22-cv-01004-SRB, D.E. 26 (D. Ariz. March 20, 2023) ...............25

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993)..............................................................................32

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013)....................................................................49

*Commissioner of Internal Revenue v. John Danz Charitable Trust*,
    284 F.2d 726 (9th Cir. 1960) ................................................37, 39

\* *CREATE v. Commissioner of Internal Revenue*,
    634 F.2d 803 (5th Cir. 1981) .......................................................15, 47

*Doster v. Kendall*,
    48 F.4th 608 (6th Cir. 2022) .............................................25

*Elrod v. Burns*,
    427 U.S. 347 (1976)....................................................................28

*Employment Division v. Smith*,
    494 U.S. 872 (1990)..............................................................22, 40

*Friends of Soc'y of Servants of God v. Commissioner of Internal Revenue*,
    75 T.C. 209 (Tax Ct. 1980)........................................................47, 48

*Fund for the Study of Economic Growth & Tax Reform v. IRS*,
    161 F.3d 755 (D.C. Cir. 1998).....................................................18

\* *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2016) ................................ 1, 2, 7, 8, 12, 14, 23, 28, 51

*Kaemmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008)....................................................18

*O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004) ....................................................23

*Oberbillig v. West Grand Towers Condominium Ass'n*,
    807 N.W.2d 143 (Iowa 2011) ................................................39, 40

\* *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
    676 F.3d 829 (9th Cir. 2012) .............................................25

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020).....................................................................33

*Singh v. Carter*,
    168 F. Supp. 3d 216 (D.D.C. 2016)....................................................25

*Sisters of St. Francis Health Servs., Inc. v. Morgan County, Ind.*,
    397 F. Supp. 2d 1032 (S.D. Ind. 2005)..............................................33

*South Bay United Pentecostal Church v. Newsom*,
    140 S. Ct. 1613 (2020)......................................................................33

*Taxation With Representation v. United States*,
    585 F.2d 1219 (4th Cir. 1978) ..........................................................39

*Thompson v. District of Columbia*,
    832 F.3d 339 (D.C. Cir. 2016)..........................................................17

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................45

*U.S. Navy Seals 1-26 v. Biden*,
    578 F. Supp. 3d 822 (N.D. Tex. 2022) .............................................28

*United States v. Friday*,
    525 F.3d 938 (10th Cir. 2008) ..........................................................18

*United States v. Sterling*,
    75 M.J. 407 (C.A.A.F. 2016) ...........................................................26

*United States v. Texas*,
    143 S. Ct. 1964 (2023)...............................................................42, 47

*Van Kush v. Drug Enforcement Admin.*,
    2022 WL 1978730 (D.D.C. June 6, 2022).......................................27

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)..........................................................................49

## Constitutional and Statutory Provisions

United States Constitution,
    Article III § 2 ...................................................................................41

**Statutes**

21 United States Code
§ 812.............................................................................................1
§ 812, Schedule I(c)(6) ...............................................................7
§ 822(d) ............................................................................21, 23, 24

26 United States Code
§ 170(b)(1)(A)(i) ........................................................................7
§ 501(a)........................................................................................20
§ 501(c)(3) ....................................... 1, 3, 4, 5, 7, 8, 12, 16, 36, 43, 52
§ 7428....................................................................................16, 48
§ 7428(a) ....................................................................4, 16, 18, 41, 47
§ 7428(a)(1)(A) ...........................................................................4
§ 7428(b)(3) ................................................................................3

28 United States Code
§ 1291..........................................................................................4
§ 1331..........................................................................................4
§ 1346(e)......................................................................................4
§ 1391(e)(1) .................................................................................4
§ 2201..........................................................................................4
§ 2000bb–4..................................................................................24

42 United States Code
§ 2000bb-1 ...........................................................................5, 6, 16, 18
§ 2000bb-1(a)-(b)..................................................................12, 16, 29
§ 2000bb-1(b)........................................................................26, 30, 51
§ 2000bb-1(b)(1)..........................................................................31
§ 2000bb-1(b)(2)....................................................................31, 51
§ 2000bb-1(c)......................................................................6, 41, 42
§ 2000bb-2(4).............................................................................29
§ 2000bb(a)(4) ............................................................................22
§ 2000bb(b)(1) ............................................................................22
§ 2000bb(b)(2) ............................................................................22
§ 2000bb, *et seq.* .........................................................................1
§ 2000cc-3(g) ..............................................................................29
§ 2000cc-5(7)(A) .........................................................................29

Act of Aug. 27, 1894, ch. 349, § 32, 28 Stat. 509, 556 ..........................30

Iowa Code
  § 504.141(38)...........................................................................i

**Rules and Regulations**

21 Code of Federal Regulations
  § 1307.03............................................................................21

26 Code of Federal Regulations
  § 1.501(c)(3)-1(a)................................................................36
  § 1.501(c)(3)-1(b)(1)(i).........................................................37
  § 1.501(c)(3)-1(b)(1)(i)(B)....................................................38
  § 1.501(c)(3)-1(b)(1)(ii).......................................................38
  § 1.501(c)(3)-1(d)(1)(i)(a), (b), (f)........................................38

Federal Rules of Appellate Procedure
  Rule 4(a)(1)(B)......................................................................4
  Rule 32(a)(5).......................................................................54
  Rule 32(a)(6).......................................................................54
  Rule 32(a)(7)(B)(i)...............................................................54
  Rule 32(f)...........................................................................54

Internal Revenue Service Revenue Ruling
  Rule 71-447, 1971-2 C.B. 230 (1971) ...............................34

**Legislative History**

H. Rep. No. 103-88, Religious Freedom Restoration Act of 1993
  (May 11, 1993)...............................................................28, 48

**Other Authorities**

Charity Navigator, Centro Espirita Beneficente Uniao Do Vegetal,
  https://www.charitynavigator.org/ein/150412429 (last visited Oct.
  10, 2023) ............................................................................9

*Church Sanctuary for Illegal Aliens*,
  7 Op. O.L.C. 168 (1983),
  https://www.justice.gov/sites/default/files/olc/opinions/1983/10/31/
  op-olc-v007-p0168_0.pdf ................................................32

Drug Enforcement Administration, *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)* (Nov. 20, 2020), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf .......................................................................................................21

L. Hitoshi Mayer & Z. Pohlman, *What is Caesar's, What is God's: Fundamental Public Policy for Churches,* 44 Harv. J.L. & Pub. Policy 145 (2021)...................................................................................34

*IRS General Counsel Memorandum 37858,* 1979 WL 52716 (Feb. 16, 1979) ...........................................35

*IRS General Counsel Memorandum 39800,* 1989 WL 592766 (Oct. 25, 1989).............................................35, 36

*Parsley v. Bentley*, N.D. Ala. No. 11-cv-2736, Pltf.-Bishops' First Am. Compl., 2011 WL 3801841 (filed Aug. 11, 2011) ...................................................32

*United States v. Safehouse*, E.D. Pa. No. 2:19-cv-00519-GAM, United States' Reply Mem. in Support of Motion to Dismiss, D.E. 225 (filed Sept. 20, 2023).......................21

R. Wiacek, N. Francisco & V. Suri, *Tax Exemptions and Same-Sex Marriage*, 7 Colum. J. Tax. L. 14 (2016) ........................................19

M. Yaffa, *Comment, The Revocation of Tax Exemptions and Tax Deductions for Donations to 501(c)(3) Organizations on Statutory and Constitutional Grounds*, 30 U.C.L.A. L. Rev. 156 (1982).........................34

# GLOSSARY

| | |
|---|---|
| CSA | Controlled Substances Act of 1970, 21 U.S.C. §§ 801, *et seq.* |
| D.E. | Docket entry numbers in the court below, D.D.C. No. 21-cv-02475-BAH (used for citations in initial briefs and citations to record items not included in the Joint Appendix) |
| DEA | U.S. Drug Enforcement Administration |
| ICH | Iowaska Church of Healing (Plaintiff-Appellant) |
| IRS | Internal Revenue Service (Defendant-Appellee) |
| JA | Joint Appendix (used for citations in final briefs) |
| RFRA | Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb, *et seq.* |
| Tax Code | Internal Revenue Code of 1986, 26 U.S.C. §§ 1, *et seq.* |

## INTRODUCTION

The consumption of ayahuasca tea is sometimes illegal, because it contains dimethyltryptamine, a Schedule I drug under the Controlled Substances Act of 1970 ("CSA"), 21 U.S.C. § 812, Schedule I(c)(6). But it is also sometimes legal, because ayahuasca tea ceremonies are a sacrament of various religions, and sincere religious activities are protected by the First Amendment and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb *et seq. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418 (2016) ("*O Centro*") (holding that RFRA prohibited the Government from treating an ayahuasca sacrament as criminal).

Plaintiff-appellant Iowaska Church of Healing ("ICH") was created five years ago, in reliance on the Supreme Court's *O Centro* decision, to offer to the public, in a safe community setting grounded in religious doctrine, a combination of religious and spiritual practices and education including, as a major component, the ayahuasca sacrament. ICH promptly filed applications, which it has pursued with candor and diligence, (1) to defendant-appellant the Internal Revenue Service ("IRS"), for religious/charitable tax-exempt status under 26 U.S.C. § 501(c)(3), and (2) to the Drug Enforcement Administration ("DEA"), for a religious exemption from the CSA (a "CSA exemption"). But the DEA has failed to act on

ICH's CSA exemption application, and the IRS denied ICH's 501(c)(3) application because it did not have a CSA exemption.

ICH sued the IRS under the Tax Code and under RFRA. On cross-motions for summary judgment, it was undisputed that (1) ICH seeks to use ayahuasca only as a sincere exercise of religion protected by RFRA, and (2) ICH's articles of incorporation commit it to comply with the law and, to avoid legal risk pending confirmation of their legality, ICH suspended its ayahuasca sacrament in August 2019, almost two years before the IRS's adverse decision.

Nonetheless, the district court granted summary judgment for the IRS on both claims. On the Tax Code claim, the district court agreed with the IRS that ICH's ayahuasca sacrament is illegal unless and until it has a CSA exemption. Based on that premise, it held that ICH is organized and operated in part for illegal purposes and, as such, disqualified from 501(c)(3) status. On the RFRA claim, the district court held that ICH lacked Article III standing.

The district court erred on both counts. There are two fatal flaws in the district court's analysis of the Tax Code claim. First, as *O Centro* reflects, sincere exercises of religion, including ayahuasca sacraments, are presumptively legal (or, at worst, of uncertain legality) by virtue of RFRA; the freedom to exercise religion is not conditioned on exhausting administrative remedies at the DEA. Second, even if ICH's ayahuasca sacrament were illegal, it would not support the district court's

conclusion that ICH is organized and operated for illegal purposes, because ICH has committed to follow the law and has suspended its ayahuasca sacrament until its legality is confirmed.

Contrary to the district court's decision, ICH has standing to bring its RFRA claim, just as it has standing to bring its Tax Code claim. A 501(c)(3) tax exemption is an inherently valuable statutory right, the wrongful denial of which (whether wrongful under the Tax Code or under RFRA) is a cognizable injury redressable by relief ICH seeks: a declaration that it is entitled to tax-exempt status. Moreover, ICH's RFRA claim is clearly meritorious. The IRS has not attempted to, and cannot, justify its denial of ICH's 501(c)(3) application under the strict scrutiny RFRA mandates.

The district court's decision should be reversed, and the IRS should be ordered to grant ICH 501(c)(3) tax-exempt status.

## JURISDICTIONAL STATEMENT

Plaintiff-appellant ICH applied to defendant-appellee the IRS for a determination that ICH is exempt from federal taxation under 26 U.S.C. § 501(c)(3). D.E. 29-1 ─ D.E. 29-4. On June 28, 2021, the IRS issued a final adverse determination letter denying ICH's application. D.E. 29-15. On September 22, 2021, within the 90-day deadline for challenging such a determination, 26 U.S.C. § 7428(b)(3), ICH filed this case in the U.S. District Court for the District of

Columbia, challenging the IRS's denial under both the Tax Code and RFRA by suing the Commissioner of the IRS in his official capacity (and later joining the United States as a defendant), and seeking declaratory relief under 28 U.S.C. § 2201. D.E. 1, D.E. 2, D.E. 16.

The district court had jurisdiction to adjudicate ICH's Tax Code claim under 26 U.S.C. § 7428(a)(1)(A) and 28 U.S.C. §§ 1331 and 1346(e), and jurisdiction to adjudicate ICH's RFRA claim under 28 U.S.C. § 1331. Venue was proper in the district court under 26 U.S.C. § 7428(a) and 28 U.S.C. § 1391(e)(1).

The district court issued a final judgment, granting summary judgment for the IRS on both of ICH's claims, on March 31, 2023. D.E. 31. ICH filed a notice of appeal on May 26, 2023, within the 60-day deadline set by Fed. R. App. Proc. 4(a)(1)(B). D.E. 33. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    <u>Tax Code Claim</u>. Did the district court err as a matter of law in affirming the IRS's ruling that because of its ayahuasca sacrament, ICH is organized and operated for an illegal purpose, disqualifying ICH from tax-exempt status under 26 U.S.C. § 501(c)(3), given that:

(a)    ICH's ayahuasca sacrament is a sincere exercise of religion and, as such, presumptively legal (or at least, not clearly illegal), since any Government restrictions on it, including treating it as illegal, would be subject to strict scrutiny

4

under RFRA, 42 U.S.C. § 2000bb-1, which is not subject to any exhaustion of administrative remedies requirement; and

(b)    ICH is organized and committed to act within the law, has suspended its ayahuasca sacrament, and proposes only to conduct other religious, charitable and plainly lawful activities pending confirmation of the legality of its ayahuasca sacrament?

2.    RFRA Claim.

(a)    Did the district court err as a matter of law in ruling that ICH lacks Article III standing to pursue a RFRA claim against the IRS, given that ICH challenges and seeks reversal of a ruling that directly deprives it of an inherently valuable statutory right: a tax exemption under 26 U.S.C. § 501(c)(3)?

(b)    Is ICH entitled to prevail on the merits of its RFRA claim, given that the IRS made no attempt to justify its ruling denying ICH a tax exemption under the strict scrutiny that RFRA, 42 U.S.C. § 2000bb-1, mandates?

## STATUTES AND REGULATIONS

Copies of pertinent statutes and regulations are attached as an addendum to this brief.

## STATEMENT OF THE CASE

### A.     Relevant Facts

ICH is a religious organization that seeks to offer to members of the public who sincerely commit to ICH's religious, spiritual and ethical doctrine a system of spiritual growth, development, healing and education that includes, as one of its important practices, tea ceremonies involving the consumption of ayahuasca under strict medical supervision ("the ayahuasca sacrament"). D.E. 29-2, at 6-7; *see generally* D.E. 29-2 — D.E. 29-4. The ayahuasca sacrament, which is sacred to ICH and its members, stems from millennia-old North and South American indigenous practices originating in the Amazon Basin, and has been practiced for decades in the United States, Asia, Europe and South America by churches that blend elements of indigenous shamanism with Christianity and Afro-Brazilian religious practices. D.E. 29-4, at 1-2.

ICH and its members believe that the ceremonial use of ayahuasca will aid them in their sincere intention to live by a code of love, unity, integrity and respect for all living things and to form a deeper relationship with Self, with Spirituality and with the living Spirit of Mother Earth. D.E. 29-4, at 4. ICH's leaders restrict membership to people who commit to Church Doctrine, and may terminate the involvement of any member who disregards Church Doctrine. *Id.* at 4-5. Receipt of

6

the ayahuasca sacrament is limited to members of ICH who also agree to comply with the Rules and Regulations for Participating in it. *Id.*

ICH was founded in 2018 with the intent to allow members to exercise their sincerely held religious beliefs with a community of likeminded individuals. It is registered as an Iowa non-profit corporation and organized as a religious corporation under the Code of Iowa, and is also registered to do business in Florida. D.E. 29-2; D.E. 29-3, at 19; D.E. 29-6, at 52-53. ICH's articles of incorporation list multiple, complementary religious and charitable purposes, D.E. 29-2, at 6-7, and commit it to engage only in lawful, tax-exempt activities, *id.* at 9.

On January 10, 2019, the Church filed IRS Form 1023, requesting tax-exempt status under 26 U.S.C. § 501(c)(3) and recognition as a church under 26 U.S.C. § 170(b)(1)(A)(i).[1] D.E. 29-1.

One of the plants used to make the tea used in the ayahuasca sacrament contains dimethyltryptamine, a Schedule 1 drug under the CSA. 21 U.S.C. § 812, Schedule I(c)(6). *See id.* ICH believes that its ayahuasca sacrament is exempt from the CSA by virtue of RFRA and *O Centro*. As the district court acknowledged, D.E. 32, at 3, to confirm that understanding, ICH applied to the DEA for a

---

[1] The district court left unresolved whether ICH qualifies as a church if it qualifies for tax-exempt status, since it held that ICH does not qualify for tax-exempt status. *See* D.E. 32, at 10 n.6. ICH maintains and has preserved its arguments that it qualifies as a church, but that issue should be addressed by the district court on remand, and is not before this Court on appeal.

7

religious exemption from the CSA on February 28, 2019. D.E. 22-1, at 9; D.E. 29-6, at 9, 54-55. ICH has promptly and diligently responded to every DEA information request since. As of this filing, the DEA has been considering ICH's request for almost five years without issuing any determination.

In August 2019, to avoid any possibility of criminal enforcement, ICH voluntarily suspended its ayahuasca sacrament while awaiting determinations from the IRS and the DEA, and ICH has not used ayahuasca since then. D.E. 22-1, at 7; D.E. 29-10, at 5; D.E. 29-12, at 2.

ICH promptly, fully and candidly responded to multiple information requests from the IRS, explaining its view that its ayahuasca sacrament is lawful by virtue of RFRA. D.E. 22-1, at 9-10. However, on June 28, 2021, the IRS issued a final adverse determination denying ICH tax-exempt status under 26 U.S.C. § 501(c)(3). D.E. 29-15. The sole basis for denial stated by the IRS was that the ayahuasca sacrament, the distribution of which is one of ICH's substantial purposes, is illegal insofar as ICH has not been granted an exemption under the CSA. *Id*. The IRS reached that conclusion despite conceding that ICH's ayahuasca sacrament is "strikingly similar," D.E. 22-1, at 11, to the ayahuasca sacrament that the Supreme Court enjoined the Government from treating as illegal in *O Centro*, 546 U.S. 418, and despite the fact that the IRS had granted the O Centro church 501(c)(3) status years before it secured its favorable ruling. *See* D.E. 22-1, at 11-12

(IRS admission that O Centro has 501(c)(3) status); Charity Navigator, *Centro*

*Espirita Beneficente Uniao Do Vegetal*,

https://www.charitynavigator.org/ein/150412429 (last visited Oct. 10, 2023)

(recording that O Centro obtained that status in 1994); *see also* D.E. 32, at 10 n.5.

### B.     Procedural History

On September 22, 2021, ICH filed suit in the U.S. District Court for the

District of Columbia. D.E. 1, D.E. 2. As subsequently amended, its complaint

pleads two claims against the Commissioner of the IRS, in his official capacity,

and the United States, claiming that the IRS's 501(c)(3) denial decision violated

(1) the Tax Code and (2) RFRA, and it seeks declaratory judgment, including a

declaration that ICH is entitled to 501(c)(3) status. D.E. 16.

The parties filed cross-motions for summary judgment. ICH argued that,

contrary to the IRS's determination, ICH is organized and operated exclusively for

religious and charitable purposes, and as such, entitled to tax-exempt status under §

501(c)(3). ICH argued that the IRS erred under the Tax Code, and violated RFRA,

by deeming ICH's ayahuasca sacrament unlawful and, as such, disqualifying under

§ 501(c)(3), since ICH's ayahuasca sacrament is a sincere exercise of religion

protected by RFRA and not materially distinguishable from ayahuasca sacraments

practiced by the O Centro church and other churches to whom the IRS has granted

501(c)(3) status. *See generally* D.E. 20-3; D.E. 22-1, at 11-13. ICH established as

undisputed facts that (1) its articles of incorporation commit it to other religious and charitable purposes in addition to the ayahuasca sacrament, and commit it to following applicable laws, *see* D.E. 29-2, at 6-7, 9, and (2) since August 2019, ICH has suspended its ayahuasca sacrament pending confirmation of its legality, *see* D.E. 22-1, at 7-8.

The IRS admitted essentially all of ICH's factual allegations. D.E. 22-1. In particular, it admitted facts demonstrating that ICH's ayahuasca sacraments are a sincere exercise of religion, *id.* at 2-5, and it admitted that ICH had suspended them in August 2019, *id.* at 7-8. The IRS made no attempt to draw any factual distinction between ICH's ayahuasca sacrament and the practices of the O Centro church or other ayahuasca churches the IRS has approved for 501(c)(3) status, and no attempt to justify treating ICH's activities as illegal under RFRA's strict scrutiny standard. Instead, the IRS rested on its theory that ICH's (currently suspended) ayahuasca sacrament disqualifies it from 501(c)(3) status unless and until it secures a CSA exemption, and the IRS argued that because the IRS is not responsible for issuing CSA exemptions, ICH lacks standing to sue under RFRA. *See generally* D.E. 22, D.E. 23.

In its reply brief, ICH responded to the IRS's new standing argument by identifying three distinct injuries-in-fact, each of which it contended met Article III's concreteness, traceability and redressability standards: the chilling effect on

10

ICH's free exercise of religion of having the IRS declare its ayahuasca sacrament illegal; the adverse reputational effect of the same ruling; and the economic impacts of being denied 501(c)(3) status. D.E. 25, at 10-17.

In its reply brief in support of its own motion for summary judgment, the IRS reiterated its position and again did not attempt to justify its adverse determination under RFRA's strict scrutiny standard. D.E. 26.

On March 31, 2023, the district court granted the IRS's motion for summary judgment. D.E. 31, D.E. 32. Reviewing the IRS's decision *de novo*, the district court agreed with the IRS that ICH's ayahuasca sacrament disqualifies it from 501(c)(3) status because "use of Ayahuasca remains illegal under federal law, namely, the CSA," so ICH is not organized and operated exclusively for tax-exempt purposes. D.E. 32 at 7. Because "Plaintiff has not obtained a CSA exemption that would render" ayahuasca use legal, the Court held that its "substantial purpose remains in violation of federal law." *Id.* at 7-8.

The district court also ruled that ICH lacked Article III standing to assert an RFRA claim. With respect to ICH's chilling effect argument, it stated that ICH would have standing under RFRA only "against the DEA and only after a final determination is made on its application, not before and not against the IRS." *Id.* at 11-12. The district court dismissed ICH's two other asserted injuries-in-fact in a single footnote, opining that "Plaintiff's claimed reputational injury is not

11

sufficiently concrete since the record contains no evidence that the IRS Determination Letter has caused any stigmatic harm" and "plaintiff's claimed economic injury, even if this could satisfy the injury-in-fact requirement, flunks the traceability and redressability requirements because such injury depends entirely on the independent decisions of third-party donors." *Id.* at 12 n.7.

## SUMMARY OF ARGUMENT

It is undisputed – or at least, must be assumed in ICH's favor on appeal from the district court's grant of summary judgment to the IRS – that:

(1)      ICH is entitled to tax-exempt status under 26 U.S.C. § 501(c)(3) as a religious and charitable organization unless it is disqualified as organized or operated in substantial part for illegal purposes because of its ayahuasca sacrament;

(2)      ICH's ayahuasca sacrament is a sincere exercise of religion, *see* D.E. 22-1, at 2-5, which is protected by RFRA, which the Government can prohibit or otherwise substantially burden only if its actions withstand strict scrutiny. *See* 42 U.S.C. § 2000bb-1(a)-(b); *O Centro,* 546 U.S. 418 (holding that the Government failed to justify under RFRA's strict scrutiny standard treating as criminal sacramental use of ayahuasca strikingly similar to ICH's ayahuasca sacrament); and

12

(3)     under its articles of incorporation, ICH is organized to operate within the law, *see* D.E. 29-2, at 9, and since August 2019, ICH has suspended its ayahuasca sacrament pending confirmation of its legality, *see* D.E. 22-1, at 7-8.

Yet the IRS and, on *de novo* review, the district court held ICH's currently suspended ayahuasca sacrament disqualifying under the Tax Code, and the district court held that ICH lacks constitutional standing to bring its RFRA claim. The district court erred both in rejecting ICH's Tax Code claim on the merits and in rejecting ICH's RFRA claim for lack of standing.

### A.     Tax Code Claim

The district court (1) treated ICH's ayahuasca sacrament as illegal because, despite applying to DEA for a religious exemption under the CSA almost five years ago and diligently pursuing that application, ICH has not yet received a decision; and (2) held, based on that premise, that ICH is not organized and operated exclusively for lawful, tax-exempt purposes, and is therefore not entitled to 501(c)(3) status. It erred on both points.

First, the district court erred in assuming what amounts to an exhaustion of administrative remedies requirement before RFRA can be asserted in controlled substances cases. Religious sacraments involving controlled substances are not, as the district court held, illegal unless and until the DEA grants a CSA exemption (or a court orders it to do so). Instead, they are presumptively legal under RFRA

unless and until the Government satisfies RFRA's strict scrutiny test. In *O Centro,* 546 U.S. 418, the Supreme Court ruled in favor of an ayahuasca church that had never sought a CSA exemption. The district court's assumption that ICH's ayahuasca sacrament is illegal while ICH's CSA exemption application is pending is unfounded.

ICH's ayahuasca sacrament is a sincere exercise of religion protected by RFRA's strict scrutiny test, and materially indistinguishable from the *O Centro* church's ayahuasca sacrament. As such, ICH's ayahuasca sacrament is presumptively, and almost certainly, legal. But even if its legality is considered uncertain, that is not enough to disqualify an otherwise valid 501(c)(3) application. An otherwise valid religious or charitable purpose must be *clearly* illegal and contrary to public policy to be disqualifying. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 592 (1983).

Second, the district court erred in ignoring the undisputed facts that ICH is organized to operate within the law, and that ICH has suspended its ayahuasca sacrament indefinitely (for over four and a half years already as of this filing) pending confirmation of its legality. ICH proposes to conduct its ayahuasca sacrament only if and when its legality is confirmed. Even if ICH's ayahuasca sacrament were ultimately determined to be illegal (in which case, ICH would not

conduct it), that would not disqualify ICH from tax-exempt status under the Tax Code.

### B.     RFRA Claim

The district court did not reach the merits of ICH's RFRA claim, but instead dismissed it for lack of Article III standing. In essence, the district court reasoned that ICH wants to conduct its ayahuasca sacrament without violating the CSA; the IRS is not authorized to issue a final and binding determination of what does or does not violate the CSA; therefore, the IRS could not give ICH what it wants. That is true as far as it goes. But ICH also wants to conduct its many other religious and charitable activities, *see* D.E. 29-2, at 6-7, and to organize and solicit members and financial support in preparation for a time when the legality of its ayahuasca sacrament will be confirmed, and to be tax-exempt while doing so. The IRS's denial of a tax exemption is a direct legal and economic injury to ICH, redressable by a ruling ordering the IRS to grant 501(c)(3) status, that amply meets the constitutional minimum requirements for standing. *See, e.g., Baptist Hospitals, Inc. v. United States*, 851 F.2d 1397, 1400 (Fed. Cir. 1988); *CREATE v. Commissioner of Internal Revenue,* 634 F.2d 803, 813 (5th Cir. 1981). And those minimum constitutional requirements do not depend on the legal theory (RFRA versus Tax Code) under which the cause of action is pled.

Since the district court did not address the merits of ICH's RFRA claim, this Court could instruct it to do so on remand. But ICH's RFRA case is compelling on the merits. Based solely on ICH's currently suspended ayahuasca sacrament, which is a sincere exercise of religion, the IRS denied ICH a tax-exempt status it would otherwise have been granted – a tax-exempt status that is essential for an early-stage religious organization endeavoring to build membership and financial resources needed to pursue its religious mission. That economic penalty on religious belief and practice is subject to strict scrutiny under RFRA, 42 U.S.C. § 2000bb-1(a)-(b). *See, e.g., Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 710 (2014) ("*Hobby Lobby*"). And the IRS entirely failed to justify it under strict scrutiny when ICH moved for summary judgment in the district court.

## STANDING

ICH sued the IRS, under both the Tax Code, 26 U.S.C. § 7428, and RFRA, 42 U.S.C. § 2000bb-1, for denying ICH's application for tax-exempt status under 26 U.S.C. § 501(c)(3). Under both of those provisions, statutory standing extends to the full extent of any "case or controversy" for which standing exists under the Constitution. *See* U.S. Const., art. III § 2; 26 U.S.C. § 7428(a); 42 U.S.C. § 2000bb-1(c). As further elaborated in Argument Section III.A below, ICH has standing because it was the applicant in the administrative proceeding before the IRS and the IRS's decision, which ICH seeks to reverse, denied IRS an inherently

16

valuable and economically significant statutory right: tax exempt status under § 501(c)(3).

## ARGUMENT

## I.   THE STANDARD OF REVIEW APPLICABLE TO ALL ISSUES ON APPEAL IS *DE NOVO.*

*De novo* review applies to every issue in this case.

### A.   Appellate Review

Because the district court granted summary judgment to appellee the IRS on both counts, all aspects of its decision must be reviewed *de novo* on appeal. *See, e.g., Thompson v. District of Columbia,* 832 F.3d 339, 344 (D.C. Cir. 2016). This Court must "view the evidence in the light most favorable to the party opposing summary judgment, [*i.e.,* ICH,] draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations. Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' There is a genuine issue of material fact 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (citations omitted).[2]

---

[2] The standard of review is unaffected by the fact that ICH also moved for summary judgment; a cross-motion for summary judgment does not concede the factual assertions made in support of the opposing motion. *See, e.g., CEI Wash. Bureau, Inc. v. DOJ*, 469 F.3d 126, 129 (D.C. Cir. 2006).

17

### B.    Review of IRS Action

This Court has noted conflicting authorities regarding whether a trial court entertaining an action under 26 U.S.C. § 7428(a), such as the district court with respect to Count 1 of ICH's complaint, should review *de novo* or with deference the IRS's decision denying a tax exemption. *Fund for the Study of Economic Growth & Tax Reform v. IRS,* 161 F.3d 755, 757 n.5 (D.C. Cir. 1998). In the present case, the district court reviewed the IRS's determination *de novo*. *See* D.E. 32, at 10. Given that, this Court must review the district court's decision on the basis that no deference is owed to the IRS. *See Fund for the Study of Economic Growth & Tax Reform*, 161 F.3d at 757 n.5.

The IRS's action must also be reviewed *de novo* in the context of Count 2, ICH's RFRA claim. The determinations required by 42 U.S.C. § 2000bb-1 are questions of law. *See, e.g., Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008); *United States v. Friday*, 525 F.3d 938, 949 (10th Cir. 2008).

## II.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE IRS ON ICH'S TAX CODE CLAIM.

Reviewing the IRS's decision *de novo*, D.E. 32, at 10, the district court held incorrectly that ICH does not qualify for tax-exempt status under § 501(c)(3),

---

*De novo* review of the district court's decision on ICH's RFRA claim is required for another reason, too: Article III standing is reviewed *de novo* on appeal. *See, e.g., Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023).

solely because ICH's ayahuasca sacrament "remains in violation of federal law" unless and until ICH has secured a CSA exemption from the DEA. *Id.* at 7-8; *see also id.* at 8-9 (the ayahuasca sacrament "disqualif[ies] plaintiff for the exemption"); *id.* at 10 ("The IRS correctly concluded that, until plaintiff obtains a CSA exemption, its promotion and use of ayahuasca remains illegal under federal law, and plaintiff is neither organized nor operated exclusively for public purposes.").

ICH has never disputed that:

(1)      conducting the ayahuasca sacrament is one of its major purposes, *insofar as doing so is legal*;

(2)      if one of its major purposes is clearly illegal, it will not be entitled to tax-exempt status, *see Bob Jones,* 461 U.S. at 591 ("the purpose of a charitable trust [eligible for 501(c)(3) status] may not be illegal or violate established public policy.");[3] *Better Bus. Bureau v. United States*, 326 U.S. 279, 283 (1945) (a "substantial" non-exempt purpose precludes 501(c)(3) recognition); and

---

[3] Neither the IRS nor the district court suggested that "public policy" provides an independent basis for decision if ICH's ayahuasca sacrament is not illegal under federal law, and on a proper reading of *Bob Jones*, "there can be a public policy justifying denial of a tax exemption only if a statute duly enacted by Congress establishes such a policy." R. Wiacek, N. Francisco & V. Suri, *Tax Exemptions and Same-Sex Marriage*, 7 Colum. J. Tax. L. 14, 14 (2016).

(3)     ICH's ayahuasca sacrament will be illegal under the CSA, 21 U.S.C. §

812, *unless either* (a) it obtains a CSA exemption from the DEA, which

(notwithstanding diligent efforts) it has not yet done, *or* (b) RFRA makes it legal.

But there are two independent fatal flaws in the district court's reasoning.

**A.     ICH's Ayahuasca Sacrament Is Presumptively Legal Or, At Worst, Of Unresolved Legality; It Is Not Clearly Illegal, As Would Be Required To Potentially Disqualify ICH From 501(c)(3) Status.**

Neither the IRS nor the district court have denied that ICH would be entitled

to tax-exempt status but for the district court's premise that its ayahuasca

sacrament is illegal. *See* 26 U.S.C. § 501(a) (an organization that meets the

requirements set by § 501(c)(3) "*shall* be exempt from taxation") (emphasis

added). So the district court's decision must be reversed if that premise is

unfounded. It is unfounded because it rests on a non-existent exhaustion of

administrative remedies requirement. By virtue of RFRA, ICH's ayahuasca

sacrament is presumptively and almost certainly legal. At worst, its legality is

uncertain, and a purpose of uncertain legality is not disqualifying under §

501(c)(3).

1.     *The District Court's Decision Rests On A Non-Existent Exhaustion Of Administrative Remedies Requirement.*

The district court acknowledged that ICH's ayahuasca sacrament might

ultimately be deemed legal as an exercise of religion protected by RFRA, just as

20

the Supreme Court treated the materially indistinguishable ayahuasca sacraments of the O Centro church as legal. D.E. 32, at 9. Accordingly, it acknowledged that ICH might be entitled to an exemption from the CSA. *Id.* (citing 21 U.S.C. § 822(d); 21 C.F.R. § 1307.03).[4] But it opined that "whether plaintiff's showing made to the DEA is sufficient to qualify for this exemption remains an open question that is not before this Court." *Id.* at 9-10. The court also acknowledged that if the DEA did not grant ICH a CSA exemption, ICH could make a claim based on RFRA, but it opined that "that claim must be raised against the DEA and only after a final determination is made on [ICH's] application, not before and not

---

[4] In addition to the flaws in its exhaustion of administrative remedies theory identified in the text, the district court's citation for the CSA exemption is problematic in light of inconsistent positions taken by the Government. In this case, the IRS argued, and the district court agreed, that the only proper way to assert that activities otherwise prohibited by the CSA are lawful under RFRA is under 21 U.S.C. § 822(d) and 21 C.F.R. § 1307.03. D.E. 32, at 11. But in a brief filed last month, the Department of Justice argued that neither provision authorizes the DEA to grant a religious exemption from criminal liability for possession of a controlled substance. *United States v. Safehouse*, E.D. Pa. No. 2:19-cv-00519-GAM, United States' Reply Mem. in Support of Motion to Dismiss, D.E. 225, at 26-27 (filed Sept. 20, 2023). Thus, while the Government has published guidance (which ICH followed) on how to seek a religious exemption from the DEA, *see* Drug Enforcement Administration, *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)* (Nov. 20, 2020), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf, it appears unwilling to commit to any legal authority for CSA exemptions apart from RFRA itself. The Government cannot have it both ways: if RFRA is the sole basis for religious exemptions from the CSA, it cannot be subject to exhaustion of a (non-existent) separate remedy under the CSA.

against the IRS." *Id.* at 11-12. On that basis, the district court agreed with the IRS that "until plaintiff obtains a CSA exemption, its promotion and use of Ayahuasca remains illegal under federal law." *Id.* at 10.

In effect, the court premised its decision on an exhaustion of administrative remedies requirement: ICH could argue that (like the O Centro church) its ayahuasca sacrament is a legal religious practice (by virtue of RFRA) rather than an illegal activity (under the CSA), but the IRS need not, and the court would not, consider that argument unless and until ICH prevailed on it before, or on judicial review of, the DEA. But precedent rejects any such requirement, which would be anathema to Congress's goals in enacting RFRA, particularly given the reality of the DEA's administration of the CSA.

RFRA is not just a *remedial* cause of action that can be brought if certain procedural preconditions are met. Congress enacted RFRA to protect the fundamental freedom of religion by restoring *substantive* restrictions on the Government that had been imposed by First Amendment precedent prior to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). *See* 42 U.S.C. § 2000bb(a)(4), (b)(1). Congress expressly provided that RFRA is intended to create not just a "claim," but also a "defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb(b)(2). In other words, RFRA sets substantive standards about what conduct the Government

22

can and cannot deem illegal (or otherwise restrict) that are effective without

requiring a religious organization to commence a judicial or administrative

proceeding to trigger them.[5]

Accordingly, precedent in cases at the intersection of the CSA and RFRA is

clear that there is no requirement to exhaust administrative remedies at the DEA.

In *O Centro*, the church had not applied for – much less, secured – a CSA

exemption; instead, it attempted to evade law enforcement by concealing its

importation of ayahuasca. *See O Centro Espirita Beneficente Uniao do Vegetal v.

Ashcroft*, 389 F.3d 973, 980-81 (10th Cir. 2004) (Murphy, J., concurring in part

and dissenting in part). That did not prevent the Supreme Court from holding

unanimously, at the preliminary injunction stage, that the DEA could not treat the

O Centro church's ayahuasca sacrament as illegal and enforce the CSA against it.

*O Centro*, 546 U.S. 418. In doing so, the Court discussed 21 U.S.C. § 822(d), the

statutory waiver provision cited by the district court here in support of an

exhaustion of administrative remedies requirement. The Supreme Court noted that

---

[5] Because RFRA determines what the Government can and cannot treat as illegal,
the district court's opinion is flawed to the extent that it omits consideration of
RFRA in its analysis of ICH's Tax Code claim, deferring it to the separate RFRA
claim which it then dismisses on standing grounds. ICH's complaint raises two
distinct RFRA issues: (1) under the Tax Code count, does RFRA prohibit the
Government from treating ICH's tea ceremonies as criminal, thereby negating the
illegality premise of the IRS's Tax Code ruling?; (2) under the RFRA count, did
the IRS's denial of a tax exemption to ICH based on ICH's religious practices
violate RFRA?

§ 822(d) undermined the Government's argument for a compelling governmental

interest in uniform enforcement of the CSA. 546 U.S. at 432-33. But the Court

rejected any suggestion that a church must avail itself of that provision, or

otherwise seek an exemption from the DEA, before seeking judicial relief:

> RFRA . . . plainly contemplates that courts would recognize
> exceptions—that is how the law works. *See* 42 U.S.C. § 2000bb–1(c)
> ("A person whose religious exercise has been burdened in violation of
> this section may assert that violation as a claim or defense in a judicial
> proceeding and obtain appropriate relief against a government"). . . .
> RFRA makes clear that it is the obligation of the courts to consider
> whether exceptions are required under the test set forth by Congress.

*Id.* at 434.

Notwithstanding *O Centro*, the Government has argued for an exhaustion of

administrative remedies requirement in several subsequent cases. But courts have

repeatedly rejected that argument. As the Ninth Circuit explained:

> The Government argues that we should require Plaintiffs to exhaust
> this administrative remedy [a CSA exemption], because doing so
> would allow the DEA to apply its expertise to Plaintiffs' claim,
> possibly moot the case if the claim is granted, and help build a record
> for judicial review.
>
> We decline, however, to read an exhaustion requirement into RFRA
> where the statute contains no such condition, see 42 U.S.C. §§
> 2000bb–2000bb–4, and the Supreme Court has not imposed one.
> Indeed, the Supreme Court has reviewed a RFRA-based challenge to
> the CSA without requiring that the plaintiffs first seek a religious use
> exemption from the DEA.

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (*citing O Centro*).[6]

The district court therefore erred in concluding that "the holding in *O Centro* stands only for the principle that obtaining a CSA exception for religious use of Ayahuasca is possible, if such use is in fact a sincere religious exercise." D.E. 32, at 9. *O Centro* and its progeny stand for the proposition (consistent with RFRA's plain language) that RFRA prohibits the Government from substantially burdening a sincere exercise of religion, including an ayahuasca sacrament, unless its actions satisfy strict scrutiny, and provides direct judicial remedies to ensure that it does not.

---

[6] Exhaustion requirements based on the possibility of obtaining a CSA exemption from the DEA were likewise rejected in *Arizona Yage Assembly v. Garland,* 2023 WL 3246927595, *4 (D. Ariz. May 4, 2023), and *Church of the Eagle and the Condor v. Garland,* No. 22-cv-01004-SRB, D.E. 26, at 6 n.4 (D. Ariz. March 20, 2023). *See also Arizona Yage Assembly v. Garland*, 595 F. Supp. 3d 869, 880 (D. Ariz. 2022) (holding that to the extent that DEA's guidance on CSA exemptions may be read to assert an administrative exhaustion requirement, it is wrong and without legal effect); *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) (noting that RFRA, unlike the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et seq.,* contains no express exhaustion requirement and concluding that "RFRA certainly provides no textual support for the defendants' position that the plaintiff is required to exhaust administrative remedies in a court-martial proceeding before bringing his constitutional and RFRA claims before this Court."); *cf. Doster v. Kendall,* 48 F.4th 608, 614 (6th Cir. 2022) (stating, in a different context, "whether RFRA claims are even subject to an exhaustion requirement is an open question.").

Granting a CSA exemption is one way for DEA to avoid violating RFRA, but that is all it is. If CSA exemptions were readily and promptly granted in deserving cases, the Government could potentially argue – on the merits under RFRA, rather than as an exhaustion point – that requiring churches to obtain a CSA exemption from the DEA before practicing their religion does not amount to a substantial burden on religion or is the least restrictive means to further a compelling governmental interest. 42 U.S.C. § 2000bb-1(b); *see, e.g., United States v. Sterling,* 75 M.J. 407, 419-20 (C.A.A.F. 2016) (holding that while exhaustion of administrative remedies is not required in the RFRA context, a requirement that a military serviceperson alert her superiors to a non-obvious religious concern and request an accommodation before suing would not violate RFRA because it would not substantially burden her exercise of religion).

Indeed, if the DEA promptly granted CSA exemptions in meritorious cases, this case would not be before this Court. Unlike the *O Centro* church, ICH has been candid about its proposed ayahuasca use since it was founded; it filed a CSA exemption application in February 2019, before it began operations; it suspended its ayahuasca sacrament after a few months when that exemption was not promptly granted; it has continued to suspend its ayahuasca sacrament, now for nearly five years, while it awaiting a diligently pursuing a CSA exemption decision from the

26

DEA. If the DEA grants ICH a CSA exemption while this appeal is pending, ICH

expects that the IRS will grant it 501(c)(3) status and this appeal will be mooted.

The reality, however, is that after almost five years, the DEA has not ruled

on ICH's CSA exemption application. Indeed, the DEA has not even indicated a

preliminary view on its merit or provided a timeline for decision. And, far from

being an isolated problem, sitting on CSA exemption applications without any

decision, leaving religious organizations in limbo and holding the threat of

criminal enforcement over them, appears to be the DEA's standard practice. Apart

from cases involving peyote, ICH is unaware of any instance in which the DEA

has granted a CSA exemption application on religious grounds without a court

order.

The district court opined that ICH must await a DEA decision before it can

go to court. *See* D.E. 32, at 12 (stating that ICH could go to court "only after a final

determination is made on its application [by the DEA], not before"). ICH is

currently considering whether to file an action against the DEA seeking declaratory

relief under RFRA and/or mandamus. *But see Van Kush v. Drug Enforcement

Admin.*, 2022 WL 1978730, *3 (D.D.C. June 6, 2022) (holding that the district

court lacked jurisdiction to grant mandamus notwithstanding that the DEA had

failed for almost five years to act on a CSA religious exemption application). But

even if ICH has that option, it would be anathema to the Congress that enacted the

RFRA to require a church to ask the DEA's permission,[7] then wait years while the DEA fails to issue a decision, and then obtain a court order, before it can lawfully practice its religion.[8]

In sum, the district court's exhaustion of administrative remedies premise is contrary to the language and purpose of RFRA and Supreme Court and at least Ninth Circuit precedent, and it ignores the realities of the DEA's administration of the CSA. A different approach to the issue of whether the IRS was justified in treating ICH's ayahuasca sacrament as illegal is, therefore, required.

2.     *Under RFRA And O Centro, ICH's Ayahuasca Sacrament Is Presumptively And Almost Certainly Legal.*

Given the substantive restrictions RFRA imposes on the Government's ability to criminalize religious activities, ICH's ayahuasca sacrament is presumptively, and almost certainly, legal. RFRA provides that the Government "shall not substantially burden a person's exercise of religion," even with a neutral,

---

[7] Far from entrusting the administration of RFRA to political actors such as the Attorney General or his delegates at the DEA, Congress concluded, in the House Report on the final bill that became RFRA: "It is not feasible to combat the burdens of generally applicable laws on religion by relying on the political process . . . ." H. Rep. No. 103-88, Religious Freedom Restoration Act of 1993, at 6 (May 11, 1993).

[8] "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion). For that reason, the application of judicially created exhaustion of remedies requirements is disfavored when religious freedom claims are at stake. *See, e.g., U.S. Navy Seals 1-26 v. Biden*, 578 F. Supp. 3d 822, 834 (N.D. Tex. 2022).

generally applicable rule, unless "it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). Criminalizing an exercise of religion certainly imposes a substantial burden, so a sincere exercise of religion is necessarily legal unless criminalizing it satisfies strict scrutiny.

The ayahuasca sacrament ICH seeks to conduct falls under RFRA's protection. RFRA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see* 42 U.S.C. § 2000bb-2(4), and that protection is to be broadly construed, 42 U.S.C. § 2000cc-3(g). *See Hobby Lobby,* 573 U.S. at 695-96. Further, "the 'exercise of religion' involves 'not only belief and profession but the performance of (or abstention from) physical acts' that are 'engaged in for religious reasons.'" *Id.* at 710 (citations omitted). ICH's ayahuasca sacrament is a sincere exercise of religion. The IRS has never contended otherwise, and it has admitted that ICH "wishes to offer the public access to spiritual growth, development and healing through the sacred ayahuasca sacrament provided under the guidelines of North and South American indigenous traditions and cultural values," and that the ayahuasca sacrament is an established "spiritual practice" that is part of ICH's

"religious ceremonies," which are open to persons with "sincerity of thought and spiritual reflection." D.E. 22-1, at 2-5.[9]

As such, the burden is on the Government to justify, under strict scrutiny, any action treating ICH's ayahuasca sacrament as illegal. 42 U.S.C. § 2000bb-1(b). In other words, ICH's ayahuasca sacrament is presumptively legal. *Cf. Barr v. Am. Ass'n of Political Consultants, Inc.,* 140 U.S. 2335, 2360 (2020) (Breyer, J., concurring in part and dissenting in part) (government action subject to strict scrutiny carries a "strong presumption of unconstitutionality").

In briefing the cross-motions for summary judgment, the Government made no attempt to demonstrate that treating ICH's ayahuasca sacrament as illegal under

---

[9] The Supreme Court's interpretation and application of RFRA in *O Centro* leaves little if any room for doubt that ICH's religious practices as reflected in the summary judgment record are lawful. ICH recognizes that *O Centro* does not establish that every use of ayahuasca is necessarily lawful by virtue of RFRA. *See* D.E. 32, at 9. But the administrative and summary judgment record in this case establishes that ICH's ayahuasca sacrament is sincerely religious and not materially different from the ayahuasca sacrament that the Government conceded was protected by RFRA, and the Supreme Court treated as lawful by virtue of RFRA, in *O Centro*, or the ayahuasca sacraments of other churches the IRS has approved for 501(c)(3) status. *See* D.E. 32, at 10 n.5; D.E. 22-1, at 11-13. The only evident difference between ICH and the O Centro church is that whereas the O Centro church concealed its activities until they attracted criminal enforcement, ICH has been candid, proactive and cooperative from the start in its dealings with the DEA and the IRS. ICH's diligent and respectful approach to law enforcement should provide assurance that Government interests such as avoiding diversion of ayahuasca to unsafe and non-religious users can be met by less restrictive means than treating ICH's religious exercise as criminal.

the CSA would be consistent with the strict scrutiny RFRA mandates, and in granting summary judgment against ICH, the district court did not attempt to apply the RFRA strict scrutiny standard. The presumption, based on RFRA, that ICH's ayahuasca sacrament is legal therefore remains unrebutted. Moreover, while every RFRA case ultimately depends on its individual facts, the Supreme Court's rejection in *O Centro* of the DEA's justifications for treating the ayahuasca sacrament as illegal (even when practiced by a church that was far less diligent about avoiding potential illegality than ICH) makes it highly unlikely that any justification the Government could provide for treating ICH's ayahuasca sacrament as illegal would pass muster. As the Supreme Court remarked in *Hobby Lobby*, even when the Government demonstrates a compelling governmental interest under 42 U.S.C. § 2000bb-1(b)(1), the § 2000bb-1(b)(2) "least-restrictive-means standard is exceptionally demanding." 573 U.S. at 728.

Accordingly, ICH's ayahuasca sacrament should be treated as presumptively and, indeed, almost certainly, legal.

3.    *At Worst, The Legality Of ICH's Ayahuasca Sacrament Is Uncertain, Which Does Not Disqualify ICH From 501(c)(3) Status.*

Alternatively, assume the district court's premise that the ultimate legality of ICH's ayahuasca sacrament is "an open question," the answer to which is beyond the remit of the IRS and courts reviewing the IRS's decision. D.E. 32, at 10. Since,

31

contrary to the district court's assumption, there is no exhaustion of administrative remedies requirement when the CSA and RFRA intersect, that assumption entails that the IRS must treat the (current, as well as future) legality of ICH's ayahuasca sacrament as uncertain. That leads to a question that the district court did not address: what does the Tax Code require when the only obstacle to granting a 501(c)(3) tax exemption to a religious organization is an organizational purpose or activity that may or may not turn out to be legal?

That question is by no means unique to controlled substances cases, and must have arisen thousands of times since what is now section 501(c)(3) was enacted almost 130 years ago.[10] Legal uncertainty commonly surrounds the mission and activities of minority religions, *see, e.g., Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) (finely parsing First Amendment law to invalidate a local prohibition of religious animal slaughter practices), religious and other groups pursuing civil rights and other charitable missions, *see, e.g., Church Sanctuary for Illegal Aliens*, 7 Op. O.L.C. 168 (1983), https://www.justice.gov/sites/default/files/olc/opinions/1983/10/31/op-olc-v007-p0168_0.pdf (opining that "[p]roviding church sanctuary to illegal aliens probably violates" the Immigration and Nationality Act); *Parsley v. Bentley*, N.D. Ala. No.

---

[10] Corporations "conducted solely for charitable, religious, or educational purposes" were first exempted from federal taxation in 1894. Act of Aug. 27, 1894, ch. 349, § 32, 28 Stat. 509, 556.

11-cv-2736, Pltf.-Bishops' First Am. Compl., 2011 WL 3801841 (filed Aug. 11, 2011) (suit by multi-denominational bishops presenting free exercise challenge to state law criminalizing sanctuary for noncitizens), and "mainstream" churches, *see, e.g., Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (5-4 vote enjoining enforcement of state restrictions on in-person communion during the covid crisis); *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (5-4 vote upholding similar covid-based restrictions); *Sisters of St. Francis Health Servs., Inc. v. Morgan County, Ind.,* 397 F. Supp. 2d 1032, 1049-51 (S.D. Ind. 2005) (denying a religious freedom-based challenge to a requirement of a certificate of need to operate a hospital); *IRS General Counsel Memorandum 39800*, 1989 WL 592766 (Oct. 25, 1989) (upholding a church's 501(c)(3) status after analyzing whether its partnership with public schools to provide biblically-based instruction violated the Establishment Clause).

Congress did not intend or equip the IRS to resolve such controversies, and surely did not intend the IRS to deny 501(c)(3) status to otherwise eligible churches and charities based on debatable legal theories, or until the Supreme Court has resolved the issue, the covid crisis is over, or a certificate of need has been granted. Indeed, Congress did not even provide that an illegal purpose is a bar to 501(c)(3) status.

Instead, the rule recognized by the Supreme Court in *Bob Jones* that "the purpose of a charitable trust [eligible for 501(c)(3) status] may not be illegal or violate established public policy," 461 U.S. at 591, rests on an inference that Congress intended to require that a tax-exempt entity be "charitable" in the common-law sense, which requires that "the purpose of the trust may not be illegal or contrary to public policy." IRS Rev. Rul. 71-447, 1971-2 C.B. 230 (1971). As a judicially implied limitation on an express congressional grant of tax exemptions, it should be construed narrowly. *See generally* M. Yaffa, *Comment, The Revocation of Tax Exemptions and Tax Deductions for Donations to 501(c)(3) Organizations on Statutory and Constitutional Grounds*, 30 U.C.L.A. L. Rev. 156 (1982). And it has been. In the leading case, *Bob Jones*, the Supreme Court instructed that "a declaration that a given institution is not 'charitable' should be made only where there can be *no doubt* that the activity involved is contrary to a fundamental public policy." *Bob Jones,* 461 U.S. at 592 (emphasis added). And the illegality/public policy doctrine has been held to bar tax-exempt status only in a handful of extreme cases, mostly involving institutions, like Bob Jones University, with invidious racial discrimination at their core. *See* L. Hitoshi Mayer & Z. Pohlman, *What is Caesar's, What is God's: Fundamental Public Policy for Churches,* 44 Harv. J.L. & Pub. Policy 145 (2021) (noting that "[t]he IRS has rarely applied *Bob Jones University* to churches," *id.* at 157, and identifying just

34

five such instances, all involving clear illegality and/or invidious racial

discrimination, *id.* at 157-60); *IRS General Counsel Memorandum* 39800, 1989

WL 592766, *3 ("Only rarely has the Service asserted that an organization was not

described in section 501(c)(3) based on illegal acts or violations of clear federal

public policy outside the area of racial discrimination in education."); *IRS General*

*Counsel Memorandum 37858*, 1979 WL 52716, *3 (Feb. 16, 1979) (apart from

precluding 501(c)(3) recognition of institutions promoting racial discrimination,

"research has not disclosed any other use of the public policy rationale with respect

to tax exemption questions").

    The IRS and the district court failed to apply the *Bob Jones* "no doubt"

standard in this case; they failed to give ICH the benefit of any doubt. There is, at a

minimum, substantial doubt as to whether ICH's ayahuasca sacrament will

ultimately be deemed illegal, given the interaction of RFRA with the CSA. The

mere possibility that it might ultimately be deemed illegal does not disqualify ICH

from 501(c)(3) status. If it ever became clear that ICH was violating the law, tax-

exempt status can be revoked. *See IRS General Counsel Memorandum 39800,*

1989 WL 592766, *12. But there is no basis for denying it, and treating RFRA-

protected activity as illegal, in circumstances of legal uncertainty. *See, e.g., id.*

    **B.**    **ICH Meets The Organizational And Operational Tests Regardless**
           **Of How The Legality Of Its Ayahuasca Sacrament Might**
           **Ultimately Be Resolved, Because It Is Committed To Operate**

**Within The Law And Does Not And Will Not Conduct Any Activities That May Be Illegal.**

The district court's decision would still be incorrect even if it would clearly be illegal for ICH to conduct its ayahuasca sacrament. ICH is organized and committed to comply with the law, and it has suspended its ayahuasca sacrament unless, until, and except insofar as its legality is confirmed. As such, regardless of the ultimate legal status of the ayahuasca sacrament, ICH satisfies both the organizational test and the operational test for 501(c)(3) status. 26 U.S.C. § 501(c)(3) (to qualify, and organization must be "organized and operated exclusively for religious, charitable, [etc.] purposes"); 26 C.F.R. § 1.501(c)(3)-1(a) ("both organized and operated . . .").

First, contrary to the district court's conclusion, D.E. 32, at 8-9, ICH is *operated* exclusively for exempt, lawful purposes. The district court held that the ayahuasca sacrament disqualified ICH's 501(c)(3) application because "the bulk of the organization's time is devoted to conducting or preparing for" it. *Id.* at 8. But that premise is refuted by the undisputed facts. The IRS expressly admitted that as of August 2019 – almost two years before IRS's final adverse determination letter – ICH "voluntarily suspended all of its [ayahuasca] ceremonies while it awaited its 501(c)(3) Determination Letter and DEA religious exemption." D.E. 22-1, at 7. ICH is not doing, and does not seek to do, anything illegal – or, indeed, anything even of unsettled legality. Instead, ICH has done, and continues to do, exactly what

36

a religious charity should do in the circumstances: (1) conducting religious and charitable activities authorized by its articles of incorporation that it can conduct without risking violating the law; (2) soliciting membership and financial support as best it can while constrained by legal uncertainty and the lack of 501(c)(3) status; and (3) diligently and candidly pursuing available legal avenues to confirm the legality of its proposed future activities and to secure 501(c)(3) status.[11]

Second, ICH is *organized* exclusively for exempt, lawful purposes. Whether an applicant meets the organizational test is primarily determined by reference to its articles of organization (*i.e.,* for any corporation, including ICH, its articles of incorporation). 26 C.F.R. § 1.501(c)(3)-1(b)(1)(i); *see also Commissioner of Internal Revenue v. John Danz Charitable Trust,* 284 F.2d 726, 733 (9th Cir. 1960) ("organized" "refers to the creation or establishment of the structure of the

---

[11] In 2019, before the IRS questioned whether its ayahuasca sacrament is legal under *O Centro*, ICH conducted several ayahuasca ceremonies based on its good faith – and probably correct – understanding that it is legal. D.E. 22-1, ¶¶ 27, 28. Even if those ayahuasca ceremonies were illegal, their suspension in August 2019 means that as of 2021, when the IRS issued its decision in this case, and as of today, ICH is not and was not operated at all – much less, substantially – for any non-exempt purpose. A tax exemption determination is a forward-looking decision focused on whether the exemption sought will be used to further non-exempt purposes in the future; prior discontinued conduct should not be disqualifying. *See, e.g., Branch Ministries v. Rossotti*, 211 F.3d 137, 143 (D.C. Cir. 2000) (opining that a church that forfeited 501(c)(3) status by engaging in non-exempt political activities could have its status restored if it renounced future non-exempt activities).

charitable entity, rather than to the actual activities of the entity."). Exempt

purposes may be stated specifically, or in broad terms that essentially recite

relevant words of the statute and the regulation. 26 C.F.R. § 1.501(c)(3)-1(b)(1)(ii).

Article IV of ICH's articles of incorporation, which devotes two pages to detailing

eight purposes and multiple sub-purposes that are exclusively and plainly religious,

charitable and educational, is ample. *See* D.E. 29-2, at 6-7; 26 C.F.R. §

1.501(c)(3)-1(d)(1)(i)(a), (b), (f). And article IX expressly provides that

notwithstanding any other provisions, ICH will not engage in any "activities not

permitted to be carried on" by a 501(c)(3) organization, which, of course, includes

illegal activities. D.E. 29-2, at 9.

     To be sure, an applicant does not qualify as exclusively organized for

exempt purposes if its articles "expressly empower the organization to engage,

otherwise than as an insubstantial part of its activities, in [non-exempt, including

illegal] activities." 26 C.F.R. § 1.501(c)(3)-1(b)(1)(i)(B). And the first of multiple

religious and charitable purposes listed in ICH's articles is "[t]o offer the public

access to spiritual growth, development and healing through the sacred Sacrament

of Ayahuasca provided under the guidelines of North and South American

Indigenous traditions and cultural values." D.E. 29-2, at 6 (art. IV(a)). But that

purpose limits any use of ayahuasca to religious (and, as such, RFRA-protected, so

likely lawful) use (as part of the "sacred Sacrament"); it does not specify how

"access" will be offered to the public, and certainly does not commit to doing so in an illegal manner;[12] and the plain meaning of article IX is that "notwithstanding" the potential breadth of article IV(a), it will not be implemented in circumstances in which its implementation would be illegal.[13]

That is not to say that a "no non-exempt activities" provision like ICH's article IX is always conclusive in and of itself. "[I]n searching for the intentions or motives behind the structure of a charitable entity, a court may look beyond the four corners of the creating instrument and may consider extrinsic evidence on this subject where it is helpful." *John Danz,* 284 F.2d at 733. Insofar as key extrinsic evidence of the purpose for which an entity is organized can be supplied by its actual operation, the operational and organizational tests tend to blend. *See, e.g., id.* at 733-34; *Taxation With Representation v. United States,* 585 F.2d 1219, 1222 (4th Cir. 1978). But here, the operational evidence only reinforces that ICH's

---

[12] For example, the DEA or a court might rule that ICH's ayahuasca sacrament is lawful if but only if ICH implements appropriate protocols to preclude the risk that ayahuasca is diverted to non-religious users or the general public. Consistent with its article IX commitment to operate lawfully, ICH intends to preclude that risk and would comply fully; nothing in article IV(a) or ICH's actual operations suggests otherwise.

[13] Under Iowa law, which governs the construction of the articles of incorporation of an Iowa corporation such as ICH, those articles must be construed in accordance with their plain meaning and "as a whole." *Oberbillig v. West Grand Towers Condominium Ass'n*, 807 N.W.2d 143, 150 (Iowa 2011). Hence, the limitation that article IX places on article IV cannot be ignored.

article IX is no mere fig leaf: consistent with its express commitment to operate within the law, ICH suspended its ayahuasca sacrament in 2019, notwithstanding ICH's good faith and likely correct understanding that it is lawful.[14] ICH has committed to operate, and is operating, clearly within the law, and penalizing it because article IV(a) of its articles of incorporation expresses the *aspiration* to conduct the ayahuasca sacrament is inconsistent with both the Tax Code and bedrock principles of religious liberty. *See, e.g., Employment Division v. Smith*, 494 U.S. at 877 ("the First Amendment obviously excludes all 'governmental regulation of religious *beliefs* as such.'") (citation omitted).

The plain text of ICH's articles of incorporation and the fact, conceded by the IRS, that ICH promptly suspended its ayahuasca sacrament when its legality was questioned, demonstrate that ICH is not organized or operated for any even arguably illegal purposes. Instead, it is organized and operated to pursue other religious and charitable purposes, including those set forth in articles IV(b)-(h) of its articles of incorporation, pending confirmation of the legality of its ayahuasca

---

[14] ICH's conscientiousness in avoiding any potential illegality confirms that it is organized as well as operated exclusively for exempt purposes, whether that test is viewed through the lens of federal tax law or state corporations law. Under Iowa law, articles of incorporation are construed like any other contract. *See, e.g., Oberbillig*, 807 N.W.2d at 150. And Iowa follows standard Restatement of Contracts principles under which a post-execution course of dealing can be used to resolve contractual ambiguities. *See, e.g., Alta Vista Properties, LLC v. Mauer Vision Center, PC*, 855 N.W.2d 722, 727 (Iowa 2014).

sacrament, and then to conduct the sacrament if and when its legality is confirmed. There is no risk that the grant of a tax exemption will support the conduct of illegal or other non-exempt activities, and no basis for the IRS's denial.

## III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE IRS, BASED ON ARTICLE III STANDING, ON ICH'S RFRA CLAIM.

Separate from its Tax Code claim, which is informed by RFRA (insofar as RFRA negates the IRS's illegal purpose premise for denying ICH 501(c)(3) status), ICH asserted a claim directly under RFRA against the IRS. The Tax Code claim and the RFRA claim challenge and seek declaratory relief to redress the same IRS conduct – the IRS's ruling denying ICH a tax exemption. However, despite the fact that neither the IRS nor the district court questioned ICH's Article III standing to bring the Tax Code claim, the IRS argued, and the district court held, D.E. 32, at 15, that ICH lacks constitutional standing to bring its RFRA claim.

Under both the Tax Code and RFRA, statutory standing extends to the full breadth of the constitutional grant of jurisdiction to federal courts to resolve a "case or controversy." *See* U.S. Const. art. III § 2; 26 U.S.C. § 7428(a); 42 U.S.C. § 2000bb-1(c). There is no basis for construing constitutional standing more narrowly in the context of a RFRA claim than in the context of a Tax Code claim that addresses the same injury and seeks the same redress. And the denial of a

501(c)(3) tax exemption – an inherently valuable and economically important statutory right – is an ample basis for constitutional standing.

Moreover, ICH's RFRA claim is compelling on the merits, and in its opposition to ICH's summary judgment claim, the IRS made no attempt to discharge its burden under RFRA's strict scrutiny standard. This Court should rule for ICH on its RFRA claim or, at a minimum, remand it to the district court to address it on the merits.

### A.    ICH Has Article III Standing.

A RFRA claim requires the bare minimum required for standing under Article III:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1(c).

"To establish standing [under Article III], a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 143 S. Ct. 1964, 1970 (2023). ICH's RFRA claim, like its Tax Code claim, is based on an action taken by the IRS that directly and specifically impacts ICH: the IRS's ruling denying ICH's application for a tax exemption on the basis that ICH is organized and operates to conduct what the IRS declared an illegal activity,

ICH's ayahuasca sacrament. *See, e.g.,* D.E. 25, at 13 ("The action the Church is challenging [under RFRA] is the Defendants' denial of the Church's application for tax-exempt status."); D.E. 16, at 7. ICH alleges that the IRS directly and specifically injured ICH by issuing a ruling against ICH, denying ICH's individual application, that violates ICH's rights under both the Tax Code and RFRA, and ICH seeks redress in the direct and effective form of a judicial order reversing that wrongful ruling.

In support of its RFRA claim, ICH alleged three specific concrete injuries directly caused by the IRS's adverse determination under the Tax Code. First, *chilling effect*: ICH alleged that the IRS's specific and erroneous ruling, in violation of RFRA, that ICH's ayahuasca sacrament is illegal injured ICH by chilling ICH's exercise of religious freedom and making it more likely that the DEA would violate RFRA by denying (or failing to grant) ICH an exemption under the CSA. Second, *reputational loss*: ICH alleged that the IRS's specific and erroneous rulings, in violation of RFRA, that ICH's ayahuasca sacrament is illegal and that ICH is organized and operated for an illegal purpose caused ICH reputational loss, leading to loss of existing and potential new members and supporters. Third, *legal and economic harm*: ICH alleged that in violation of RFRA, the IRS denied ICH tax-exempt status under 26 U.S.C. § 501(c)(3), along

43

with the economic benefits (tax exemptions, charitable contributions and membership income) that accompany that status. *See generally* D.E. 25, at 10-17.

The district court recognized that ICH had alleged those three distinct theories of injury directly caused to ICH by IRS's ruling denying its 501(c)(3) application, and that ICH sought redress for them by means of a judicial declaration reversing that ruling and refuting its premise. *See* D.E. 32, at 13 & n.7. But the district court addressed only the first in any detail, holding that any chilling effect was not traceable to the IRS's decision and would not be redressed by a favorable decision because "granting plaintiff tax-exempt status here would have no effect on how DEA" resolves ICH's application for a religious exemption under the CSA. *Id.* at 15. It dismissed the second and third alleged injuries in a footnote, holding that ICH's "claimed reputational injury is not sufficiently concrete," and ICH's economic injury in the form of lost membership income and potential charitable contributions due to denial of tax-exempt status "flunks the traceability and redressability requirements because such injury depends entirely on the independent decisions of third-party donors." *Id.* at 13 n.7.

Any one of the three injuries ICH alleged suffices to support its Article III standing if it meets the minimum constitutional requirements: (1) "an injury in fact that is concrete, particularized, and actual or imminent," that (2) "was likely caused by the defendant," and that (3) "would likely be redressed by judicial relief."

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). At least the third alleged injury – denial of tax-exempt status and the economic benefits that come with it – clearly does.[15]

ICH's complaint alleges that IRS's denial of its tax-exemption application "directly contradicts" *O Centro* – *i.e.,* it violates RFRA. D.E. 16, ¶ 7; *see also id.* ¶¶ 36-37 (alleging that the IRS's "binding adverse determination letter" violated RFRA). And it seeks as relief declarations that it is entitled to 501(c)(3) status, that its ayahuasca sacrament is a sincere exercise of religion protected by RFRA, and that the IRS has violated RFRA. *Id*., Request for Relief ¶¶ A-C. In other words, ICH alleges (1) an immediate individual injury – deprivation of 501(c)(3) status – that (2) was directly and wrongfully caused by the IRS – by its final adverse determination letter, issued in violation of RFRA – and that (3) would be redressed by the relief sought – declarations including one declaring that ICH is entitled to 501(c)(3) status.

---

[15] In focusing on one of three injuries caused by the IRS's decision, ICH does not minimize or waive its claim of standing based on the other two. The district court was right that the IRS's opinion on the legality of ICH's ayahuasca ceremonies will not be the final and authoritative word. But during the almost five years and counting that ICH has been awaiting a decision from the DEA on its CSA exemption application, the IRS's adverse opinion has been the only word, and it is directly causing a chilling effect of ICH's exercise of religion and harming ICH's reputation, thereby harming ICH's membership and support.

The district court apparently viewed ICH's loss of tax-exempt status as insignificant because its economic value "depends entirely on the independent decisions of third-party donors." D.E. 32, at 13 n.7. That implies that the district court treated tax-exempt status under § 501(c)(3) not as an inherently valuable legal status/property right, but instead as something of no value unless and until charitable donors make decisions based on it. That conclusory characterization defies logic, precedent and congressional intent, and threatens to create an unworkable chicken-and-egg problem.

First, denial of tax-exempt status either is or isn't an injury that gives rise to constitutional standing. Neither the IRS nor the district court questioned that in the context of the Tax Code claim, it suffices under Article III. But Article III does not impose different standing requirements depending on the legal framing of a cause of action; instead, an Article III inquiry focuses on the nature of the injury alleged, its causal relation to the defendant's conduct, and the remedy sought.

Second, precedent establishes that a complaint against the IRS alleging wrongful denial of tax-exempt status and seeking a declaration of entitlement to tax-exempt status passes muster under Article III without any need to inquire into its economic value or the actions of third-party donors in a particular case. In *Baptist Hospitals,* the Federal Circuit directly and categorically held that a 501(c)(3) applicant's challenge to "the denial or revocation of tax exempt status . .

46

. creates an actual controversy." 851 F.2d at 1400. Similarly, in *CREATE*, the Fifth Circuit categorically held that a challenge to an "adverse ruling" on tax-exempt status, or even a "favorable ruling on a non-private status that is a different and less advantageous status than the one which is the subject of the ruling request," satisfies Article III. 634 F.2d at 813; *accord Friends of Soc'y of Servants of God v. Commissioner of Internal Revenue,* 75 T.C. 209, 214-220 (Tax Ct. 1980).

Third, although Article III sets a constitutional, not statutory, standard, substantive law can be relevant when redressability is questioned (as it was by the district court's footnote). *See United States v. Texas,* 143 S. Ct. at 1970 ("Monetary costs are of course an injury," sufficient for standing if "the asserted injury is traditionally redressable in federal court."). As the above precedents reflect, wrongful denial by the IRS of tax-exempt status is traditionally redressable in federal court. And making it redressable was an important element of the congressional design of the Tax Code under which the IRS operates. In 26 U.S.C. § 7428(a), Congress created a judicial remedy to challenge an IRS adverse tax exemption decision extending as broadly as Article III would permit – in "a case of actual controversy." Congress enacted that provision "after, in effect, being urged to do so by the Supreme Court," which had highlighted the injustice of the pre-existing scheme, under which there was no statutory remedy available to a taxpayer whose tax exemption was withdrawn until after it had incurred tax

47

liability as a result. *Friends of Soc'y of Servants of God*, 75 T.C. at 214. With the Supreme Court's encouragement, Congress passed § 7428 "to provide nonprofit organizations claiming tax-exempt or non-private foundation status with an avenue for prompt judicial relief from erroneous or arbitrary determinations by the Internal Revenue Service." *Id.* at 215. The consensus of the Supreme Court and Congress in the Tax Code context that a party disputing a denial or withdrawal of tax-exempt status should not have to demonstrate a specific financial loss before challenging that denial in court is highly significant. And it is reinforced in the RFRA context by legislative history discussing 501(c)(3) tax exemptions specifically and affirming that "parties may challenge, under the Religious Freedom Restoration Act, the denial of benefits to themselves." H. Rep. No. 103-88, at 9.

Finally, dismissing the deprivation of tax-exempt status as a cognizable injury because its value "depends entirely on the independent decisions of third-party donors," D.E. 32, at 13 n.7, threatens to create an unworkable chicken-and-egg problem. A 501(c)(3) exemption is a valuable bundle of rights created by Congress to support and encourage charity: it includes an exemption from paying taxes on the charity's income, and the ability to offer tax benefits to donors, which has the intended and natural effect of making donations more likely. As such, a tax exemption is an inherently valuable statutory right and business asset. And while, like any other business entity, a charity's income will ultimately be determined by

48

decisions of third-parties that are "independent" in the sense that nothing *compels* them to provide it with income, charity donors' decisions are not entirely "independent" insofar as they are (as Congress intended) *incentivized* by the tax advantages that the charity's tax exemption provides.[16]

For some charities – especially small, early-stage charities like ICH – the economic inducement and credibility that a tax exemption provides for donors is an essential lifeline. With a tax exemption, they can attract members and donors; without a tax exemption, they may not be able to do so. Insofar as the district court's decision would require charities to show that they already have income from donors and members that would be subject to more favorable tax treatment

---

[16] As the district court noted, D.E. 32, at 13 n.7, in *Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013), the Supreme Court's reiterated its general "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment," *id.* at 413. But *Clapper* is readily distinguishable. *Clapper* rejected a theory of standing to challenge the constitutionality of a statute based on multiple infirmities – not least, the fact that U.S. persons were challenging the statute's authorization, subject to court order, of surveillance of foreign persons, which could potentially result in the Government collecting information it might equally collect by other means and other legal authorities. *See generally Clapper*, 568 U.S. at 410-15. And the "independent decisionmakers" involved in *Clapper* and the main case it cited on that point (*Whitmore v. Arkansas*, 495 U.S. 149 (1990)) were judges. There is every reason to deny standing based on a claim that a plaintiff may be injured by a decision by an independent judge in a separate and subsequent proceeding, since judges can be trusted to act in a truly independent manner, and the plaintiff's rights can be protected in that subsequent proceeding if and when it occurs. There is no reason to deny the obvious and congressionally intended effect of 501(c)(3) status on donor decisions.

with a tax exemption, it threatens to create a chicken-and-egg problem – no right to challenge the denial of a tax exemption without donors; no donors without a tax exemption – that would undermine Congress's intent in creating tax exemptions for precisely the applicants that need them most. Instead, this Court should join the Federal and Fifth Circuits in holding that a suit to reverse the wrongful denial by the IRS of a tax exemption always meets the minimum requirements of Article III.

### B.    ICH's RFRA Claim Is Compelling And Unrebutted On The Merits.

Because the district court erroneously dismissed ICH's RFRA claim on standing grounds, this Court can simply reverse and remand the RFRA claim for the district court to address its merits in the first instance. But on the clear record of undisputed facts generated by the parties' cross-motions for summary judgment, this Court can also proceed to rule in ICH's favor on the RFRA claim.

It is undisputed that ICH's activities constitute a sincere exercise of religion. *See* Section II.A, above. And while the IRS is not itself threatening to enforce the CSA against ICH, the IRS decision to penalize those activities by denying ICH a tax exemption to which it would otherwise be entitled represents a substantial burden on the exercise of religion within the meaning of RFRA. *See, e.g., Hobby Lobby*, 573 U.S. at 710 ("a law that 'operates so as to make the practice of . . . religious beliefs more expensive' . . . imposes a burden on the exercise of religion.").

50

Accordingly, the burden is on the IRS to justify its ruling under strict scrutiny. 42 U.S.C. § 2000bb-1(b); *O Centro*, 546 U.S. at 429. That burden is onerous; the 42 U.S.C. § 2000bb-1(b)(2) "least-restrictive-means standard is exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. But the IRS made no attempt to discharge it in response to ICH's motion for summary judgment.

Moreover, there is no conceivable justification for the IRS's decision to penalize ICH, by denying it a tax exemption to which it is otherwise entitled, for its aspiration to exercise its religion though the ayahuasca sacrament. To be sure, the Government has an interest in avoiding supporting illegal activities through the grant of a tax exemption. But since ICH has suspended its ayahuasca sacrament until its legality is confirmed, granting it 501(c)(3) status would not entail any risk of supporting illegal activities. And even in a case that does not implicate the exercise of religion, the governmental interest Congress instructed the IRS to serve requires it to deny tax-exempt status based on illegality "only where there can be no doubt that the activity involved is contrary to a fundamental public policy," *Bob Jones,* 461 U.S. at 592, which is certainly not the case here given *O Centro*. Furthermore, while decisions involving other entities may not constitute binding precedent in the context of a Tax Code claim, no effort to satisfy strict scrutiny under RFRA could survive the unexplained inconsistency between the IRS's denial

of tax-exemption to ICH and its grant of tax exemption to other ayahuasca churches, including the O Centro church. *See* D.E. 22-1, at 11-13.

Accordingly, ICH is entitled to prevail on the merits of its RFRA claim.

## CONCLUSION

The district court's decision should be reversed. ICH is entitled to prevail on its Tax Code claim because it is organized and operated exclusively for lawful religious and charitable purposes, and thus entitled to tax-exempt status under 26 U.S.C. § 501(c)(3).

ICH has standing to bring its RFRA claim because it alleges, and seeks redress for, the wrongful deprivation of an inherently valuable statutory right to tax-exempt status. That claim could be remanded to the district court, but the record is also ripe for a ruling on the merits in ICH's favor.

Dated: October 10, 2023                    Respectfully submitted,

William A. Boatwright
Dentons Davis Brown PC
215 10th Street, Ste. 1300
Des Moines, IA 50309
(515) 288-2500
bill.boatwright@dentons.com

/s/ Simon A. Steel[*]
Simon A. Steel
Katie Daw
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com

Joanne Caceres
Dentons US LLP
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606-6361
(312) 876-2862

*Counsel for Plaintiff-Appellant Iowaska Church of Healing*

---

[*] Member of DC Circuit and NY Bars; not admitted in DC.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. Proc.

32(a)(7)(B)(i) because it contains 12,864 words, excluding the parts of the brief

exempted by Fed. R. App. Proc. 32(f) and Local Rule 32(e)(1). It complies with

the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style

requirements of Fed. R. App. Proc. 32(a)(6) because it is set in 14-point Times

New Roman font.

Dated: October 10, 2023                    /s/ Simon A. Steel
                                           Simon A. Steel
                                           Dentons US LLP
                                           1900 K Street, NW
                                           Washington, DC 20006
                                           (202) 496-7077
                                           simon.steel@dentons.com

## ADDENDUM: PERTINENT STATUTES AND REGULATIONS

**21 U.S.C. § 822**.  Persons required to register

. . . .

(d) Waiver

The Attorney General may, by regulation, waive the requirement for registration of certain manufacturers, distributors, or dispensers if he finds it consistent with the public health and safety.

. . . .

**21 C.F.R. § 1307.03.**  Exceptions to regulations

Any person may apply for an exception to the application of any provision of this chapter by filing a written request with the Office of Diversion Control, Drug Enforcement Administration, stating the reasons for such exception.

**26 U.S.C. § 501.**  Exemption from tax on corporations, certain trusts, etc.

(a) Exemption from taxation

An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

. . . .

(c)  List of exempt organizations

The following organizations are referred to in subsection (a)

. . . .

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

. . . .

**26 C.F.R. § 1.501(c)(3)-1.** Organizations organized and operated for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals.

(a) Organizational and operational tests.

(1) In order to be exempt as an organization described in section 501(c)(3), an organization must be both organized and operated exclusively for one or more of the purposes specified in such section. If an organization fails to meet either the organizational test or the operational test, it is not exempt.

(2) The term exempt purpose or purposes, as used in this section, means any purpose or purposes specified in section 501(c)(3), as defined and elaborated in paragraph (d) of this section.

(b) Organizational test —

(1) In general.

(i) An organization is organized exclusively for one or more exempt purposes only if its articles of organization (referred to in this section as its articles) as defined in subparagraph (2) of this paragraph:

(A) Limit the purposes of such organization to one or more exempt purposes; and

(B) Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes.

(ii) In meeting the organizational test, the organization's purposes, as stated in its articles, may be as broad as, or more specific than, the purposes stated in section 501(c)(3). Therefore, an organization which, by the terms of its articles, is formed for literary and scientific purposes within the meaning of section 501(c)(3) of the Code shall, if it otherwise meets the requirements in this paragraph, be considered to have met the organizational test. Similarly, articles stating that the organization is created solely to receive contributions and pay them over to organizations which are described in section 501(c)(3) and exempt from taxation under section 501(a) are sufficient for purposes of the organizational test. Moreover, it is sufficient if the articles set for the purpose of the organization to be the operation of a school for adult education and describe in detail the manner of the operation of such school. In addition, if the articles state that the organization is formed for charitable

56

purposes, such articles ordinarily shall be sufficient for purposes of the organizational test (see subparagraph (5) of this paragraph for rules relating to construction of terms).
. . . .

**26 U.S.C. § 7428.** Declaratory judgments relating to status and classification of organizations under section 501(c)(3), etc.

(a) Creation of remedy. In a case of actual controversy involving--

(1) a determination by the Secretary--

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),
. . . .

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Federal Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. . . .

**42 USC 2000bb.** Congressional findings and declaration of purposes.

(a) Findings. The Congress finds that—

(1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution;

(2) laws "neutral" toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise;

(3) governments should not substantially burden religious exercise without compelling justification;

(4) in Employment Division v. Smith, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and

(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.

(b) Purposes. Purposes of this chapter are—

    (1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

    (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

**42 USC 2000bb-1.**  Free exercise of religion protected

(a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

    (1) is in furtherance of a compelling governmental interest; and

    (2) is the least restrictive means of furthering that compelling governmental interest.

(c) Judicial relief. A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, I electronically filed this

document with the Clerk of the United States Court of Appeals for the District of

Columbia Circuit using the CM/ECF system, which will automatically generate

and serve notices of this filing to all counsel of record. I further certify that there

are no parties who will not receive such notice.

Dated: October 10, 2023      /s/ Simon A. Steel
              Simon A. Steel
              Dentons US LLP
              1900 K Street, NW
              Washington, DC 20006
              (202) 496-7077
              simon.steel@dentons.com