ORAL ARGUMENT NOT SCHEDULED

# No. 23-5122

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――

### IOWASKA CHURCH OF HEALING,

Plaintiff-Appellant

v.

### DANIEL I. WERFEL, in his official capacity as Commissioner, Internal Revenue Service, and UNITED STATES OF AMERICA,

Defendants-Appellees

―――――――――――

### CHACRUNA INSTITUTE FOR PSYCHEDLIC PLANT MEDICINES; SACRED PLANT ALLIANCE,

Amici Curiae for Appellant

―――――――――――

## ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

―――――――――――

### BRIEF FOR THE APPELLEES

―――――――――――

DAVID A. HUBBERT
*Deputy Assistant Attorney General*

JACOB EARL CHRISTENSEN      (202) 307-0878
KATHLEEN E. LYON               (202) 307-6370
*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

*Of Counsel:*

MATTHEW M. GRAVES
*United States Attorney*

-i-

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and Amici**.  The parties appearing in the U.S. District Court for the District of Columbia and in this Court are plaintiff-appellant Iowaska Church of Healing and defendants-appellees Daniel I. Werfel, in his official capacity as Commissioner of Internal Revenue, and the United States.  There were no amici or intervenors appearing before the District Court.  Two amici, Chacruna Institute for Psychedelic Plant Medicines and Sacred Plant Alliance, have appeared in this Court.

**B.    Rulings Under Review**.  The rulings under review are the District Court's opinion and order by Judge Beryl A. Howell entered on March 31, 2023.  The opinion is unpublished but is available on Westlaw as *Iowaska Church of Healing v. Werfel, et al.*, No. 21-02475 (BAH), 2023 WL 2733774 (D.D.C. Mar. 31, 2023).

**C.    Related Cases**.  This case was not previously before this Court or any other appellate court.  Counsel for the appellees are not aware of any related cases currently pending in this Court or in any other court, as provided in Cir. R. 28(a)(1)(C).

-ii-

# TABLE OF CONTENTS

**Page**

Certificate as to parties, rulings, and related cases .................................i

Table of contents.........................................................................................ii

Table of authorities ....................................................................................v

Glossary .......................................................................................................x

Statement of jurisdiction............................................................................1

Statement of the issues ..............................................................................2

Statutes and regulations.............................................................................2

Statement of the case .................................................................................2

    A.    Statement of facts .................................................................4

         1.    Iowaska's incorporation .................................................4

         2.    Iowaska's application for tax-exempt status and its operations in Summer 2019 ..........................................7

         3.    The IRS's review of Iowaska's application for tax-exempt status ................................................................8

    B.    Proceedings in the District Court.........................................11

         1.    The complaint ................................................................11

         2.    The parties' cross-motions for summary judgment.....12

         3.    The District Court's opinion .........................................15

Summary of argument ..............................................................................19

Argument:

    The District Court's determination that Iowaska was not organized and operated exclusively for tax-exempt purposes was not clearly erroneous ...........................................................22

        Standard of review ................................................................22

**Page**

A.  Iowaska failed to carry its burden to show entitlement to tax-exempt status without proof of a CSA exemption for its use of ayahuasca .................................................. 24

B.  Iowaska's arguments are unavailing ................................... 26

1.  Iowaska's use of ayahuasca containing a controlled substance was not "presumptively legal" without proof of a CSA exemption ............................................. 26

2.  Iowaska's argument on administrative exhaustion is meritless ................................................................. 34

3.  Iowaska was not organized and operated exclusively for exempt purposes ................................... 37

a.  Iowaska fails the organizational test ................. 38

b.  Iowaska fails the operational test ...................... 43

The District Court correctly held that Iowaska did not satisfy Article III standing for its claim that the IRS violated the RFRA .................................................................................. 47

Standard of review ................................................. 47

A.  Article III standing ............................................. 47

B.  Iowaska failed to satisfy the requirements of standing for its claim that the IRS violated the RFRA ...................... 48

1.  Iowaska has waived its arguments of standing based on two of its alleged injuries asserted below ..... 51

2.  Iowaska's sole argument on appeal for standing improperly raises a new theory not advanced below .......................................................................... 52

**Page**

C.    The merits of Iowaska's RFRA claim are not before this
        Court .......................................................................................55

Conclusion..............................................................................................59
Certificate of compliance .....................................................................60
Statutory addendum...............................................................................61
Certificate of service .............................................................................70

# TABLE OF AUTHORITIES

**Cases:**                                                                       **Page(s)**

*Adams v. Commissioner,*
    170 F.3d 173 (3d Cir. 1999) ...................................58

*Alamo v. Clay,*
    137 F.3d 1366 (D.C. Cir. 1998) .............................50

*Arizona Yage Assembly v. Garland,*
    No. CV-20-02373-PHX-ROS,
    2023 WL 3246927 (D. Ariz. May 4, 2023) .............35

*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015) .................................51

*Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff,*
    23 F.4th 1028 (D.C. Cir. 2022).............................47

*Belk v. Commissioner,*
    774 F.3d 221 (4th Cir. 2014) ................................41

*Better Bus. Bureau of Washington, D.C., Inc. v. United States,*
    326 U.S. 279 (1945) ..............................................39

*Bob Jones University v. United States,*
    461 U.S. 574 (1983) ............................... 23-24, 32-34

*Branch Ministries v. Rossotti,*
    211 F.3d 137 (D.C. Cir. 2000) ..........................45-46

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ..............................................51

*Commissioner v. John Danz Charitable Trust,*
    284 F.2d 726 (9th Cir. 1960) ................................42

*Defenders of Wildlife v. Perciasepe,*
    714 F.3d 1317 (D.C. Cir. 2013) .............................47

*Family Trust of Massachusetts, Inc. v. United States,*
    722 F.3d 355 (D.C. Cir. 2013) ...........................22-23

*Farmers & Merchants Mut. Tel. Co. of Wayland,*
    *Iowa v. F.C.C.,*
    668 F.3d 714 (D.C. Cir. 2011) .............................40

*Fla. Audubon Soc'y v. Bentsen,*
    94 F.3d 658 (D.C. Cir. 1996) (en banc) ..................47

## Cases (cont'd):                                          Page(s)

*Friends of Animals v. Jewell*,
    115 F. Supp. 3d 107 (D.D.C. 2015),
    *aff'd on other grounds*, 828 F.3d 989 (D.C. Cir. 2016)..........50
*Fund for the Study of Economic Growth & Tax*
    *Reform v. I.R.S.*,
    161 F.3d 755 (D.C. Cir. 1998) ..............................22, 24, 26, 33
*Geisinger Health Plan v. Commissioner*,
    985 F.2d 1210 (3d Cir. 1993) ................................................23
*Gonzales v. O Centro Espirita Beneficente Uniao*
    *do Vegetal*,
    546 U.S. 418 (2006) ...................................... 5-6, 9, 11-12, 16,
                             20, 25, 27-32, 56
*Gonzales v. Raich*,
    545 U.S. 1 (2005) ...................................................................33
*Hernandez v. Commissioner*,
    490 U.S. 680 (1989) ...............................................................58
*Humane Soc'y of the United States v. Perdue*,
    935 F.3d 598 (D.C. Cir. 2019) ...............................................48
*Huron v. Cobert*,
    809 F.3d 1274 (D.C. Cir. 2016) .............................................55
*Hutchins v. District of Columbia*,
    188 F.3d 531 (D.C. Cir. 1999) (en banc) ..........................51-52
*Jenkins v. Commissioner*,
    483 F.3d 90 (2d Cir. 2007) ....................................................58
*Lujan v. Def. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................50
*Mayo Found. for Med. Educ. & Rsch. v. United States*,
    562 U.S. 44 (2011) .................................................................34
*Mutual Life Ins. Co. v. Hill*,
    193 U.S. 551 (1904) ...............................................................40
*Mysteryboy Incorporation v. Commissioner*,
    T.C. Memo. 2010-13, 2010 WL 291758 (T.C. 2010) .............46
*Nat'l Council for Adoption v. Blinken*,
    4 F.4th 106 (D.C. Cir. 2021)..................................................56
*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995) ...............................................50

**Cases (cont'd):**                                                       **Page(s)**

*Nationalist Movement v. Commissioner,*
  37 F.3d 216 (5th Cir. 1994) ...................................................... 23
*O Centro Espirita Beneficiente Uniao Do*
  *Vegetal v. Ashcroft,*
  342 F.3d 1170 (10th Cir. 2003) ............................................... 28
*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder,*
  676 F.3d 829 (9th Cir. 2012) ................................................... 35
*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ................................................................ 48
*Taxation With Representation v. United States,*
  585 F.2d 1219 (4th Cir. 1978) ................................................ 42
*Union of Concerned Scientists v. United States*
  *Dep't of Energy,*
  998 F.3d 926 (D.C. Cir. 2021) ................................................ 56
*United States v. Christie,*
  825 F.3d 1048 (9th Cir. 2016) ................................................ 57
*United States v. Lafley,*
  656 F.3d 936 (9th Cir. 2011) .................................................. 57
*United States v. Law,*
  528 F.3d 888 (D.C. Cir. 2008) ................................................ 52
*United States v. Lee,*
  455 U.S. 252 (1982) ................................................................ 58
*Virginia Pro. Standards Rev. Found. v. Blumenthal,*
  466 F. Supp. 1164 (D.D.C. 1979) ........................................... 23
*Winder v. Erste,*
  566 F.3d 209 (D.C. Cir. 2009) .......................................... 32, 40

**Statutes:**

21 U.S.C.:

§ 801 ............................................................................... 3
§ 812 ................................................................... 5, 25, 33
§ 822 ...................................................................... 6, 25
§ 822(a) ........................................................................ 27
§ 822(d) ........................................................................ 27

**Statutes (cont'd):**                                                                  **Page(s)**

21 U.S.C. (cont'd):

§ 823 ................................................................6, 25
§ 823(a) .................................................................27
§ 841(a) .......................................................5, 25, 33
§ 844(a) .......................................................5, 25, 33

Internal Revenue Code (26 U.S.C.):

§ 170(b)(1)(A)(i)......................................................17
§ 501(a) ...........................................................23, 38
§ 501(c)(3) ...................................2-3, 7, 10, 12-13, 15, 17, 19, 22-24, 26-27, 35, 38-39, 43
§ 509(a) ................................................................17
§ 7428.......................................................11, 48, 53

28 U.S.C.:

§ 1346(e)......................................................11, 48

42 U.S.C.:

§ 2000bb-1(b) ........................................................30
§ 2000bb-1(c).......................................6, 25, 27, 47

Guidance Regarding Petitions for Religious Exemption
    from the Controlled Substances Act Pursuant to the
    Religious Freedom Restoration Act (Revised),
    https://perma.cc/VE74-SQMH
    (updated Nov. 20, 2020) ...................................2-3, 6, 8, 11-14, 16-17, 20-21, 27-32, 34-36, 47-49, 53-59

**Regulations:**                                                           **Page(s)**

21 C.F.R.:

   § 1307.03 ....................................................................... 6, 25, 27

Treasury Regulations (26 C.F.R.):

   § 1.501(c)(3)-1(a) ............................................................ 23, 38
   § 1.501(c)(3)-1(b)(1)(i) ................................................... 38, 40
   § 1.501(c)(3)-1(c)(1) ....................................................... 43, 45

**Miscellaneous:**

Revenue Ruling 71-447, 1971-2 C.B. 230 (1971) .............. 24, 33, 34

-x-

# GLOSSARY

| Abbreviation | Definition |
| --- | --- |
| Br. | Refers to appellant's opening brief |
| CSA | Controlled Substances Act, 21 U.S.C. § 801 *et seq.* |
| DEA | Drug Enforcement Administration |
| Doc. | Refers to document filed in the District Court as numbered by the clerk |
| Iowaska | Iowaska Church of Healing, appellant |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| RFRA | Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* |

**ORAL ARGUMENT NOT SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 23-5122**

**IOWASKA CHURCH OF HEALING,**

*Plaintiff-Appellant*

v.

**DANIEL I. WERFEL, in his official capacity as Commissioner, Internal Revenue Service, and UNITED STATES OF AMERICA,**

*Defendants-Appellees*

---

**CHACRUNA INSTITUTE FOR PSYCHEDLIC PLANT MEDICINES; SACRED PLANT ALLIANCE,**

*Amici Curiae for Appellant*

---

**ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

---

**BRIEF FOR THE APPELLEES**

---

**STATEMENT OF JURISDICTION**

The Government is satisfied with appellant Iowaska Church of

Healing's statement of jurisdiction, except as it relates to the District

Court's jurisdiction over Iowaska's claim that the IRS violated the

Religious Freedom Restoration Act.  As to that claim (Doc. 16 ¶¶35-38), the District Court correctly held that it lacked subject matter jurisdiction because Iowaska did not satisfy the requirements for standing under Article III of the Constitution.

## STATEMENT OF THE ISSUES

1.  Whether the District Court committed clear error in determining that the IRS had properly denied Iowaska's application for tax-exempt status under 26 U.S.C. § 501(c)(3) because Iowaska's purposes or activities were illegal under federal law and against public policy.

2.  Whether the District Court correctly held that Iowaska did not satisfy the requirements for standing under Article III of the Constitution with respect to its claim that the IRS violated the Religious Freedom Restoration Act.

## STATUTES AND REGULATIONS

The relevant statutes and regulations are set forth in the addendum attached to this brief.

## STATEMENT OF THE CASE

Iowaska Church of Healing is a self-proclaimed church whose members' religious belief involves the consumption of the "Sacrament of

-3-

Ayahuasca," a tea containing dimethyltryptamine, which is a hallucinogen regulated by the federal government under the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.* (Doc. 16 ¶¶14, 17.) Iowaska applied to the IRS requesting recognition as a tax-exempt organization under 26 U.S.C. § 501(c)(3). The IRS denied that application on the ground that Iowaska was not organized and operated exclusively for exempt purposes because, without having received a religious exemption from the Drug Enforcement Administration (DEA) or from the courts for its use of a controlled substance under the CSA, Iowaska's use of ayahuasca was illegal under federal law and violated public policy. (Doc. 29-15.)

Iowaska sued the IRS Commissioner and the United States, claiming that the IRS erred in denying its application for tax-exempt status and that the IRS's determination that Iowaska's use of ayahuasca was illegal violated Iowaska's rights under the Religious Freedom Restoration Act (RFRA). (Doc. 16.) The parties filed cross-motions for summary judgment on both claims. (Docs. 20, 23.) The District Court granted the Government's motion, denied Iowaska's motion, and closed the case. (Docs. 31, 32.) Iowaska now appeals.

-4-

### A.    Statement of facts

The facts are drawn from the certified administrative record filed in the District Court (*see* Docs. 13, 29 (and attached exhibits)) and the allegations in the amended complaint (Doc. 16).

### 1.    Iowaska's incorporation

Iowaska Church of Healing was incorporated as an Iowa non-profit corporation in September 2018 and organized as a religious corporation under Iowa law.  (Doc. 16 ¶¶1, 16.)  Its Articles of Incorporation state that the purposes for which it was organized are "to offer the public access to spiritual growth, development and healing through the sacred Sacrament of Ayahuasca"; "to provide necessary information to all participants of sacred healing ceremonies involving the consumption of the Sacrament of Ayahuasca," including "appropriate education prior to the consumption of the Sacrament of Ayahuasca"; and "to provide veterans the opportunity to access healing programs" that may include "the Sacrament of Ayahuasca," among other stated purposes.  (Doc. 29-2 at 6-7.)  According to the amended complaint, Iowaska's "mission is to help individuals attain healing of the mind, body, and spirit through the sacred Sacrament of Ayahuasca"

-5-

(Doc. 16 ¶17), and its "primary purpose" is "to operate a spiritual church in one or more fixed locations that conducts regular worship services using the Sacrament of Ayahuasca" (Doc. 16 ¶21).  Since its incorporation in September 2018, Iowaska has received and approved as many as 20 applications for membership.  (Doc. 16 ¶23; Doc. 29-8 at 4-5.)

The problem is that the Sacrament of Ayahuasca administered in Iowaska's religious ceremonies contains a controlled substance regulated by the federal government.  During Iowaska's ceremonies, ayahuasca is consumed by members in the form of a tea brewed from plants native to South America that contains dimethyltryptamine.  (Doc. 16 ¶¶14, 17.)  Dimethyltryptamine is an "exceptionally dangerous" controlled substance under Schedule I of the CSA that is generally illegal to manufacture, distribute, dispense, or possess.  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425, 432 (2006); *see* 21 U.S.C. §§ 812 Schedule I(c)(6), 841(a), 844(a).

The Attorney General can register an applicant to lawfully manufacture or distribute a Schedule I controlled substance under certain conditions, and may even waive the registration requirement in

-6-

some circumstances, if he determines it would be consistent with the public interest and with the United States' obligations under international laws. 21 U.S.C. §§ 822, 823. In *Gonzales v. O Centro*, the Supreme Court held that the RFRA, 42 U.S.C. § 2000bb *et seq.*, requires a particularized, case-by-case determination whether an individual or organization is entitled to a religious exemption from the CSA. 546 U.S. at 430-32. Any person can apply for an exception to the CSA's regulations by making a written request to the DEA, which has created a petition process for religious exemption requests. *See* 21 C.F.R. § 1307.03; Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised), https://perma.cc/VE74-SQMH (updated Nov. 20, 2020). In addition, under the RFRA, "[a] person whose religious exercise has been burdened … may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," subject to "the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000bb-1(c).

-7-

## 2. Iowaska's application for tax-exempt status and its operations in Summer 2019

On January 10, 2019, Iowaska applied to the IRS for recognition of tax-exempt status under 26 U.S.C. § 501(c)(3). (Doc. 16 ¶6; Doc. 29-1.) Iowaska acknowledged in its application that the possession, manufacture, and distribution of Schedule I drugs, including dimethyltryptamine used in its religious ceremonies, "is illegal absent the appropriate registration with the DEA or pursuant to a judicial or other registration exemption" from the CSA. (Doc. 29-4 at 12.) Iowaska also informed the IRS that it was "working on its religious exemption application," which it "plan[ned] to file with the DEA within the next few months." (*Id.*)

The next month, on February 28, 2019, Iowaska submitted an application for a religious exemption to the DEA. (Doc. 29-8 at 8-12.) That application remains pending under consideration by the DEA. (*See* Br. 8; Doc. 29-6 at 9.) Without waiting for a ruling from the DEA, Iowaska subsequently conducted weekend ceremonies during May, June, July, and August of 2019 in which members participated in the Sacrament of Ayahuasca. (Doc. 16 ¶23; Doc. 29-6 at 7-8.) Iowaska's last ceremony was conducted on August 18, 2019. (Doc. 16 ¶25; Doc. 29-

10 at 5.)  Iowaska voluntarily suspended its ceremonies at that time

because it feared potential prosecution under the CSA.  (Doc. 16 ¶25;

Doc. 29-10 at 5.)

### 3.    The IRS's review of Iowaska's application for tax-exempt status

In July 2019, the IRS requested additional information from

Iowaska about the status of its application filed with the DEA for a

religious exemption from the CSA.  (Doc. 29-5 at 4.)  Iowaska responded

that its request was pending.  (Doc. 29-6 at 9.)

In a second information request dated September 10, 2019,

several weeks after Iowaska had voluntarily suspended it ceremonies,

the IRS asked Iowaska to explain its plans if the DEA were to deny its

request for a religious exemption.  (Doc. 29-7 at 4.)  Iowaska responded

that it "will pursue all administrative appeals within DEA" and that, "if

necessary," it "is also prepared to seek judicial relief under" the RFRA,

"likely … in the form of a Declaratory Judgment action requesting that

the court order the DEA to issue the exemption."  (Doc. 29-8 at 2.)  The

IRS also asked Iowaska to explain how the use of ayahuasca tea at the

weekend retreats in Summer 2019 was legal in the absence of an

exemption from the DEA.  (Doc. 29-7 at 4.)  In response, Iowaska

-9-

asserted that the Supreme Court held in *Gonzales v. O Centro*, 546 U.S. 418, that the sacramental use of ayahuasca is a sincere exercise of religion under the First Amendment and that a church does not need to receive a religious exemption from the DEA before enforcing its religious freedom rights in the courts.  (Doc. 29-8 at 2-3.)

In a third information request, the IRS asked Iowaska whether it had sought to enforce its religious freedom rights in the courts and, if not, to "explain the basis for your belief that you are not in violation of the Controlled Substance Act." (Doc. 29-9 at 3.)  Iowaska responded that it had not sought relief from the application of the CSA to its use of ayahuasca in any court.  (Doc. 29-10 at 5.)  It asserted that "the Supreme Court ruled in the *O Centro* opinion [that] an organization that uses Ayahuasca in the sincere exercise of its religion is not bound by, or in violation of, the CSA." (*Id.*)  It also asserted that there was "no meaningful difference" between Iowaska and the church in *O Centro*. (*Id.*)

On June 16, 2020, the IRS issued a proposed adverse determination letter determining that Iowaska did not qualify for tax-exempt status because it was not "organized and operated exclusively

for" exempt purposes as required in 26 U.S.C. § 501(c)(3). (Doc. 29-11 at 11.) Looking to Iowaska's Articles of Incorporation (Doc. 29-2), the IRS found that Iowaska was formed, in part, to offer "the public access to spiritual growth, development and healing through the sacred sacrament of [ayahuasca]," which contains the controlled substance dimethyltryptamine. (Doc. 29-11 at 8.) The IRS explained that under longstanding Revenue Rulings, "all charitable organizations are subject to the requirements that their purposes cannot be illegal or contrary to public policy." (*Id*. at 8-9.) Accordingly, the IRS found one of the purposes for which Iowaska was formed was "an illegal purpose, to wit, the distribution of a controlled substance to individuals who are engaged in an illegal activity," and it further found that Iowaska's Articles of Incorporation "expressly empower [it] to engage, otherwise than as an insubstantial part, in the distribution of [ayahuasca], an activity which in itself is not in furtherance of one or more exempt purposes." (*Id*.)

For much the same reasons, the IRS also determined in the proposed adverse determination letter that Iowaska was not operated exclusively for one or more exempt purposes because more than an

-11-

insubstantial part of its activities was not in furtherance of an exempt

purpose.  (Doc. 29-11 at 9.)  The IRS distinguished *O Centro* on the

ground that the plaintiff in that case filed suit under the RFRA and

prevailed, while Iowaska had neither received a religious exemption to

the CSA from the DEA nor sought relief in the courts.  (*Id.* at 9, 11.)

Iowaska appealed the proposed adverse determination to the

Independent IRS Office of Appeals, which held a telephonic hearing.

(Docs. 29-12, 29-13, 29-14.)  On June 28, 2021, the Office of Appeals

issued a final adverse determination letter ruling that Iowaska did not

qualify for tax-exempt status because it was not organized and operated

exclusively for exempt purposes because its purposes or activities were

illegal under federal law and violated public policy.  (Doc. 29-15.)

## B.    Proceedings in the District Court

### 1.    The complaint

Iowaska then filed this suit against the Commissioner of Internal

Revenue in his official capacity (Doc. 1), later amending its complaint to

add the United States as an additional defendant "pursuant to [26

U.S.C.] § 7428 and 28 U.S.C. § 1346(e)" (Doc. 16 ¶3; *see also* Doc. 15 ¶4).

The amended complaint asserted two claims.  Claim One asserted that

-12-

the IRS's denial of its application for tax-exempt status under

§ 501(c)(3) on the ground that its activities were illegal was in error

under the Supreme Court's opinion in *O Centro*.  Iowaska sought a

declaration that it is qualified as a tax-exempt organization under

§ 501(c)(3) and that its use of ayahuasca during its religious ceremonies

is a sincere exercise of religion under the First Amendment.  (Doc. 16

¶¶30-34; *id.* at 9 ¶¶A, B.)  Claim Two asserted that the IRS's "ruling

that [Iowaska's] activities are illegal in a binding adverse determination

letter" imposed a substantial burden on the free exercise rights of

Iowaska and its members in violation of the RFRA, and Iowaska sought

a declaration to that effect.  (Doc. 16 ¶¶35-38; *id.* at 10 ¶C).

## 2.    The parties' cross-motions for summary judgment

The parties filed cross-motions for summary judgment.  (Docs. 20,

20-3, 23, 23-1.)  Regarding Claim One, Iowaska argued that it satisfied

all requirements for recognition as a tax-exempt organization under

§ 501(c)(3).  (Doc. 20-3 at 11-26.)  Iowaska asserted that the Supreme

Court approved the sacramental consumption of ayahuasca as a sincere

and lawful exercise of religion in *Gonzales v. O Centro*.  (*Id.* at 14-24.)

-13-

Regarding Claim Two, Iowaska contended that the IRS's determination that its use of ayahuasca in its ceremonies was illegal had substantially burdened its (and its members') exercise of religion under the RFRA. (Doc. 20-3 at 34-35.) Notwithstanding that Iowaska had voluntarily suspended its ceremonies in August 2019 because it feared prosecution under the CSA, Iowaska claimed that the IRS's "labeling the Church's religious practices as illegal" in the June 2021 final adverse determination letter brought its (and its members') exercise of religion "to a grinding halt." (Doc. 20-3 at 37-38.) Iowaska maintained that the Government had not met its burden of showing that the denial of tax-exempt status was in furtherance of a compelling government interest or was the least restrictive means of furthering such an interest, entitling it to relief under the RFRA. (*Id.* at 38-41.)

In its cross-motion, the Government argued that the IRS correctly determined that Iowaska was not entitled to tax-exempt status under § 501(c)(3) because it was not organized and operated exclusively for tax-exempt purposes because its use of ayahuasca was illegal and against public policy. (Doc. 23-1 at 6-11.) The Government also argued that Iowaska lacked Article III standing to assert its RFRA claim

-14-

against the IRS. (Doc. 23-1 at 16-19; Doc. 26 at 7-8.) The Government maintained that even if the IRS's "ruling that [Iowaska's] activities are illegal" (Doc. 16 ¶37) resulted in an Article III injury, it is not traceable to the IRS because the IRS lacks statutory authority to determine whether Iowaska is entitled to a CSA exemption under the RFRA and because the IRS's final adverse determination letter is not binding on the DEA. (Doc. 23-1 at 16-18.) The Government denied that the IRS's action had any effect on Iowaska's religious practices. (*Id.* at 18-19.) The Government also argued that Iowaska misinterpreted *Gonzalez v. O Centro* and that participation in the federal tax system is the least restrictive means of furthering the Government's compelling interest in taxation. (Doc. 23-1 at 19-23; Doc. 26 at 8-10.)

Iowaska responded to the Government's argument on standing by asserting that its "primary" injury was its and its members' "inability to exercise their religion after the [IRS's] erroneous branding of their beliefs and practices as 'illegal.'" (Doc. 25 at 10; *see also id.* at 13 (describing its "primary" injury as "the fear that it cannot practice its religion").) Iowaska asserted that it had also suffered reputational harm and economic loss stemming from the IRS's "classifying" its

-15-

purposes and activities as illegal. (Doc. 25 at 11-13, 16.) Iowaska

argued that its "primary injury—the fear that it cannot practice its

religion"—was fairly traceable to the IRS's actions beginning with the

IRS's September 2019 second information request inquiring about the

legality of Iowaska's use of ayahuasca, even though it had voluntarily

suspended its ceremonies prior to that time in August 2019. (Doc. 25 at

11, 13.) And Iowaska maintained that recognition as a tax-exempt

organization under § 501(c)(3) would redress its injuries "as fully as

possible" because Iowaska and its members would "no longer live under

the shadow of the 'illegal' label the Defendants have applied to their

religious beliefs and practices" and because a favorable ruling here

would "bolster its religious exemption application on file with" the DEA.

(Doc. 25 at 15-16.)

### 3.    The District Court's opinion

The District Court denied Iowaska's motion and granted the

Government's motion for summary judgment. (Docs. 31, 32.)

Regarding Iowaska's claim for tax-exempt status, the court found that

Iowaska failed to prove that it was organized and operated exclusively

for exempt purposes, and therefore did not qualify for exempt status,

because without a CSA exemption its use of ayahuasca remained illegal under federal law and against public policy. (Doc. 32 at 6-9.) The court rejected Iowaska's reliance on the Supreme Court's decision in *Gonzales v. O Centro*. (*Id.* at 9-10.) The court explained that *O Centro* "does not concern tax exemptions at all" and instead addressed religious ayahuasca use in the "entirely different context" of a claim that the government's application of the CSA to the ceremonial use of ayahuasca violated the RFRA. (*Id.* at 9.) The court noted that the Supreme Court determined in *O Centro* that the government had not met its rebuttal burden of showing that applying the CSA "uniform[ly]," "such that no exception to the ban on use of the hallucinogen can be made to accommodate the sect's sincere religious practice," was the least restrictive means of advancing a compelling government interest. (*Id.* (quotation and citation omitted).) Consequently, the court explained, "the holding in *O Centro* stands only for the principle that obtaining a CSA exception for religious use of Ayahuasca is possible, if such use is in fact a sincere religious exercise." (*Id.*) The court concluded that the "fatal flaw" in Iowaska's reliance on *O Centro* was that Iowaska "has still not obtained" an exemption from the CSA, observing that "whether

[Iowaska's] showing made to the DEA is sufficient to qualify for this exemption remains an open question that is not before this Court." (*Id.* at 9-10.)[1]

Turning to Iowaska's RFRA claim, the District Court held that Iowaska did not satisfy the requirements for Article III standing with respect to its claim that the IRS had violated the RFRA. (Doc. 32 at 10-15.) The court rejected Iowaska's claimed reputational and economic injuries as insufficient grounds for Article III standing, but it assumed *arguendo* that Iowaska's asserted fear of practicing its religion satisfied the "injury in fact" requirement of standing. (*Id.* at 13 & n.7.) The court concluded, however, that Iowaska did not satisfy the other requirements for standing of traceability and redressability for this alleged injury.

---

[1] Having held that Iowaska was not entitled to an exemption from taxation under 26 U.S.C. § 501(c)(3), the District Court did not reach Iowaska's claim that it was further entitled to recognition as a church under 26 U.S.C. § 170(b)(1)(A)(i), for which status as a § 501(c)(3) organization is a prerequisite. (Doc. 32 at 10 n.6; *see* Doc. 16 ¶¶30-34.) *See* 26 U.S.C. § 509(a). The parties agree that if this Court were to reverse the District Court and hold that Iowaska is entitled to tax-exempt status under § 501(c)(3), this Court should remand this matter for a determination whether Iowaska also has met the requirements for recognition as a church. (*See* Br. 7 n.1.)

-18-

As for traceability, the court held that Iowaska's claimed injury was not "fairly traceable" to the IRS because Iowaska's inability to use ayahuasca did not stem from the IRS's final adverse determination letter, but instead from the CSA's prohibition on the distribution of dimethyltryptamine and Iowaska's lack of any exemption from the CSA. (*Id.* at 13-14.)  Even if the DEA were to deny Iowaska's requested exemption, the court explained, that decision would only be fairly traceable to the DEA administrator's decision and not to the IRS, which has no authority to determine an exemption from the CSA.  (*Id.* at 13.) The court rejected any connection between the IRS's determination and the DEA's determination as speculative, and it concluded that Iowaska "claims injury from the independent and pending action of DEA regarding [its] application for a CSA exemption, even though the DEA is not party to this lawsuit."  (*Id.* at 14 n.8.)

As for redressability, the District Court held that a favorable decision here would not redress Iowaska's inability to lawfully use ayahuasca in its ceremonies because granting Iowaska tax-exempt status would not necessarily lead to the DEA's approval of Iowaska's application for a religious exemption from the CSA.  (*Id.* at 14-15.)

-19-

Accordingly, the District Court granted the Government's motion for summary judgment, denied Iowaska's motion, and closed the case.

## SUMMARY OF ARGUMENT

1.  The District Court did not clearly err in determining, with respect to Claim One of the amended complaint, that the IRS properly denied Iowaska's application for tax-exempt status under 26 U.S.C. § 501(c)(3).  Even when ruling on summary judgment, a district court's determination of whether an organization is organized and operated exclusively for exempt purposes is reviewed for clear error.  Here, the District Court did not clearly err in finding, based on the administrative record, that Iowaska was neither organized nor operated exclusively for exempt purposes specified in § 501(c)(3) because its purposes and activities involving the use of ayahuasca were illegal under federal law and against public policy in the absence of a CSA exemption.

Iowaska bore the burden to establish its entitlement to tax-exempt status and, therefore, carried the burden to prove that its purposes and activities were not illegal or against public policy.  Because the distribution of dimethyltryptamine that is contained in Iowaska's ayahuasca sacrament is illegal under the CSA without an

exemption, Iowaska failed to carry its burden to show its entitlement to tax-exempt status without proof of a CSA exemption either granted by the DEA or recognized by a federal court under the RFRA. Congress has not authorized the IRS to make exceptions to the CSA when determining an organization's qualification for tax-exempt status.

Iowaska's arguments on appeal are unavailing. First, neither the Supreme Court's decision in *Gonzales v. O Centro* nor the RFRA support Iowaska's contention that its use of ayahuasca was presumptively legal. *O Centro* instructs that application of the RFRA must be determined by a court on a case-by-case basis, and Iowaska has not sought judicial relief under the RFRA from the application of the CSA. Second, Iowaska mischaracterizes the District Court's decision in arguing that it imposed a non-existent administrative exhaustion requirement; in fact it did no such thing. Third, Iowaska's voluntary suspension of its ayahuasca sacrament in August 2019 for fear of prosecution under the CSA does not establish that it was organized and operated exclusively for exempt purposes. The administrative record before the IRS showed that more than an insubstantial portion of Iowaska's operations involved the use of ayahuasca, which remained illegal without a CSA

exemption.  Iowaska's related argument that a savings clause in its Articles of Incorporation prevents it from engaging in illegal activities is also without merit, as such savings clauses, which incorporate a condition subsequent, are disregarded for federal tax purposes.

2.  The District Court correctly held, with respect to Claim Two of the amended complaint that the IRS violated the RFRA, that Iowaska did not satisfy the Article III requirements for standing.  In addition, by not developing any argument in its opening brief to challenge the District Court's ruling, Iowaska has waived its arguments of standing based on two of its alleged injuries asserted below—i.e., the inability to exercise religion and reputational harm.  Moreover, Iowaska's sole argument on appeal for standing improperly raises a new theory that this Court should not entertain because it was not advanced below. Finally, the merits of Iowaska's RFRA claim are not before the Court, but were this Court to reach the merits, it should hold for the Government because participation in the federal tax system is the least restrictive means of furthering the federal government's compelling interest in collecting taxes.

# ARGUMENT

# I

## The District Court's determination that Iowaska was not organized and operated exclusively for tax-exempt purposes was not clearly erroneous

### Standard of review

Although the question whether a *district court* is to apply a de novo or deferential standard of review to the IRS's determination of tax-exempt status is an open issue in this Circuit, *Fund for the Study of Economic Growth & Tax Reform v. I.R.S.*, 161 F.3d 755, 757 n.5 (D.C. Cir. 1998), this Court's precedent on its own standard of review in the context of 26 U.S.C. § 501(c)(3) is clear:  the district court's "determination of whether an organization is organized and operated exclusively for exempt purposes is a factual determination reviewed only for clear error" by this Court, *id.* at 758.  The clearly erroneous standard applies even where, as here, the district court ruled on summary judgment and even if the district court's determination were to be characterized instead as a mixed question of law and fact.  *Id.* at 759; *accord Family Trust of Massachusetts, Inc. v. United States*, 722 F.3d 355, 359 (D.C. Cir. 2013) (reviewing for clear error the district

court's ruling on summary judgment that plaintiff was not organized exclusively for exempt purposes under § 501(c)(3)).

The scope of judicial review in a declaratory judgment proceeding regarding an organization's qualification for tax-exempt status under 26 U.S.C. § 501(c)(3) is limited to the administrative record. *Nationalist Movement v. Commissioner*, 37 F.3d 216, 219 (5th Cir. 1994); *Virginia Pro. Standards Rev. Found. v. Blumenthal*, 466 F. Supp. 1164, 1168 (D.D.C. 1979).

_____

To qualify for tax-exempt status under 26 U.S.C. § 501(c)(3), an organization must establish, among other things, that it is "organized and operated exclusively for" one or more of the exempt purposes specified in § 501(c)(3). 26 U.S.C. § 501(a), (c)(3); *see also Family Trust of Massachusetts*, 722 F.3d at 359. Failure to satisfy either the organizational or the operational test is disqualifying. 26 C.F.R. § 1.501(c)(3)-1(a); *Geisinger Health Plan v. Commissioner*, 985 F.2d 1210, 1215 (3d Cir. 1993). An organization is ineligible for tax-exempt status under § 501(c)(3) if its purposes or activities are illegal or against public policy. *Bob Jones University v. United States*, 461 U.S. 574, 585-

-24-

602 (1983); Revenue Ruling 71-447, 1971-2 C.B. 230 (1971). "[T]he burden is on the taxpayer seeking exemption to demonstrate that it is in fact entitled to tax-exempt status[.]" *Fund for the Study of Economic Growth*, 161 F.3d at 759.

In this case, the District Court did not clearly err in finding, based on the administrative record, that Iowaska was neither organized nor operated exclusively for exempt purposes specified in § 501(c)(3) because its purposes and activities involving the use of ayahuasca were illegal under federal law and against public policy in the absence of a CSA exemption.

### A.    Iowaska failed to carry its burden to show entitlement to tax-exempt status without proof of a CSA exemption for its use of ayahuasca

The District Court correctly held that Iowaska failed to carry its burden to show entitlement to tax-exempt status without proof of a CSA exemption for its use of ayahuasca.

To establish entitlement to tax-exempt status under § 501(c)(3), Iowaska bore the burden to prove that its purposes and activities were not illegal or against public policy. *Bob Jones University*, 461 U.S. at 585-602 (public policy requirement); *Fund for the Study of Economic*

-25-

*Growth*, 161 F.3d at 759 (burden of proof). Under the CSA, the distribution of a controlled substance—including dimethyltryptamine that is contained in Iowaska's ayahuasca sacrament—is illegal, 21 U.S.C. §§ 812 Schedule I(c)(6), 841(a), 844(a), unless authorized by the Attorney General, *id.* §§ 822, 823; 21 C.F.R. § 1307.03 (delegating authority to make exceptions to the DEA). Congress has also authorized the federal courts to grant appropriate relief to persons whose religious exercise has been burdened by the government, 42 U.S.C. § 2000bb-1(c), which might include an organization whose religious exercise involves the use of a controlled substance regulated by the CSA, but entitlement to such judicial relief must be determined on a case-by-case basis, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-32 (2006).

In this case, Iowaska applied to the DEA for a religious exemption from the CSA, but its application remains pending and has not been granted by the DEA. Nor has Iowaska sought or obtained judicial relief under 42 U.S.C. § 2000bb-1(c) from application of the CSA. Therefore, without proof of any CSA exemption having been granted by the DEA or recognized by a federal court, the IRS correctly determined that

-26-

Iowaska could not carry its burden to prove that its use of a controlled substance in its ayahuasca sacraments was not illegal or against public policy, making it ineligible for tax-exempt status, and the District Court correctly sustained the IRS's determination on the basis of the administrative record.

### B.    Iowaska's arguments are unavailing

Iowaska's arguments on appeal fail to show any clear error in the District Court's determination that Iowaska was not organized and operated exclusively for exempt purposes and, therefore, did not qualify for tax-exempt status under § 501(c)(3).

### 1.    Iowaska's use of ayahuasca containing a controlled substance was not "presumptively legal" without proof of a CSA exemption

Iowaska argues that its use of ayahuasca without a CSA exemption was "presumptively legal" and that the IRS bore the burden "to justify, under strict scrutiny, any action treating [its] ayahuasca sacrament as illegal." (Br. 30.) Iowaska's argument gets the burden of proof backward, *Fund for the Study of Economic Growth*, 161 F.3d at 759 ("the burden is on the taxpayer seeking exemption to demonstrate that it is in fact entitled to tax-exempt status"), and improperly seeks to

-27-

import the standards applicable to a claim under the RFRA into its claim for tax-exempt status under § 501(c)(3).

But Iowaska's argument also suffers from a more fundamental flaw, which is that Congress has not authorized the IRS to make exceptions to the CSA when determining an organization's qualification for tax-exempt status.  Rather, under the CSA, it is the Attorney General who is authorized to make exceptions to its application.  In enacting the CSA, Congress specifically authorized the Attorney General to register an applicant to lawfully manufacture or distribute a controlled substance under certain conditions if he determines that such registration is consistent with the public interest and with United States obligations under international laws, 21 U.S.C. § 823(a), (b), or to waive the registration requirement altogether "if he finds it consistent with the public health and safety," *id.* § 822(a), (d).  The Attorney General's authority under the CSA has been delegated at least in part to the DEA.  *See* 21 C.F.R. § 1307.03.  Congress has also authorized the federal courts to recognize religious exceptions if appropriate under the RFRA.  42 U.S.C. § 2000bb-1(c); *Gonzales v. O Centro*, 546 U.S. at 439.  But Iowaska agrees (Br. 33) that Congress did not intend for the IRS to

make such determinations.  For the IRS to assume such a role would be inconsistent with the authority expressly granted by Congress to the Attorney General (and delegated to the DEA) to make exceptions to the application of the CSA in a particular case if he determines it would be in the public interest and consistent with the government's obligations under international laws.  Because the IRS does not administer the CSA, and is not authorized to make exceptions under the Act, Iowaska's burden of proof required it to establish its entitlement to tax-exempt status with proof of a CSA exemption for its use of a controlled substance, either granted by the DEA or recognized by a federal court under the RFRA.

Furthermore, neither the RFRA nor the Supreme Court's decision in *Gonzales v. O Centro*, 546 U.S. 418, interpreting that Act supports Iowaska's argument that its use of ayahuasca was presumptively legal without a CSA exemption.  In *O Centro*, a religious sect that used hoasca[2] as part of its religious practices sued the Attorney General after U.S. Customs inspectors seized a shipment of hoasca and threatened

---

[2] "Hoasca" is "the Portuguese transliteration of ayahuasca." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1174 (10th Cir. 2003).

prosecution. The sect sought declaratory and injunctive relief that applying the Controlled Substances Act to its use of hoasca violated the Religious Freedom Restoration Act. Before trial, the sect filed for a preliminary injunction so that it could continue to use hoasca in its religious practices pending trial on the merits. *Id.* at 425-26.

The government conceded at the preliminary injunction hearing that the challenged application of the CSA would substantially burden the sect's sincere exercise of religion, thereby conceding the sect's prima facie case under the RFRA. The government argued, however, that the burden on the sect did not violate the RFRA because applying the CSA uniformly in that case was the least restrictive means of advancing the compelling interests of protecting the health and safety of the sect's members, preventing the diversion of hoasca to recreational users, and complying with a United Nations convention. The District Court granted the requested injunction, and the court of appeals affirmed. *Id.* at 426-27.

In the Supreme Court, the government argued that its compelling interest in the uniform application of the Controlled Substances Act precluded any consideration of individualized exceptions. *Id.* at 430.

-30-

But the Supreme Court held that the strict scrutiny test adopted in the RFRA, 42 U.S.C. § 2000bb-1(b), requires a "more focused" inquiry in which the government must "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 430-31. The Court also cautioned that its allowance of a particular claim to a religious exemption in a given case is not an announcement of constitutional rights to all persons with like claims; rather, the Court said, "context matters" and "a case-by-case determination of the question, sensitive to the facts of each particular claim," is required. *Id.* at 431 (quotations and citations omitted). The Court concluded in *O Centro* that dimethyltryptamine's inclusion in Schedule I did not provide "a categorical answer that relieves the government of the obligation to shoulder its burden under RFRA," *id.* at 432, and it went on to hold that the government had failed to show in that case that its proffered health and diversion concerns provided a compelling interest in banning the sect's sacramental use of hoasca, *id.* at 437.

-31-

In sum, as relevant here, *O Centro* requires a particularized, case-by-case determination whether an individual or organization is exempt from the CSA on religious grounds.  546 U.S. at 430-32.  For that reason, Iowaska's reliance on *O Centro* for the proposition that *its* use of ayahuasca is presumptively legal is misplaced.  Further, as the District Court observed (Doc. 32 at 9), *O Centro* was decided in "an entirely different legal context" than this case—that is, in a RFRA claim directly challenging application of the CSA to the sect's use of ayahuasca—and its holding is a "far cry" from mandating that all ayahuasca-promoting organizations are entitled to tax-exempt status, as that case did not involve the question of tax exemption at all.  Iowaska concedes (Br. 15) that the IRS lacks statutory authority to determine whether Iowaska is entitled to a CSA exemption, and nothing in the RFRA requires or authorizes an agency to grant an exemption from a statute it does not administer.  Given Congress's specific delegation of authority to the Attorney General to make exceptions under the CSA, this Court should not read *O Centro* to require the IRS instead to determine whether an applicant for tax-exempt status is entitled to a religious exemption from the CSA as a predicate to its determination of tax-exempt status.

-32-

Lacking a decision by the DEA on its administrative request for a
religious exemption, Iowaska's remedy was to seek judicial relief from
application of the CSA under the RFRA, as the sect in *O Centro* did.
But, without either a CSA exemption granted by the DEA or recognized
by a federal court, Iowaska failed to show the IRS that its use of
ayahuasca was not illegal or against public policy and, therefore, did
not satisfy its burden to demonstrate that it was entitled to tax-exempt
status.

Iowaska further argues on appeal, for the first time, that the
District Court erred because it "failed to apply the *Bob Jones* 'no doubt'
standard in this case." (Br. 35.) Iowaska's criticism that the District
Court failed to apply a standard that Iowaska never asserted below or
before the IRS is misdirected, and the argument has been waived.
*Winder v. Erste*, 566 F.3d 209, 218 (D.C. Cir. 2009) (arguments not
raised before the district court are waived).

This new argument also lacks merit. Iowaska points to the
Supreme Court's statement in *Bob Jones* that "a declaration that a
given institution is not 'charitable' should be made only where there can
be no doubt that the activity involved is contrary to a fundamental

public policy," 461 U.S. at 592, and it asserts that the IRS and the

District Court "failed to give [it] the benefit of any doubt" as to the

legality of its use of ayahuasca.  (Br. 34-35.)  But, again, it was

Iowaska's burden to prove that it qualified for tax-exempt status, *Fund*

*for the Study of Economic Growth*, 161 F.3d at 759, and to qualify for

tax-exempt status it had to show that its purposes and activities were

not illegal or against public policy, *see Bob Jones University*, 461 U.S. at

585-602; Revenue Ruling 71-447, 1971-2 C.B. 230 (1971).  Iowaska thus

carried the burden to prove its entitlement to tax-exempt status and

was not entitled to the benefit of any doubt as to its qualification for

such.

Furthermore, there is "no doubt" that use of the exceptionally

dangerous hallucinogen dimethyltryptamine is illegal and against

public policy under the CSA in the absence of an exemption from its

provisions.[3]  *See* 21 U.S.C. §§ 812 Schedule I(c)(6), 841(a), 844(a).

---

[3] The CSA is part of a comprehensive federal scheme regulating the handling of controlled substances.  *Gonzales v. Raich*, 545 U.S. 1, 10, 12-13 (2005).  The "main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances," and "Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels."  *Id.* at 12-13.

-34-

Therefore, the District Court did not clearly err in determining that, without a CSA exemption, Iowaska's use of ayahuasca "remains in violation of federal law" (Doc. 32 at 7-8) and that its primary activities amount to "the illegal distribution and promotion of the use of a controlled substance" (*Id.* at 8).[4]

### 2. Iowaska's argument on administrative exhaustion is meritless

Iowaska also errs in contending that the District Court's decision imposed a "non-existent exhaustion of administrative remedies requirement" before Iowaska can seek judicial relief under the RFRA.

---

[4] Iowaska erroneously contends (Br. 33-34) that the rule that a tax-exempt organization's purpose cannot be illegal, recognized by the Supreme Court in *Bob Jones*, should be narrowly construed because it is not a statutory requirement. The rule was first formally adopted by the IRS in Revenue Ruling 71-447, 1971-2 C.B. 230 (1971), which explained that "[a]ll charitable trusts, educational or otherwise, are subject to the requirement that the purpose of the trust may not be illegal or contrary to public policy." In *Bob Jones*, the Supreme Court expressly held that Revenue Ruling 71-447 was a valid interpretation of the Code's provisions on charitable deductions. 461 U.S. at 579, 585-99. The Court explained that charitable exemptions are made in recognition of the benefit to the public of charitable activities and that Congress has reconfirmed that principle in the Code. *Id.* at 590.

Iowaska's argument also runs afoul of the settled principle that, as matters of legislative grace, "exemptions from taxation are to be construed narrowly." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 59-60 (2011).

(Br. 20.)  Iowaska's argument relies primarily on precedent holding that a plaintiff need not file a request with the DEA for a religious exemption from the CSA before filing a suit challenging the CSA's application to its use of controlled substances under the RFRA.  (*See* Br. 24-25 & n.6.)  None of the cases upon which Iowaska relies involves entitlement to civil tax exemptions under § 501(c)(3).  *See, e.g.*, *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (holding that the RFRA did not require plaintiffs to seek an exemption from the DEA before filing suit for declaratory and injunctive relief under the RFRA to bar the government from enforcing the CSA against their alleged sacramental use of marijuana); *Arizona Yage Assembly v. Garland*, No. CV-20-02373-PHX-ROS, 2023 WL 3246927, at *1-2, 4 (D. Ariz. May 4, 2023) (finding that it was bound by *Oklevueha* and holding that the plaintiff was not required to seek an exemption from the DEA before filing its pre-enforcement RFRA suit against agencies enforcing the CSA seeking a declaration and injunction that their religious use of ayahuasca was lawful).

Moreover, it is irrelevant to this case whether Iowaska can go to court seeking judicial relief under RFRA from the application of the

CSA to its use of ayahuasca without first seeking an exemption from the DEA because Iowaska has not in fact sought such judicial relief. Therefore, to the extent the District Court's opinion suggests that Iowaska cannot bring a RFRA claim in court to challenge the CSA's application to its use of ayahuasca until "after a final determination is made on its application" by the DEA (Doc. 32 at 12), the statement was dictum and was not necessary to the District Court's decision. The important point the District Court was making is that Iowaska's suit against the IRS, rather than the DEA, is misdirected. (*See id.* at 11-12.)

Indeed, Iowaska's complaints (Br. 26-28) about the DEA's exemption process and delays in obtaining an exemption only underscore that it has sued the wrong agency in this suit. In response to the IRS's question about Iowaska's plans if the DEA denied its application for a CSA exemption, Iowaska represented that it would pursue all administrative appeals available to it and that it was "also prepared to seek judicial relief under" the RFRA, "likely in the form of a Declaratory Judgment action requesting that the court order the DEA to issue the exemption." (Doc. 8 at 2.) More than four years later, Iowaska is still "considering" (Br. 27) filing that suit. Iowaska is not in

a position to complain that the District Court's opinion "ignores the realities of the DEA's administration of the CSA" (Br. 28) when it has chosen not to pursue the direct judicial relief from the restrictions of the CSA that it defends at pages 20-28 of its opening brief.

In the end, Iowaska's mischaracterization of the District Court's holding as imposing an administrative exhaustion requirement simply distracts from the real issue—that Iowaska failed to carry its burden of showing that it is entitled to tax-exempt status without proof of a CSA exemption to establish that its use of ayahuasca is legal.

### 3. Iowaska was not organized and operated exclusively for exempt purposes

Iowaska argues that the District Court erred in determining that it was not organized and operated exclusively for exempt purposes, even assuming its use of ayahuasca is illegal, because a savings clause in its Articles of Incorporation precludes it from engaging in illegal activities and because it "voluntarily suspended" its use of ayahuasca in August 2019 for fear of prosecution under the CSA. (Br. 36-41.) These arguments lack merit.

As noted earlier, an organization must establish that it is both "organized and operated exclusively for" one or more of the exempt

purposes specified in § 501(c)(3) to qualify for tax-exempt status, 26

U.S.C. § 501(a), (c)(3), and the failure to satisfy either the

organizational or the operational test is disqualifying, 26 C.F.R.

§ 1.501(c)(3)-1(a).  Again, the scope of review is limited to the

administrative record, and the District Court's finding that Iowaska

failed both tests is reviewed for clear error.  *See* Standard of Review,

*supra*.

### a.    Iowaska fails the organizational test

An organization is "organized" exclusively for exempt purposes

only if its articles of organization "limit the purposes of such

organization to one or more exempt purposes" and "[d]o not expressly

empower it to engage, otherwise than as an insubstantial part of its

activities, in activities which in themselves are not in furtherance of one

or more exempt purposes."  26 C.F.R. § 1.501(c)(3)-1(b)(1)(i).  Here,

Iowaska's Articles of Incorporation expressly state that its purpose,

among others, is "[t]o offer the public access to spiritual growth,

development and healing through the sacred Sacrament of Ayahuasca."

(Doc. 29-2 at 6.)  Although other purposes are listed as well (some of

which might not directly involve the use of ayahuasca), Iowaska has

conceded in this litigation that its "primary purpose" is to "conduct[ ]
regular worship services using the Sacrament of Ayahuasca." (Doc. 16
¶21; *see also* Br. 1 (stating that Iowaska was created to offer the
ayahuasca sacrament as a "major component" of its activities).)
Without proof of a CSA exemption to show that its use of ayahuasca is
not illegal, Iowaska's stated purpose to offer the ayahuasca sacrament
disqualifies it because the presence of a single non-exempt purpose that
is substantial in nature destroys the exemption, regardless of the
number or importance of any other exempt purposes. *Better Bus.
Bureau of Washington, D.C., Inc. v. United States*, 326 U.S. 279, 283
(1945).

Iowaska argues (Br. 38-40) that, notwithstanding its stated
purposes involving the use of ayahuasca in its Articles of Incorporation
(Doc. 29-2 at 6-7), a separate savings clause prevents it from engaging
in any illegal activity. Iowaska relies on Article IX, which states that
"[n]otwithstanding any other provisions of these Articles, [Iowaska]
shall not carry on any other activities not permitted to be carried on" by
a corporation with tax-exempt status under § 501(c)(3). (Doc. 29-2 at 9.)
Iowaska did not make this argument in the District Court and has

-40-

therefore waived any reliance on Article IX by failing to raise it below. (*See* Docs. 20-3, 25); *Winder*, 566 F.3d at 218.

Regardless, Article IX does not show that Iowaska was organized for an exempt purpose.  As noted, an organization is "organized exclusively" for one or more exempt purposes only if its articles of organization both "limit the purposes of such organization to one or more exempt purposes" and "[d]o not expressly empower it to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes."  26 C.F.R. § 1.501(c)(3)-1(b)(1)(i).  Iowaska essentially argues that Article IX disempowers it from carrying out the purpose in Article VI(a) of providing the ayahuasca sacrament.  Iowaska is wrong.  Under general principles of contract construction, the specific governs the general when terms conflict so that Article IX's general provisions would not trump the specific purposes enumerated in Article VI. *Farmers & Merchants Mut. Tel. Co. of Wayland, Iowa v. F.C.C.*, 668 F.3d 714, 721 (D.C. Cir. 2011) (citing *Mutual Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904)).  Iowaska's response fails to show that the Articles of Incorporation "limit the purposes of such organization to one or more

-41-

exempt purposes" when Article IV(a) expressly provides otherwise. (Doc. 29-2 at 6.) Iowaska's related assertion that Article IV(a) "certainly does not commit to [providing access to ayahuasca] in an illegal manner" (Br. 38) also lacks merit because, under the CSA, providing access to ayahuasca in any manner is illegal without an exemption.

In any event, Iowaska's savings clause cannot have the effect that Iowaska advocates entitles it to tax-exempt status. If it could, every organization could satisfy the organizational test merely by including a savings clause in its articles of incorporation, regardless of the organization's stated purposes, rendering this statutory requirement meaningless. Under Iowaska's interpretation of the savings clause, the meaning of Iowaska's purposes as stated in Article VI of its Articles of Incorporation is subject to change, depending on how the IRS or a court decides the legality of those purposes. Savings clauses of this sort incorporating a condition subsequent—i.e., under which provisions are subject to change depending on a future IRS or court decision—are disregarded for federal tax purposes. *Belk v. Commissioner*, 774 F.3d 221, 228-30 (4th Cir. 2014); *cf. id.* at 230 ("If every taxpayer could rely

on a savings clause to void, after the fact, a disqualifying deduction (or credit), enforcement of the Internal Revenue Code would grind to a halt."). Therefore, Iowaska's reliance on the savings clause to satisfy the organizational test fails.

Contrary to its argument, Iowaska's temporary suspension of the ayahuasca sacrament in August 2019 also does not help its argument that it was organized exclusively for exempt purposes. The cases it cites, *Commissioner v. John Danz Charitable Trust*, 284 F.2d 726 (9th Cir. 1960), and *Taxation With Representation v. United States*, 585 F.2d 1219 (4th Cir. 1978), stand at most for the proposition that where the purpose for which an entity is organized is unclear, evidence of its operations may provide clarity regarding the "intentions or motives behind the structure" of the organization to determine whether the entity has satisfied the organizational test. *John Danz*, 284 F.2d at 733; *accord Taxation With Representation*, 585 F.2d at 1222. Here, there is no question regarding the "intents and motives behind the structure" of Iowaska. Iowaska concedes (Br. 1) it was "created … to offer the public … a combination of religious and spiritual practices and education including, as a major component, the ayahuasca sacrament,"

-43-

and that "primary purpose" (Doc. 16 ¶21) is expressly stated in Article IV(a) of its Articles of Incorporation (Doc. 29-2 at 6).  And Iowaska operated in that manner in the Summer of 2019.  Its temporary suspension of its activities does not change the nature of the purposes for which it was expressly organized.

The District Court's determination that Iowaska failed to satisfy the organizational test was not clearly erroneous.

### b.    Iowaska fails the operational test

Although Iowaska's failure to meet the organizational test is alone sufficient to defeat tax-exempt status under § 501(c)(3), the District Court found that Iowaska also failed the operational test.  Iowaska has not shown any clear error in the court's determination.

To be "operated exclusively" for exempt purposes, an organization must be "engage[d] primarily in activities which accomplish" those exempt purposes and will fail the operational test "if more than an insubstantial part of its activities is not in furtherance of an exempt purpose."  26 C.F.R. § 1.501(c)(3)-1(c)(1).  The administrative record before the IRS in this case established that "more than an insubstantial part" of Iowaska's activities were in furtherance of the non-exempt

-44-

purpose of distributing and facilitating the use of ayahuasca.  The

administrative record shows that Iowaska devoted 40 percent of its time

to conducting its weekend ceremonies and services where the

ayahuasca sacrament was offered and consumed.  (Doc. 32 at 3 n.3; Doc.

29-6 at 2-3.)  By any measure, activities that make up nearly half of

Iowaska's total activities are "more than an insubstantial part of" its

activities.  Because Iowaska has not yet obtained an exemption from the

CSA or sought judicial relief from the application of the CSA to its use

of ayahuasca, the District Court correctly determined that Iowaska's

"primary activities therefore amount to the illegal distribution and

promotion of the use of a controlled substance, a non-exempt purpose."

(Doc. 32 at 8.)

Contrary to Iowaska's argument, its voluntary suspension of

ayahuasca sacrament ceremonies in August 2019 because it feared

prosecution under the CSA (Br. 8, 26-27; Doc. 16 ¶25) does not show

that Iowaska satisfied the operational test on the basis of the

administrative record.  Iowaska filed its application for tax-exempt

status with the IRS in January 2019 and then proceeded to administer

the ayahuasca sacrament during its religious ceremonies for several

months while its application was pending and awaiting decision by the IRS.  And the fact that Iowaska temporarily suspended its ceremonies because it and its members feared prosecution for engaging in them only underscores that its primary activities established in the record were "not in furtherance of an exempt purpose."  26 C.F.R. § 1.501(c)(3)-1(c)(1).  The IRS is not required to ignore activities Iowaska engaged in that carried out the express and primary purpose of the organization as set forth in its Articles of Incorporation simply because the organization has temporarily suspended them.

Iowaska's reliance on *Branch Ministries v. Rossotti*, 211 F.3d 137 (D.C. Cir. 2000), does not compel a different conclusion.  In that case, the IRS revoked a church's longstanding tax-exempt status because it engaged in prohibited political activity by placing politically-related advertisements in two national newspapers four days before the 1992 presidential election.  *Id.* at 141.  After rejecting the church's argument that the IRS lacked statutory authority to revoke its tax-exempt status, *id*. at 141-42, this Court observed that the church could "reapply[ ] for a prospective determination of its tax-exempt status and regain[ ] advance reassurance of deductibility" if it renounced future involvement

-46-

in political campaigns, *id.* at 143.  Here, in contrast, Iowaska

represented to the IRS that it intended to resume its ceremonies once it

obtains confirmation from the DEA that those activities are legal.  (Doc.

29-10 at 5.)  But the IRS is not required to grant tax-exempt status in

the absence of such confirmation, which Iowaska may never receive.

The District Court did not clearly err in finding that the IRS

properly denied tax-exempt status because Iowaska's activities, based

on the administrative record, were illegal under federal law and against

public policy, thereby failing the operational test.  *See Mysteryboy*

*Incorporation v. Commissioner*, T.C. Memo. 2010-13, 2010 WL 291758,

at *19 (T.C. 2010) (holding that organization was not operated

exclusively for exempt purpose where petitioner "proposes to operate in

a manner that promotes activities which are prohibited by Federal and

State laws, violate public policy as reflected in those laws, and tend to

promote illegal activities").

-47-

## II

**The District Court correctly held that Iowaska did not satisfy Article III standing for its claim that the IRS violated the RFRA**

### Standard of review

This Court reviews the question of standing de novo. *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013).

### A.    Article III standing

Article III of the Constitution restricts the power of federal courts to hear only "cases" and "controversies." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc). The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1032 (D.C. Cir. 2022) (quotation and citation omitted). Standing to raise RFRA as a claim or defense in federal court is "governed by the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000bb-1(c).

"To establish standing, a party must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Ass'n of Am. Physicians & Surgeons*, 23 F.4th at 1032

-48-

(quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  The plaintiff

bears the burden of proof on standing, and, at summary judgment, must

support all factual assertions for each standing element with specific

evidence.  *Humane Soc'y of the United States v. Perdue*, 935 F.3d 598,

602 (D.C. Cir. 2019).

## B. Iowaska failed to satisfy the requirements of standing for its claim that the IRS violated the RFRA

The issue of standing must be addressed in the context of the

specific RFRA claim asserted in this case by Iowaska.  The RFRA claim

Iowaska has asserted is that the IRS's "ruling that [its] activities are

illegal in a binding adverse determination letter … imposed a

substantial burden on [its] and its members' free exercise of their

unalienable First Amendment rights" in violation of the RFRA.[5]  (Doc.

16 ¶37.)  In the District Court, Iowaska asserted three specific injuries

stemming from the IRS's action:  (1) "the Church's and its members'

---

[5] The amended complaint does *not* assert that application of the CSA, which regulates controlled substances, imposes a substantial burden on Iowaska's religious exercise involving the use of ayahuasca in violation of the RFRA, and it does *not* name the DEA as a party.  The United States was named as a defendant in the amended complaint, but only "pursuant to [26 U.S.C.] § 7428 and 28 U.S.C. § 1346(e)," which pertain to judicial review of the IRS's determination of tax-exempt status.  (Doc. 16 ¶3; *see also* Doc. 15 ¶4.)

-49-

inability to exercise their religion after the [IRS's] erroneous branding of their beliefs and practices as 'illegal' " and the resulting "chilling effect" (Doc. 25 at 10); (2) reputational harm from the IRS's "classifying its purposes and activities as 'illegal' in a binding ruling" (*id.* at 11-12); and (3) economic loss in the form of lost membership income and contributions resulting from the reputational injury (*id.* at 11, 12-13). According to Iowaska's representations below, the first of these alleged injuries, regarding the inability to exercise religion, was the "primary" and "most significant" injury conferring standing. (*Id.* at 10, 11.)

Applying Article III standards to each of these alleged injuries, the District Court correctly held that Iowaska did not satisfy the requirements for standing. (Doc. 32 at 10-15.) The first alleged injury—the inability to use ayahuasca lawfully in religious ceremonies—even assuming it is a cognizable injury, is not "fairly traceable" to the IRS's adverse determination letter but rather is caused by the prohibitions in the CSA and Iowaska's lack of a CSA exemption (which the IRS has no authority to grant). Nor is it "likely to be redressed by a favorable judicial decision" here because a reversal of the IRS's final adverse determination letter would not protect Iowaska from

-50-

the threat of prosecution under the CSA for its religious practice. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff must allege sufficient facts showing it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (quotation and citation omitted).

The second alleged injury—reputational harm—is not sufficiently concrete to constitute an "injury in fact" because Iowaska did not point to any record evidence showing stigmatic harm resulting from the IRS's ruling that its activities were illegal in the determination letter. *See Alamo v. Clay*, 137 F.3d 1366, 1370 (D.C. Cir. 1998) (reputational injury does not confer standing).

And the third alleged injury—economic loss—also fails the standing requirements because the alleged loss of a fundraising opportunity is so speculative as to not be an injury-in-fact. *See Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995); *Friends of Animals v. Jewell*, 115 F. Supp. 3d 107, 115-16 (D.D.C. 2015), *aff'd on other grounds*, 828 F.3d 989 (D.C. Cir. 2016). The District Court also correctly held that Iowaska's asserted economic loss failed the traceabilty and redressability requirements because the

alleged loss "depends entirely on the independent decisions of third-party donors." (Doc. 32 at 13 n.7.) *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013); *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("[W]hen considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties).") (quotation and citation omitted).

### 1. Iowaska has waived its arguments of standing based on two of its alleged injuries asserted below

On appeal, Iowaska does not offer any argument challenging the District Court's ruling with respect to the first two alleged injuries—i.e., the inability to exercise religion and reputational harm. Nor does Iowaska explain why the District Court's ruling was wrong. Iowaska says in a footnote that, by not focusing on these two alleged injuries in its brief, it does not waive its claim of standing based upon them. (Br. 13 n.7.) But Iowaska has indeed waived these alleged bases for standing by making only cursory references to these alleged injuries in its opening brief and by failing to develop any argument challenging the District Court's ruling with respect to them. *Hutchins v. District of*

*Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc) ("We need not consider cursory arguments made only in a footnote[.]"); *United States v. Law*, 528 F.3d 888, 908 n.11 (D.C. Cir. 2008) (treating appellant's "argument as waived because he failed to develop it"). Without any argument in Iowaska's opening brief regarding these injuries for the Government to respond to, we address them no further.

>  **2.    Iowaska's sole argument on appeal for standing improperly raises a new theory not advanced below**

As it turns out, Iowaska has a similar problem on appeal with the third injury alleged below:  on appeal, Iowaska advances a starkly different theory of economic loss than it did in the District Court.  In the District Court, Iowaska alleged that its RFRA injuries were caused by the IRS's "public declaration" and "ruling that [its] activities are illegal in a binding adverse determination letter."  (Doc. 16 ¶37; *see also* Doc. 25 at 10-13.)  But now, on appeal (after abandoning any argument related to its "primary" injury advanced below), Iowaska raises a new theory of injury for the first time.  Iowaska now argues that its injury resulted not from the IRS's public declaration that its activities were illegal in a binding ruling, but instead from the IRS's denial of a tax

-53-

exemption.  (Br. 41, 42.)  Iowaska then further asserts for the first time on appeal that its injury underlying its RFRA claim is the "deprivation of 501(c)(3) status and the economic benefits that come with it."  (Br. 45.)  With its theory of standing recast in those new terms, Iowaska proceeds to argue that the District Court erred in dismissing its RFRA claim for lack of standing.

Of course, the District Court never considered Iowaska's new theory for standing under the RFRA because it was not presented below.  To be sure, Claim One of the amended complaint (Doc. 16 ¶¶30-34) properly challenged the IRS's denial of tax-exempt status, and the District Court addressed that challenge on the merits as authorized under 26 U.S.C. § 7428.  But Iowaska's RFRA claim, which was Claim Two in the amended complaint, was not based on the IRS's denial of tax-exempt status but was grounded instead in the IRS's "public declaration" and "ruling that [Iowaska's] activities are illegal in a binding adverse determination letter," which Iowaska alleged had "imposed a substantial burden on [Iowaska] and its members' free exercise of their unalienable First Amendment rights."  (Doc. 16 ¶37.)  Iowaska thus argued below that the "true issue" in its RFRA claim "is

whether the Defendants' explicit determination—that the religious practice of using Ayahuasca is illegal—has deterred and chilled the Church from engaging in its free exercise of religion." (Doc. 25 at 9; *see also* Doc. 20-3 at 37-38 ("Defendants' actions in labeling the Church's religious practices as illegal have had a chilling effect on the Church's and its members' free exercise of their religion.").) To that end, it identified its "primary injury" as its (and its members') inability to use ayahuasca in religious ceremonies "after the IRS's erroneous branding of their beliefs and practices as illegal." (Doc. 25 at 10.) It similarly asserted lesser injuries of reputational harm and the economic loss of membership income and charitable donations allegedly stemming from that "public declaration" (Doc. 16 ¶37) that its ceremonial use of ayahuasca is illegal. (Doc. 25 at 11-13, 16; Doc. 20-3 at 37-38.) Iowaska thus traced the loss of membership income and donations to the reputational damage of having its activities publicly labelled as illegal, not to the IRS's denial of its application for tax-exempt status as it now reframes its argument on appeal.

This Court should not entertain Iowaska's attempt to recast on appeal its theory of standing for its RFRA claim based on a different

-55-

alleged injury (i.e., that of being deprived of tax-exempt status) and

allegedly caused by different IRS conduct (i.e., that of denying Iowaska

tax-exempt status) than what Iowaska asserted below.  "It is well

settled that issues and legal theories not asserted at the District Court

level ordinarily will not be heard on appeal," and "[t]hat rule applies to

standing, as much as to merits, arguments." *Huron v. Cobert*, 809 F.3d

1274, 1280 (D.C. Cir. 2016) (quotation and citation omitted).

Furthermore, "it is not the province of an appellate court to hypothesize

or speculate about the existence of an injury [the plaintiff] did not

assert' to the district court." *Id.*

To the extent Iowaska seeks to challenge the District Court's

ruling on the economic loss injury that was asserted below, the District

Court properly rejected that basis for standing for the reasons stated

above (*see* pp. 50-51, *supra*) and in the court's opinion (Doc. 32 at 13

n.7).

## C.    The merits of Iowaska's RFRA claim are not before this Court

Throughout its brief, Iowaska asks this Court to address the

merits of its RFRA claim and to rule in its favor.  (*See, e.g.*, Br. 5, 15, 16,

42, 50-52.)  Having correctly held that Iowaska lacks standing to assert

-56-

its RFRA claim, the District Court correctly concluded that it lacked

subject matter jurisdiction to address the merits of the claim.  (Doc. 32

at 15.)  *Union of Concerned Scientists v. United States Dep't of Energy*,

998 F.3d 926, 931 (D.C. Cir. 2021).  If this Court should reverse the

District Court's holding that Iowaska lacks standing to assert its RFRA

claim, a remand would be appropriate to permit the District Court to

consider the merits of the RFRA claim in the first instance.  *Nat'l*

*Council for Adoption v. Blinken*, 4 F.4th 106, 113 (D.C. Cir. 2021)

("When we reverse on threshold matters like standing, we typically

remand to the district court to decide the merits of the case.") (citation

omitted).  Iowaska agrees.  (Br. 16, 50.)

 If this Court should proceed to the merits of the RFRA claim,

however, it should rule for the Government.  As explained above,

Iowaska's argument that the IRS violated the RFRA rests on a

misunderstanding of the Supreme Court's decision in *Gonzales v. O*

*Centro.  See* pp. 28-31, *supra*.

And even if Iowaska properly raised its new theory of standing on

appeal, the fact that Iowaska has not received a CSA exemption from

the DEA is relevant to its argument that the IRS's denial of a tax

exemption imposed a substantial burden because it has to pay taxes on its income.  After *O Centro*, courts have upheld the federal government's denials of RFRA exceptions to the CSA.  *See, e.g.*, *United States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016) (denying exception to CSA for sacramental cannabis use because the government had a compelling interest in "mitigating the risk that cannabis from the Ministry will be diverted to recreational users"); *United States v. Lafley*, 656 F.3d 936, 940-42 (9th Cir. 2011) (finding no violation of RFRA where conditions of supervised release prevented religious use of marijuana following conviction for conspiracy to manufacture and possess with intent to distribute methamphetamine).  And, given that the DEA may deny Iowaska's application, the IRS did not err in resolving Iowaska's application based on the administrative record before it.  The RFRA should not be understood to compel the IRS to pre-judge the merits of a request for exemption from application of the CSA as a predicate to its tax exempt-status determination.

Finally, in cases decided before and after Congress passed the RFRA in 1993, courts found that participation in the federal tax system is the least restrictive means of furthering the federal government's

-58-

compelling interest in collecting taxes. *See Hernandez v. Commissioner*, 490 U.S. 680, 698-700 (1989) (rejecting free exercise challenge to payment of income taxes that allegedly made religious activities more difficult); *United States v. Lee*, 455 U.S. 252, 260 (1982) (rejecting an Amish taxpayer's claim that free exercise clause permitted his exemption from social security tax obligations: "[t]he tax system could not function if denominations were allowed to challenge the tax system" because it operated "in a manner that violates their religious belief"); *Jenkins v. Commissioner*, 483 F.3d 90, 92-93 (2d Cir. 2007) (requirement that individual with religious objections to paying federal taxes did not violate the free exercise clause or the RFRA); *Adams v. Commissioner*, 170 F.3d 173, 179 (3d Cir. 1999) (RFRA does not afford right to avoid payment of taxes for religious reasons; the "least restrictive means of furthering a compelling interest in the collection of taxes . . . is in fact, to implement that system in a uniform, mandatory way, with Congress determining in the first instance if exemptions are to [be] built into the legislative scheme").

-59-

# CONCLUSION

The order of the District Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Kathleen E. Lyon

JACOB EARL CHRISTENSEN          (202) 307-0878
KATHLEEN E. LYON                (202) 307-6370
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
MATTHEW M. GRAVES
  *United States Attorney*

DECEMBER 8, 2023

# CERTIFICATE OF COMPLIANCE

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this document contains 11,467 words, **or**

[ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   _/s/ Kathleen E. Lyon_

Attorney for _ Appellees _

Dated: ____ 12/8/23 ___

# STATUTORY ADDENDUM

| Statute | Page |
|---|---|
| **Internal Revenue Code of 1986 (26 U.S.C.)** | |
| § 501 | 62 |
| **Controlled Substances Act (21 U.S.C.)** | |
| § 812 | 63 |
| § 822 | 64 |
| § 823 | 65 |
| § 841 | 65 |
| § 844 | 66 |
| **Religious Freedom Restoration Act (42 U.S.C.)** | |
| § 2000bb-1 | 66 |
| **Regulations** | |
| **Treasury Regulations (26 C.F.R.)** | |
| § 1.501(c)(3)-1 | 67 |
| **DEA Regulations (21 C.F.R.)** | |
| § 1307.03 | 69 |

**Internal Revenue Code of 1986 (26 U.S.C.)**

**§ 501   Exemption from tax on corporations, certain trusts, etc.**

**(a) Exemption from taxation.**--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\* \* \*

**(c) List of exempt organizations.**--The following organizations are referred to in subsection (a):

\* \* \*

**(3)** Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no

-63-

substantial part of the activities of which is carrying on

propaganda, or otherwise attempting, to influence legislation

(except as otherwise provided in subsection (h)), and which

does not participate in, or intervene in (including the

publishing or distributing of statements), any political

campaign on behalf of (or in opposition to) any candidate for

public office.

**Controlled Substances Act (21 U.S.C.)**

**§ 812        Schedules of controlled substances**

**(a) Establishment**  There are established five schedules of

controlled substances, to be known as schedules I, II, III, IV, and

V. Such schedules shall initially consist of the substances listed in

this section. The schedules established by this section shall be

updated and republished on a semiannual basis during the two-

year period beginning one year after October 27, 1970, and shall

be updated and republished on an annual basis thereafter.

* * *

**(c)** Unless specifically excepted or unless listed in another

schedule, any material, compound, mixture, or preparation, which

contains any quantity of the following hallucinogenic substances,
or which contains any of their salts, isomers, and salts of isomers
whenever the existence of such salts, isomers, and salts of isomers
is possible within the specific chemical designation:

* * *

(6) Dimethyltryptamine.

## § 822    Persons required to register

### (a) Period of registration

(1) Every person who manufactures or distributes any
controlled substance or list I chemical, or who proposes to
engage in the manufacture or distribution of any controlled
substance or list I chemical, shall obtain annually a
registration issued by the Attorney General in accordance
with the rules and regulations promulgated by him.

* * *

(d) Waiver  The Attorney General may, by regulation, waive the
requirement for registration of certain manufacturers,
distributors, or dispensers if he finds it consistent with the public
health and safety.

-65-

\* \* \*

## § 823    Registration requirements

\* \* \*

**(b)** Distributors of controlled substances in schedule I or II

The Attorney General shall register an applicant to distribute a controlled substance in schedule I or II unless he determines that the issuance of such registration is inconsistent with the public interest.

\* \* \*

## § 841    Prohibited acts A

**(a) Unlawful acts**

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; \*\*\*

\* \* \*

## § 844        Penalties for simple possession

### (a) Unlawful acts; penalties

It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II. * * *

* * *

## Religious Freedom Restoration Act (42 U.S.C.)

### § 2000bb-1        Free exercise of religion protected

#### (a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

#### (b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

(1) is in furtherance of a compelling governmental

interest; and

(2) is the least restrictive means of furthering that

compelling governmental interest.

## (c) Judicial relief

A person whose religious exercise has been burdened in

violation of this section may assert that violation as a claim

or defense in a judicial proceeding and obtain appropriate

relief against a government. Standing to assert a claim or

defense under this section shall be governed by the general

rules of standing under article III of the Constitution.

**Treasury Regulations (26 C.F.R.)**

## § 1.501(c)(3)-1   Organizations organized and operated for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals

**(a) Organizational and operational tests.** (1) In order to be

exempt as an organization described in section 501(c)(3), an

organization must be both organized and operated exclusively for

one or more of the purposes specified in such section. If an

-68-

organization fails to meet either the organizational test or the operational test, it is not exempt.

\* \* \*

**(b) Organizational test—(1) In general. (i)** An organization is organized exclusively for one or more exempt purposes only if its articles of organization (referred to in this section as its articles) as defined in subparagraph (2) of this paragraph:

> **(a)** Limit the purposes of such organization to one or more exempt purposes; and

> **(b)** Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes.

\* \* \*

**(c) Operational test—(1) Primary activities.** An organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more

than an insubstantial part of its activities is not in furtherance of an exempt purpose.

**\* \* \***

## DEA Regulations (21 C.F.R.)

## § 1307.03    Exceptions to regulations

Any person may apply for an exception to the application of any provision of this chapter by filing a written request with the Office of Diversion Control, Drug Enforcement Administration, stating the reasons for such exception. See the Table of DEA Mailing Addresses in § 1321.01 of this chapter for the current mailing address. The Administrator may grant an exception in his discretion, but in no case shall he/she be required to grant an exception to any person which is otherwise required by law or the regulations cited in this section.

-70-

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit on December 8, 2023, by using the appellate CM/ECF system.  I further certify that the foregoing brief was served on counsel for the appellant on December 8, 2023, via the CM/ECF system.


   /s/ Kathleen E. Lyon
      KATHLEEN E. LYON
         *Attorney*