ORAL ARGUMENT NOT SCHEDULED

**Case No. 23-5122**

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**Iowaska Church of Healing**,

*Plaintiff-Appellant,*

v.

**Daniel I. Werfel, Commissioner, Internal Revenue Service, and United States of America**,

*Defendant-Appellees.*

---

## REPLY BRIEF FOR PLAINTIFF-APPELLANT
## IOWASKA CHURCH OF HEALING

---

On Appeal from the U.S. District Court for the District of Columbia,
No. 1:21-cv-02475-BAH (Beryl A. Howell, District Judge)

---

William A. Boatwright
Dentons Davis Brown PC
215 10th Street, Ste. 1300
Des Moines, IA 50309
(515) 288-2500
bill.boatwright@dentons.com

Simon A. Steel*
Katie Daw
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com

---

* Member of DC Circuit and NY Bars; not admitted in DC.

Joanne Caceres
Dentons US LLP
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606-6361
(312) 876-2862

*Counsel for Plaintiff-Appellant Iowaska Church of Healing*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY ....................................................................1

ARGUMENT ........................................................................................................4

I.     ICH SHOULD PREVAIL ON ITS TAX CODE CLAIM. ...........................4

      A.     *De Novo* Review Applies. ....................................................................4

      B.     The IRS/District Court Position That ICH's Ayahuasca
           Sacrament Is Illegal Unless and Until ICH Receives A CSA
           Exemption Is An Error Of Law..............................................................6

      C.     The IRS/District Court Position Misreads The *Bob Jones* Rule.........10

      D.     Even If The Ayahuasca Sacrament Were Illegal, ICH Would Be
           Organized And Operated For Exempt Purposes. ................................13

II.    ICH DID NOT WAIVE ITS STRAIGHTFORWARD BASIS FOR
      STANDING TO CHALLENGE UNDER RFRA THE IRS'S
      DENIAL OF 501(C)(3) STATUS. .............................................................16

CONCLUSION ...................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Adkins v. Kaspar*,
  393 F.3d 559 (5th Cir. 2004) ................................................................... 25

*Aktieselskabet AF 21 November 21 v. Fame Jeans Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) .................................................................... 18

*Andantech v. C.I.R.*,
  331 F.3d 972 (D.C. Cir. 2003) .................................................................. 5

*Baptist Hospitals, Inc. v. United States*,
  851 F.2d 1397 (Fed. Cir. 1988) ......................................................... 16, 23

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
  140 U.S. 2335 (2020) ............................................................................. 10

*Bob Jones University v. United States*,
  461 U.S. 574 (1983) ......................................................... 2, 5, 6, 9, 11, 12, 13

*Bostock v. Clayton Cnty., Georgia*,
  140 S. Ct. 1731 (2020) ......................................................................... 8-9

*Branch Ministries v. Rossotti*,
  211 F.3d 137 (D.C. Cir. 2000) ............................................................ 5, 16

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ........................................................................... 23, 24

*Byers v. C.I.R.*,
  740 F.3d 668 (D.C. Cir. 2014) .............................................................. 5, 6

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*,
  680 F.3d 61 (1st Cir. 2012) ................................................................... 15

*Commissioner of Internal Revenue v. John Danz Charitable Trust*,
  284 F.2d 726 (9th Cir. 1960) .................................................................. 14

*Cook v. Bennett*,
  792 F.3d 1294 (11th Cir. 2015) .............................................................. 19

*In re Ctr. for Biological Diversity*,
    53 F.4th 665 (D.C. Cir. 2022) ................................................................................. 8

*Fund for the Study of Economic Growth & Tax Reform v. I.R.S.*,
    161 F.3d 755 (D.C. Cir. 1998) ...................................................................4, 5, 13, 19

*Gardner v. First Am. Title Ins. Co.*,
    294 F.3d 991 (7th Cir. 2002) ................................................................................. 18

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2016) ...................................................................5, 7, 9, 10, 12, 25

*Harris v. Bowser*,
    60 F.4th 699 (D.C. Cir. 2023) ................................................................................. 4

*Huron v. Cobert*,
    809 F.3d 1274 (D.C. Cir. 2016) ...................................................................23, 24

*Jeffries v. Barr*,
    965 F.3d 843 (D.C. Cir. 2020) ................................................................................. 6

*Lessne v. Doe*,
    712 F.3d 584 (D.C. Cir. 2013) ...................................................................13, 21

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ................................................................................. 9

*Morton v. Mancari*,
    417 U.S. 535 (1974) ................................................................................. 8

*Oberbillig v. West Grand Towers Condominium Ass'n*,
    807 N.W.2d 143 (Iowa 2011) ................................................................................. 15

*Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder*,
    676 F.3d 829 (9th Cir. 2012) ................................................................................. 9

*Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*,
    782 F.3d 922 (7th Cir. 2015) ...................................................................13, 21

*Soul Quest Church of Mother Earth, Inc. v. Garland*,
    2023 WL 8714320 (11th Cir. Dec. 18, 2023)................................................................. 6, 9

*Taxation With Representation v. United States*,
    585 F.2d 1219 (4th Cir. 1978)................................................ 14

*Thompson v. District of Columbia*,
    832 F.3d 339 (D.C. Cir. 2016) .............................................. 4

*United States v. Borden Co.*,
    388 U.S. 188 (1939) .............................................................. 8

*Van Kush v. Drug Enforcement Admin.*,
    2022 WL 1978730 (D.D.C. June 6, 2022) ........................... 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................ 18

*In re Young*,
    141 F.3d 854 (8th Cir. 1998) ................................................ 9

**STATUTES**

26 United States Code
    § 501(c)(3) ........................................ 1, 2, 3, 4, 5, 10, 11, 12, 13, 16, 18, 19, 20, 21, 22, 25

42 United States Code
    § 2000bb(b)(2) .................................................................... 8
    § 2000bb-1(b)..................................................................... 10
    § 2000bb-3(a) ..................................................................... 8

**RULES AND REGULATIONS**

Revenue Ruling
    71-447, 1971-2 C.B. 230...................................................... 12

**OTHER AUTHORITIES**

*Soul Quest Church of Mother Earth, Inc. v. Garland*, 11th Cir. No. 22-11072,
    Brief of Appellee United States, 2022 WL 3714912 (filed Aug. 22, 2022) .................. 10

E. Stiffman, *Dozens of "Hate Groups" Have Charity Status, Chronicle Study Finds,*
    CHRONICLE OF PHILANTHROPY (Dec. 22, 2016),
    https://www.philanthropy.com/article/dozens-of-hate-groups-have-charity-status-em-chronicle-em-study-finds/ ...................................................... 11

# **GLOSSARY**

| | |
|---|---|
| CSA | Controlled Substances Act of 1970, 21 U.S.C. §§ 801, *et seq.* |
| D.E. | Docket entry numbers in the court below, D.D.C. No. 21-cv-02475-BAH (used for citations in initial briefs and citations to record items not included in the Joint Appendix) |
| DEA | U.S. Drug Enforcement Administration |
| ICH | Iowaska Church of Healing (Plaintiff-Appellant) |
| IRS | Internal Revenue Service (Defendant-Appellee) |
| JA | Joint Appendix (used for citations in final briefs) |
| RFRA | Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb, *et seq.* |
| Tax Code | Internal Revenue Code of 1986, 26 U.S.C. §§ 1, *et seq.* |

## INTRODUCTION AND SUMMARY

Under the Tax Code, the Internal Revenue Service ("IRS") and the district court erred in holding that Iowaska Church of Healing's ("ICH") otherwise clear entitlement to 501(c)(3) tax-exempt status was defeated by ICH's purpose of holding Religious Freedom Restoration Act ("RFRA")-protected religious ceremonies using ayahuasca sacraments, which it proposes to do once their legality is confirmed.

The Controlled Substances Act ("CSA"), which generally prohibits the consumption of ayahuasca, and RFRA, which generally prohibits treating as illegal or otherwise penalizing religious sacraments, must be read together, raising a pure question of law of how to harmonize them. The IRS declines to defend the district court's erroneous view that ayahuasca sacraments are illegal unless and until the Drug Enforcement Administration ("DEA") grants an exemption from the CSA. Instead, the IRS says that ICH's ayahuasca sacraments are illegal unless and until either the DEA *or a court* grants a CSA exemption. But, at the same time, the IRS declines to say (and claims that it does not matter) whether or how ICH could have sought a CSA exemption directly from a court. The district court erected an unsupported exhaustion of administrative remedies prerequisite for legal protection under RFRA; the IRS's caveat that there might or might not be a judicial bypass around that unsupported requirement does not solve the problem. As the Supreme

1

Court and the Ninth Circuit have affirmed in cases involving ayahuasca

sacraments, RFRA provides ***immediate*** protection for sincere exercises of religion,

which are presumptively lawful, not "illegal" until an exemption is granted.

To be sure, the legality of ICH's ayahuasca sacrament has not been finally

resolved. But the Tax Code does not require a final determination of legality as a

prerequisite to 501(c)(3) status. It is undisputed that ICH qualifies for 501(c)(3)

status unless the public policy/illegality bar recognized and delineated by the

Supreme Court in *Bob Jones University v. United States,* 461 U.S. 574 (1983)

applies. But the IRS offers no substantive defense of its decision under *Bob Jones*.

Instead, it complains that ICH did not emphasize the key language in *Bob Jones*

when it challenged the IRS's application of *Bob Jones* below, and it recites the trite

proposition that the burden is on an applicant to establish its entitlement to

501(c)(3) status. ICH argued below that the *Bob Jones* rule does not justify the

IRS's denial decision; the nuances of how it framed that argument do not amount

to waiver. And the allocation to the applicant of the burden of proof on factual

issues does not constitute a license for the IRS to misread the key Supreme Court

precedent on which it premises its decision.

The IRS also mischaracterizes ICH's argument about how the Tax Code

would apply if the IRS were right that ICH's ayahuasca sacraments are illegal

unless and until exempted. ICH does not merely rely on a "savings clause." It

relies on a combination of undisputed facts: its articles commit it to act legally; that
commitment is readily reconcilable with its commitment to practice ayahuasca
sacraments, since it sought at the outset and reasonably expects to receive
confirmation that they are legal; and ICH has demonstrated its commitment to
operate legally by being candid and cooperative with the IRS and the DEA and by
suspending its ayahuasca sacraments indefinitely – for almost its entire existence
thus far – pending confirmation of their legality. Together, those facts demonstrate
that ICH is neither organized nor operated to act illegally.

With respect to ICH's RFRA claim, the IRS does not explain why, when
ICH sued the IRS under two statutes (the Tax Code and RFRA) to seek redress for
a single IRS action (the IRS's ruling denying ICH section 501(c)(3) tax-exempt
status), ICH should be deemed to have constitutional standing under only one of
those statutes (the Tax Code). ICH has standing to bring both claims because it was
injured by the IRS's wrongful denial of 501(c)(3) status and seeks material redress
in the form of a grant of 501(c)(3) status. The IRS claims that ICH waived that
theory of standing for the RFRA claim by emphasizing in the district court the
additional harm caused by the IRS's *rationale* for its decision – its labeling of the
ayahuasca sacrament as illegal. But ICH also properly sought reversal of ***the
decision itself***. Again, differences in emphasis between district court and appellate
arguments are normal, not fatal. And ICH's consistent argument that the IRS

decision denying it 501(c)(3) status harmed it economically by hampering its efforts to attract membership and donors is ample to establish standing.

## ARGUMENT

## I.    ICH Should Prevail On Its Tax Code Claim.

### A.    De Novo *Review Applies.*

The IRS misreads a brief, case-specific discussion in *Fund for the Study of Economic Growth & Tax Reform v. I.R.S.,* 161 F.3d 755, 758-59 & n.6 (D.C. Cir. 1998) ("*FSEGTR*"), as prescribing clear error as the standard of appellate review for all claims under the Tax Code. IRS br. 22-24. As this Court has reaffirmed many times since, grants of summary judgment are reviewed *de novo*. *See, e.g., Harris v. Bowser,* 60 F.4th 699, 701 (D.C. Cir. 2023); *Jeffries v. Barr,* 965 F.3d 843, 859 (D.C. Cir. 2020); *Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016). The Tax Code does not purport to create a special exception to that rule, and it would make no sense for a court of appeals to defer to a district court when the same paper record was before both courts and there are no disputed issues of fact, only pure questions of law. Rather, *FSEGTR* concluded that although the district court had erroneously used the form of summary judgment instead of a "bench trial," it had in substance made "mixed findings of fact and law . . . on the merits" (with which this Court would plainly have agreed even under *de novo* review), so "we think that a remand is unnecessary, and we review the case as

if it had been properly structured and decided on the merits." *FSEGTR*, 161 F.3d at 759.

Subsequent cases have properly read *FSEGTR* as calling for appellate deference on fact and mixed fact/law questions only. *See, e.g., Andantech v. C.I.R.*, 331 F.3d 972, 976 (D.C. Cir. 2003). "Thus, we apply *de novo* review to the Tax Court's determinations of law. We also apply *de novo* review to decisions to grant summary judgment, applying the same standards as the district courts." *Byers v. C.I.R.*, 740 F.3d 668, 675 (D.C. Cir. 2014) (citations omitted); *see also Branch Ministries v. Rossotti,* 211 F.3d 137, 141 (D.C. Cir. 2000) (applying *de novo* review to a district court decision upholding, on summary judgment, the IRS's revocation of a church's 501(c)(3) status).

Here, the central questions are pure questions of statutory interpretation: how to harmonize the CSA, which generally makes ayahuasca consumption illegal, with RFRA, which generally precludes treating religious sacraments as illegal, given the Supreme Court's decision in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2016) ("*O Centro*"), and how to apply the Tax Code's public policy/illegality bar on 501(c)(3) status to known activities of undetermined legality, given the Supreme Court's decision in *Bob Jones.* This Court's job on review of summary judgment is to determine what the statutes and

governing Supreme Court precedents mean, not whether the district court's effort

to discern the law fell within a broad range of reasonableness.[1]

>    B.    *The IRS/District Court Position That ICH's Ayahuasca Sacrament Is*
>         *Illegal Unless and Until ICH Receives A CSA Exemption Is An Error*
>         *Of Law.*

At the IRS's urging, *see* D.E. 23-1, at 9, the district court took the position

that ICH's ayahuasca sacrament is illegal unless and until ICH receives an

exemption from the DEA (either directly or after a court overrules a final DEA

decision denying an exemption) under the CSA – administrative relief for which

ICH is still waiting today, 58 months after it applied for it. D.E. 32, at 11-12.[2] As

ICH explained, that rule – what amounts to an exhaustion of administrative

remedies prerequisite before religious freedom can lawfully be exercised – is

---

[1] Unlike its primary argument that its ayahuasca sacrament is not "illegal" in the sense relevant under *Bob Jones*, ICH's fallback argument – that even if it is, ICH's commitment to operate legally and its suspension of the sacrament should preclude application of the *Bob Jones* illegality/public policy bar (section I.D, below) – entails review of the record. But even that issue is one of law, on summary judgment, based on undisputed facts contained in the same paper record that was before the district court, so *de novo* review applies. *See, e.g., Byers*, 740 F.3d at 675.

[2] The Government does not dispute that notwithstanding the constitutional and statutory imperative to vindicate rights to religious freedom promptly, *see* ICH br. 28 n.8, it is "DEA's standard practice" to sit on RFRA-based applications for CSA exemptions interminably, *id.* at 27. In another ayahuasca case, the Eleventh Circuit recently noted that "it took three years and a federal lawsuit for the DEA to respond to a petition [for a CSA exemption] it requested in the first place." *Soul Quest Church of Mother Earth, Inc. v. Garland,* 2023 WL 8714320, *5 n.14 (11th Cir. Dec. 18, 2023).

irreconcilable with RFRA, which provides immediate substantive protection for sincere exercises of religion, and *O Centro*, which enjoined the DEA from treating an ayahuasca sacrament as illegal without any application for an exemption having been filed; it is unsupported by the CSA; and it is unworkable, given the DEA's record of sitting on applications and uncertainty as to the availability of mandamus to compel an exemption from the DEA. *See* ICH br. 20-28.

The IRS declines to defend the district court's reasoning, dismissing it as "dictum." IRS br. 36. But it retreats to a similarly indefensible position. The IRS insists that ICH's ayahuasca sacrament is "illegal" unless and until it obtains "proof of a CSA exemption" ***either*** from the DEA ***or*** from a court order in a suit against the DEA. *Id.* at 37; *see also id.* at 19, 25. At the same time, the Department of Justice – counsel to both the DEA and the IRS – conspicuously avoids saying that ICH ***can*** proceed in court for such relief against the DEA. Indeed, it calls that question "irrelevant." *Id.* at 35. And the Government argued successfully in *Van Kush v. Drug Enforcement Admin.*, 2022 WL 1978730, *3 (D.D.C. June 6, 2022), that a district court ***cannot*** compel a DEA decision on an application for a religious exemption under the CSA. Reading between the lines, the Government's position appears to be that, notwithstanding that ICH's sincere exercise of religion is protected by RFRA and not materially distinguishable from the exercise of religion the Supreme Court in *O Centro* forbade the Government from treating as illegal,

7

the Government is entitled to treat it as illegal for years, without any effort to

justify doing so under strict scrutiny standards; ICH must then undertake the

arduous task of petitioning this Court for mandamus;[3] if that is granted, the DEA

will finally address the merits; and then further judicial review proceedings may be

necessary. That flouts Congress's express intent in RFRA to provide not just a

cause of action, but an immediate "defense," for religious adherents. 42 U.S.C. §

2000bb(b)(2).

In insisting that ICH's "ayahuasca sacrament is illegal under the CSA

without an exemption," IRS br. 19-20, the IRS makes a basic error of statutory

interpretation. Ayahuasca consumption is generally illegal under the CSA, but

sacraments are generally protected – legal – by virtue of RFRA. RFRA expressly

"applies to all Federal law, and the implementation of that law," 42 U.S.C. §

2000bb-3(a), and since the two statutes overlap in addressing a common subject-

matter – the legality of ayahuasca sacraments – they must be read in harmony, *see,*

*e.g., Morton v. Mancari*, 417 U.S. 535, 551 (1974); *United States v. Borden Co.,*

388 U.S. 188, 198 (1939). In other words, RFRA effectively amended the CSA.

*See, e.g., Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1754 (2020) ("RFRA

---

[3] *See, e.g., In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) ("Mandamus is an 'extraordinary remedy, reserved only for the most transparent violations of a clear duty to act.'") (citation omitted).

operates as a kind of super statute, displacing the normal operation of other federal laws"); *In re Young,* 141 F.3d 854, 861 (8th Cir. 1998) ("RFRA, however, has effectively amended the Bankruptcy Code"). There is, in this context, no such thing as "illegal under the CSA" viewed in isolation from RFRA. Rather, the question is whether ICH's ayahuasca sacrament is illegal under federal law as a whole, given the interaction of the CSA with RFRA. *See, e.g., Soul Quest*, 2023 WL 8714320, *15 ("RFRA requires that the DEA consider religious rights in the implementation of the CSA").

Accordingly, it is not, as the IRS asserts, ICH that errs by "seek[ing] to import the standards applicable to a claim under the RFRA" into the analysis of the legality of the ayahuasca sacrament for purposes of the *Bob Jones* rule. IRS br. 26-27. It is the IRS that errs, by excluding RFRA from its analysis of the current legality of the sacrament. *See, e.g., Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 140 S. Ct. 2367, 2384 (2020) (federal agencies must "look to RFRA's requirements" while administering their own statutes). And RFRA is clear, and *O Centro* and *Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder,* 676 F.3d 829 (9th Cir. 2012), affirm, that so long as a sacrament is a sincere exercise of religion – which is undisputed here – the Government must at all times

9

– not just after a court ruling – treat it as legal unless treating it as illegal is consistent with strict scrutiny.[4]

C.    *The IRS/District Court Position Misreads The* Bob Jones *Rule.*

ICH was clear in its opening brief that RFRA and *O Centro* do not guarantee that its ayahuasca sacrament will ultimately be determined to be legal, since "every RFRA case ultimately depends on its individual facts." ICH br. 31. But by establishing that any Government action that substantially burdens ICH's exercise of religion through its ayahuasca sacrament is subject to strict scrutiny, 42 U.S.C. § 2000bb-1(b), RFRA creates a "strong presumption" that the sacrament is legal. *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 U.S. 2335, 2360 (2020) (Breyer, J., concurring in part and dissenting in part).

ICH was equally clear that it recognizes that the IRS is not tasked with the ultimate determination of the legality of ICH's ayahuasca sacrament. *See, e.g.,* ICH br. 15. However, by invoking the public policy/illegality bar as its sole basis for denying ICH 501(c)(3) status, the IRS undertook the task of addressing that legality in at least some form. In doing so, the IRS relied – and still relies, *see, e.g.,*

---

[4] *See also Soul Quest*, 11th Cir. No. 22-11072, Brief of Appellee United States, 2022 WL 3714912,*9 (filed Aug. 22, 2022) ("Plaintiffs argue that RFRA authorizes courts, but not agencies, to consider the availability of religious exemptions, but that is incorrect."); *id.* at *16 (RFRA "does not require federal agencies to wait for an adverse court order before eliminating substantial burdens on the free exercise of religion. Concluding otherwise would ignore RFRA's plain text [and] create unnecessary litigation . . . .") (citation omitted).

10

IRS br. 23, 33 – on the Supreme Court's authoritative articulation of that bar in *Bob Jones*. But the IRS's 501(c)(3) denial and the district court's decision upholding it misread *Bob Jones.* Given RFRA and *O Centro*, ICH's ayahuasca sacrament is presumptively lawful. But even taking its legality as an open question (since neither the DEA nor a court have yet resolved how the CSA and RFRA apply together to the specifics of ICH's ayahuasca sacrament) would provide no basis for denying 501(c)(3) status under *Bob Jones*. "[A] declaration that a given institution is not 'charitable' should be made only where there can be ***no doubt*** that the activity involved is contrary to a fundamental public policy." *Bob Jones*, 461 U.S. at 592 (emphasis added).[5]

      Other than repeating the claim refuted above that an ayahuasca sacrament is illegal unless and until a CSA exemption is granted, IRS br. 33, the IRS offers no substantive defense of its misapplication of *Bob Jones*. Instead, it makes two unavailing arguments.

---

[5] The "no doubt" caveat is fundamental. The IRS cannot and normally does not attempt to pick 501(c)(3) winners and losers based on contestable views of legality or public policy. For example, a 2016 study found that at least 55 entities identified by the Southern Poverty Law Center as hate groups had 501(c)(3) status. E. Stiffman, *Dozens of "Hate Groups" Have Charity Status, Chronicle Study Finds,* CHRONICLE OF PHILANTHROPY (Dec. 22, 2016), https://www.philanthropy.com/article/dozens-of-hate-groups-have-charity-status-em-chronicle-em-study-finds/.

First, the IRS argues that ICH waived the issue below. Not so. True, ICH did not quote the critical language in the *Bob Jones* opinion in its briefs below. But it is the IRS that injected *Bob Jones* into the case by relying on the *Bob Jones* rule to deny ICH 501(c)(3) status,[6] and the *Bob Jones* rule was central to the IRS's arguments and the district court's decision. *See, e.g.,* D.E. 32, at 7 (citing *Bob Jones*); *id.* at 8 (concluding that ICH is not entitled to 501(c)(3) status because its ayahuasca sacrament is an "illegal" purpose); D.E. 23-1, at 1, 8, 10 (IRS brief, citing *Bob Jones* in support of IRS's decision denying ICH 501(c)(3) status). ICH has merely refined on appeal the framing of the central argument it made, and the district court rejected on the merits, below – that the *Bob Jones* rule barring 501(c)(3) status for organizations with illegal purposes does not support the IRS's decision because, given RFRA and *O Centro*, ICH is not organized or operated for an illegal purpose. That does not entail a waiver. "'[W]aiver is not meant as an overly technical appellate hurdle,' and the nuances of a litigant's arguments may differ from their stance in the district court without resulting in waiver. . . . [Moreover,] 'it is well settled that the waiver rule does not prevent a party from attacking on appeal the legal theory upon which the district court based its

---

[6] The IRS cited Revenue Ruling 71-447, 1971-2 C.B. 230, in denying ICH 501(c)(3) status. D.E. 29-11, at 5. The Supreme Court upheld and qualified Revenue Ruling 71-447 in *Bob Jones*, 461 U.S. at 585-602.

decision.'" *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 927 (7th Cir. 2015) (citations omitted). And even if there were a technical waiver here, this Court should exercise its discretion, in the interests of justice, to resolve on the merits a clear and important question of law that has been fully presented to it on appeal on a straightforward factual record that would have been no different had the issue been briefed below precisely as it has been briefed on appeal. *See, e.g., Lessne v. Doe,* 712 F.3d 584, 588 (D.C. Cir. 2013).

Second, the IRS argues that under this Court's decision in *FSEGTR* the benefit of the doubt goes to the IRS. IRS br. 33. But this Court did not purport to overrule *Bob Jones* in *FSEGTR*. *FSEGTR* merely applied the well-established rule that in the 501(c)(3) context, the burdens of production and proof on ***factual*** issues fall on the applicant. There are no factual issues in this summary judgment appeal. The critical issue is ***legal***: what do the CSA and RFRA together determine about the legality of a sincerely practiced ayahuasca sacrament? Under *Bob Jones*, that legal issue must be resolved in ICH's favor if there is any doubt.

D.    *Even If The Ayahuasca Sacrament Were Illegal, ICH Would Be Organized And Operated For Exempt Purposes.*

ICH argued in the alternative that even if its ayahuasca sacrament should be deemed illegal pending its lengthy wait for a CSA exemption (which it should not, as elaborated above), ICH would nonetheless be organized and operated exclusively for exempt purposes, and thus qualify for 501(c)(3) status. ICH br. 35-

13

41. In response, the IRS dismisses ICH's express commitment in article IX of its charter to operate within the law as a fig-leaf "savings clause,"[7] and dismisses ICH's consistent pattern of scrupulous and conservative adherence to the law as a "temporary" suspension of supposedly illegal activities. IRS br. 37-46.

The IRS's response reflects three additional errors in its analysis of ICH's 501(c)(3) application. First, the IRS fails to take the holistic view of charter commitments and conduct prescribed by *Commissioner of Internal Revenue v. John Danz Charitable Trust*, 284 F.2d 726, 733 (9th Cir. 1960), and *Taxation With Representation v. United States*, 585 F.2d 1219, 1222 (4th Cir. 1978). ICH does not merely rely on a fig-leaf "savings clause" or a "temporary suspension" of "illegal" activities. It relies on the undisputed facts that (1) it adopted a purpose to engage in the ayahuasca sacrament in reasonable reliance on Supreme Court precedent (*O Centro*) indicating that the sacrament is highly likely to be ultimately

---

[7] The IRS also argues that ICH "waived any reliance" on article IX by not highlighting that particular charter clause in its briefing below. IRS br. 39-40. But the record reflects that ICH spent two and half years before the IRS and the DEA and a year and a half before the district court demonstrating through its charter, its conduct and its candid and cooperative interactions with the IRS and the DEA its commitment to abide by the law; the IRS and the district court reviewed and addressed ICH's charter; and the import of the article IX commitment to abide by the law is plain. Again, the IRS misconstrues as waiver a mere change in nuance on appeal in ICH's framing of a legal issue the district court resolved on the merits on a clear summary judgment record, and even if there were a technical waiver, it should not prevent this Court from reaching the merits in the interests of justice.

deemed legal; (2) it expressly committed to operate within the law; (3) throughout its existence, it has worked proactively, candidly and cooperatively with the DEA and the IRS to ensure that it stays within the law; and (4) for almost its entire existence (now over four years) it has suspended its ayahuasca sacrament to avoid any potential for illegality even though it reasonably believes it to be already legal by virtue of RFRA. Viewed holistically, rather than by isolating and diminishing individual elements, as the IRS has done, that fact pattern plainly amounts to organization and operation within the law.

Second, the IRS misapplies the "general principles of contract construction" on which it relies. IRS br. 40. ICH's article IV(a) purpose to practice the ayahuasca sacrament is not, as the IRS claims, a "specific" provision that trumps ICH's "general" commitment to abide by the law in its article IX. "Before a court may supplant a general policy provision by recourse to a more specific one, there must be an inconsistency between the two provisions." *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 69 (1st Cir. 2012). Where possible, provisions of an Iowa corporate charter, like any other contract, must be construed harmoniously, not by ignoring one provision. *Oberbillig v. West Grand Towers Condominium Ass'n*, 807 N.W.2d 143, 150 (Iowa 2011). And there is no inherent conflict between articles IV(a) and IX of ICH's charter, since, given RFRA, the ayahuasca sacrament is not inherently illegal. Indeed, it could equally be said that

15

while article IV(a) generally addresses the ayahuasca sacrament, article IX

specifically addresses and commits ICH not to engage in conduct (including that

sacrament) if and when it is illegal.

Finally, this Court's precedent is clear that a commitment to cease activity

that has been deemed inconsistent with 501(c)(3) status can restore an entitlement

to 501(c)(3) status. *See Branch Ministries,* 211 F.3d at 143. Remarkably, the IRS

distinguishes that precedent – *i.e.,* seeks to justify denial of 501(c)(3) status – on

the basis that "Iowaska represented to the IRS that it intended to resume its

ceremonies once it obtains confirmation from the DEA that those activities are

legal." IRS br. 46. The IRS's notion that an intent to engage in conduct ***after its***

***legality is confirmed*** disqualifies ICH from 501(c)(3) status is indefensible.

## II.    ICH Did Not Waive Its Straightforward Basis For Standing To Challenge Under RFRA The IRS's Denial Of 501(c)(3) Status.

The law is clear that an applicant for 501(c)(3) status has constitutional

standing to challenge and seek reversal of an IRS decision denying that status. *See,*

*e.g., Baptist Hospitals, Inc. v. United States*, 851 F.2d 1397, 1400 (Fed. Cir. 1988)

("the denial or revocation of tax exempt status . . . creates an actual controversy.").

In the context of ICH's Tax Code claim, the IRS expressly conceded that point in

the district court, D.E. 23-1, at 6 ("the Service recognizes that its denial of

Iowaska's application for tax exempt status under Internal Revenue Code Section

501 does provide Iowaska standing against it under Count One"), and it does so

again now, IRS br. 53 ("Claim One of the amended complaint . . . properly challenged the IRS's denial of tax-exempt status."). And the IRS does not and cannot offer a theory for why **constitutional** standing to challenge and seek reversal of a **single administrative decision** depends on whether the cause of action is pled under the Tax Code or under RFRA.

Instead, the IRS once again relies on waiver. IRS br. 54-55. It acknowledges that ICH pled a claim that the IRS's "ruling that ICH's activities are illegal in a **binding determination letter**" violated RFRA. Compl. ¶ 37 (quoted at IRS br. 48) (emphasis added).[8] But it insists that ICH's RFRA claim "was not based on the IRS's denial of tax-exempt status," and instead addressed only the IRS's characterization of ICH's ayahuasca sacrament as "illegal" as part of its rationale for that decision. IRS br. 53.

The IRS misreads ICH's complaint. In paragraph 37 and elsewhere, ICH complained of one IRS act/document – its "binding determination letter" – that determined one issue – that ICH would be denied tax-exempt status. And as relief

---

[8] Likewise, ICH argued in support of its own claim for summary judgment on the RFRA claim that "Defendants' **denial of the Church's request for tax-exempt status** under I.R.C. § 501(c)(3) and for church recognition under § 1.170(b)(1)(A)(i) by virtue of their summary conclusion that the Church's purposes and activities are 'illegal' has placed a substantial burden on the Church's and its members' free exercise of religion under the First Amendment." D.E. 28-3, at 33 (emphasis added).

for its RFRA claim, ICH sought a declaration that (in that one act/document) the IRS "has substantially burdened Plaintiff's exercise of religion and violated the RFRA." Compl., Request for Relief ¶ C. A declaration that the IRS's ruling denying ICH tax-exempt status violated RFRA would, of course, be tantamount to an order requiring the IRS to grant ICH 501(c)(3) status (at least unless it had an independent reason, permissible under RFRA, for denying it).

Nothing in ICH's complaint suggests that in its RFRA count ICH chose to challenge only the IRS's rationale and not its actual decision. Nor should such a choice be inferred if the language of the complaint were deemed ambiguous. First, under notice pleading rules, which apply to standing no less than to other issues, *see, e.g., Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 993-94 (7th Cir. 2002), any ambiguities in pleading are to be resolved in favor of the plaintiff, *see, e.g., Aktieselskabet AF 21 November 21 v. Fame Jeans Inc.*, 525 F.3d 8, 15-17 (D.C. Cir. 2008). Moreover, the sufficiency of a complaint to establish jurisdiction (as well as a substantive claim) focuses not on legal theories, but on its factual allegations – it must "inform the opponent of the affair or transaction to be litigated." *Id.* at 16. ICH's complaint was ample: it made clear that the IRS's 501(c)(3) denial was the matter to be litigated.

Second, the pleading choice the IRS ascribes to ICH's complaint would make no sense. The IRS does not dispute that in the same short complaint, ICH ***did***

make a claim challenging the 501(c)(3) denial decision under the Tax Code, *construed in light of RFRA*. Why would ICH forgo challenging that decision under RFRA itself? And it is axiomatic that challenges to an administrative agency decision should normally challenge the agency's order, not merely its rationale. Why would ICH restrict itself to challenging only the IRS's statement of its rationale?

Moving beyond ICH's complaint, the IRS argues that in the one opportunity ICH had to argue standing – its brief opposing the IRS's motion for summary judgment (D.E. 25)[9] – ICH focused its arguments on the chilling, reputational and economic impacts of the IRS's statement that its ayahuasca sacrament is "illegal." IRS br. 48-49, 53-54. That should not matter, since standing is determined as of the complaint, *see, e.g, Cook v. Bennett*, 792 F.3d 1294, 1298 (11th Cir. 2015), not based on nuances in subsequent briefing. But in any event, ICH did not need to brief in detail why a 501(c)(3) denial decision supports standing, because the IRS had already conceded that point (albeit in the context of the Tax Code claim, but

---

[9] ICH bears the burden of proving standing. But until the IRS questioned ICH's standing to bring the RFRA claim in the IRS's motion for summary judgment, D.E. 23-1, at 16-19, there was no reason to think that the standing of a 501(c)(3) applicant challenging an IRS decision denying 501(c)(3) status was at issue. Because the district court ruled on summary judgment – contrary to this Court's guidance for 501(c)(3) disputes in *FSEGTR*, 161 F.3d at 759 – and held no hearings and denied ICH's request for oral argument, there was no subsequent opportunity for ICH to clarify any ambiguities.

that should make no difference). *See* D.E. 23-1, at 6. Instead, ICH emphasized the additional impacts of the IRS's mischaracterization of its sacrament as "illegal," because those impacts are significant and potentially support broader relief (not just a reversal of the 501(c)(3) denial but also some form of declaration regarding the legality of ICH's ayahuasca sacrament).

Nonetheless, ICH clearly stated in the section of its brief addressing standing to bring the RFRA claim: "The action the Church is challenging is the Defendants' denial of the Church's application for tax-exempt status." D.E. 25, at 13. ICH clearly stated that it sought redress for the RFRA claim in the form of a court order reversing that decision. *Id.* at 15, 16.[10] And ICH specifically identified an important aspect of that redress as being the opportunity "to receive charitable contributions on a going-forward basis," *id.* at 17 – an opportunity that would arise only if the denial decision were reversed. Notwithstanding its discussion of the IRS's "illegal" rationale, it is simply not true that ICH's RFRA claim "was not based on the IRS's denial of tax-exempt status," IRS br. 53.

At best, the IRS's waiver assertion rests on a change in emphasis between ICH's district court and appellate arguments regarding a single, undisputed set of facts and a complaint that properly seeks, under RFRA as well as under the Tax

---

[10] The IRS apparently recognized below that "the grant of tax-exempt status" was among the remedies ICH sought on its RFRA claim. D.E. 23-1, at 18.

Code, reversal of the 501(c)(3) decision. Once again, "the nuances of a litigant's arguments may differ from their stance in the district court without resulting in waiver," *Sidney Hillman*, 782 F.3d at 927, and "waiver" notions should not be applied inequitably to ignore a straightforward point of law and deny merits consideration of fundamental religious liberty claims based on dubious parsing of a district court brief, *see, e.g., Lessne,* 712 F.3d at 588.

The case the IRS cites on the application of waiver to standing, *Huron v. Cobert*, 809 F.3d 1274 (D.C. Cir. 2016), is not to the contrary, and the differences between the two cases are instructive. In *Huron*, the plaintiffs "forfeited twice over the claims on which they predicate standing," *id.* at 1276, by entirely omitting them both from their one-count complaint against the Office of Personnel Management and from their district court briefs. In the district court, the plaintiff's[11] sole theory was that he was financially harmed because his health insurance plan, one of many offered under the Federal Employee Health Benefits Program administered by the Office of Personnel Management, did not cover a medical device he used. *See id.* at 1279. He failed to establish standing because his financial loss was caused by his own decision to select a plan that did not cover the device notwithstanding that other plans within the program did. *See id.* at 1278. On

---

[11] *Huron* involved two plaintiffs, but the parties stipulated that the second (association) plaintiff's standing depended on the first (individual) plaintiff's standing. *See id.* at 1279.

appeal, he admittedly "completely abandoned" that theory, in favor of a "procedural injury" theory that by failing to negotiate better with insurers, the Office of Personnel Management had saddled him with inferior options when he came to choose among Federal Employee Health Benefits Program policies. *Id.* at 1279. This Court held that he had waived his new "procedural injury" claim in the district court: "it is not the province of an appellate court to 'hypothesize or speculate about the existence of an injury [Plaintiff] did not assert' to the district court." *Id.* at 1280.

Here, in contrast, it is undisputed that ICH *did* assert its theory of injury – loss of 501(c)(3) status – to the district court, and the district court (and the IRS) had no hesitation in accepting that injury as a basis for jurisdiction over ICH's Tax Code claim. The IRS's only (unfounded) argument is that ICH did not attach that valid theory of standing to the pure RFRA claim as clearly as to the RFRA-infused Tax Code claim. Unlike Huron's complaint, ICH's complaint encompassed the theory of standing it argues on appeal – by asserting that the IRS's "ruling that ICH's activities are illegal in a binding determination letter" violated RFRA, Compl. ¶ 37, and by seeking reversal of that ruling. And, far from abandoning an orthodox, concrete individual economic injury theory of standing in favor of a new, tenuous "procedural injury" theory, ICH has consistently claimed that, in violation of RFRA, the IRS's 501(c)(3) denial decision in ICH's individual case

economically harmed ICH by detracting from ICH's ability to attract membership and charitable contributions. *See* D.E. 25, at 13, 16-17. No appellate hypothesizing or speculation is needed here: it is beyond dispute that by denying ICH 501(c)(3) status the IRS inflicted a cognizable legal and economic injury on ICH.

The IRS and the district court both erred in ignoring the fact that under RFRA as well as the Tax Code, ICH challenged the IRS's decision as well as its rationale. Ignoring that fact is the essential premise for their conclusion that ICH's economic loss is too speculative because it "depends entirely on the independent decisions of third-party donors." IRS br. 50-51 (quoting D.E. 32, at 13 n.7). The generalization that third-party actions can break a causal link needed to demonstrate standing does not override the established law that 501(c)(3) status is an inherently valuable legal and economic right sufficient to support standing, *see, e.g, Baptist Hospitals*, 851 F.2d at 1400, notwithstanding that its value lies substantially in making an entity more attractive to members and donors. Third-party actions that are foreseeably encouraged or discouraged by the defendant's action do not defeat standing. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), for example, the Supreme Court upheld a RFRA claim challenging a requirement that any health insurance coverage employers might choose to offer employees must cover certain forms of birth control. The employers could potentially have avoided any additional expense by declining to offer employees

23

coverage, but they had standing and demonstrated a substantial burden on their exercise of religion because if they did so, "it is predictable that the companies would face a competitive disadvantage in retaining and attracting skilled workers." *Id.* at 722. The IRS's decision denying ICH the ability to "receive charitable contributions" subject to favorable tax treatment, D.E. 25, at 17, and labelling its activities "illegal," likewise places ICH at a severe "competitive disadvantage in retaining and attracting" members and donors.

Because, at the IRS's urging, the district court denied ICH's RFRA claim on standing grounds, this Court can reverse the district court's decision without reaching the merits of the RFRA claim. But the IRS's token argument on the RFRA merits (IRS br. 21, 56-58) only underlines how compelling ICH's claim is. In its sole nod to RFRA's strict scrutiny standard, the IRS argues that "participation in the federal tax system is the least restrictive means of furthering the federal government's compelling interest in collecting taxes." *Id.* at 21; *see also id.* at 57-58. That generalization begs the specific question. Unlike the taxpayers in the cases the IRS cites on page 58 of its brief, ICH is not challenging the tax system as a whole. Instead, ICH is properly invoking RFRA to challenge the IRS's decision to impose an economically significant penalty on ICH (by denying ICH a tax exemption it would otherwise receive) for its intent to engage in a sincere exercise of religion (ayahuasca sacraments). That is ample to satisfy RFRA's substantial burden test and shift the burden to the Government to justify its action under

strict scrutiny. *See, e.g., Adkins v. Kaspar,* 393 F.3d 559, 570 (5th Cir. 2004) (a plaintiff meets the substantial burden test if it demonstrates that "a government action or regulation . . . forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs."). And the IRS's analogy (on page 57) to two non-Tax Code cannabis/marijuana cases does not remotely justify its actions here. Criminal law enforcement actions undertaken to prevent non-religious use of controlled substances may sometimes be justified to protect the public, on a strictly fact-specific basis, under strict scrutiny, although, as *O Centro* reflects, they will often violate RFRA. There is no plausible justification under strict scrutiny for the IRS to discriminate against ICH based expressly on ICH's intent to practice its religion, by denying ICH 501(c)(3) tax-exempt status it would otherwise be granted, based on a determination (that ICH's religious sacrament is "illegal") that is both erroneous (as demonstrated in Section I, above) and not the IRS's determination to make (as the IRS itself acknowledges[12]).

## <u>CONCLUSION</u>

The district court's decision should be reversed. The IRS's ruling denying ICH tax-exempt status under 26 U.S.C. § 501(c)(3) violates both the Tax Code and RFRA, and ICH has standing to bring both claims.

---

[12] *See* IRS br. 31 ("the IRS lacks statutory authority to determine whether Iowaska is entitled to a CSA exemption").

25

Dated: December 26, 2023

Respectfully submitted,

/s/ Simon A. Steel*

William A. Boatwright
Dentons Davis Brown PC
215 10th Street, Ste. 1300
Des Moines, IA 50309
(515) 288-2500
bill.boatwright@dentons.com

Simon A. Steel
Katie Daw
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com

Joanne Caceres
Dentons US LLP
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606-6361
(312) 876-2862

*Counsel for Plaintiff-Appellant Iowaska Church of Healing*

---

* Member of DC Circuit and NY Bars; not admitted in DC.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. Proc.

32(a)(7)(B)(ii) because it contains 6,499 words, excluding the parts of the brief

exempted by Fed. R. App. Proc. 32(f) and Local Rule 32(e)(1). It complies with

the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style

requirements of Fed. R. App. Proc. 32(a)(6) because it is set in 14-point Times

New Roman font.

Dated: December 26, 2023                          /s/ Simon A. Steel
                                                  Simon A. Steel
                                                  Dentons US LLP
                                                  1900 K Street, NW
                                                  Washington, DC 20006
                                                  (202) 496-7077
                                                  simon.steel@dentons.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2023, I electronically filed this document with the Clerk of the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel of record. I further certify that there are no parties who will not receive such notice.

Dated: December 26, 2023

/s/ Simon A. Steel
Simon A. Steel
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7077
simon.steel@dentons.com